## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSHUA AKEEM, ET AL.**<br>            Plaintiffs | **CIVIL ACTION** |
| **VERSUS** | **NO. 2:19-CV-13650-BWA-DMD**<br>**AND CONSOLIDATED CASES** |
| **DASMEN RESIDENTIAL, LLC, ET AL.**<br>            Defendants | **JUDGE BARRY W. ASHE** |
| | **MAGISTRATE JUDGE**<br>**DANA DOUGLAS** |

**FILED:** _____        _____

**DEPUTY CLERK**

**FILED IN: ALL CASES**

*Joshua Akeem, et al. v. Dasmen Residential LLC, et al.*
**USDC No. 2:19-CV-13650-BWA**
**-consolidated with-**
*Andrea Riley, et al. v. Dasmen Residential, LLC, et al.*
**USDC No. 2:19-CV-13636-BWA**
**-consolidated with-**
**-consolidated with-**
*Troyneisha Terrance, et al. v. Dasmen Residential, LLC, et al.*
**USDC No. 2:20-187-BWA**
**-consolidated with-**
*Johnshane Powell, et al. v. Dasmen Residential, LLC, et al.*
**USDC No. 2:19-13705-BWA**
**-consolidated with-**
*Charlene Miller, et al. v. Dasmen Residential, LLC, et al.*
**USDC No. 2:19-13673-BWA**
**-consolidated with-**
*Renata Walker, et al. v. Dasmen Residential, LLC, et al.*
**USDC No. 2:19-14634-BWA[1]**

## MASTER AMENDED COMPLAINT FOR DAMAGES

**NOW INTO COURT**, through undersigned counsel, come Named Plaintiffs/Putative

Class Representatives in all of the consolidated actions, **JOSHUA AKEEM, ET AL.**

(hereinafter called "Plaintiffs"), by and through their attorneys, who appear individually and on

---

[1]        These actions were consolidated by the District Court over the objection of Plaintiffs.

behalf of a putative class of similarly situated persons, to file this Master Amended Complaint

for Damages and Request for Class Certification. This pleading relates back to the date of the

original pleading because the amendment asserts claims that arose out of the conduct,

transaction, or occurrence set out – or attempted to be set out – in the original pleading.[2]

## **INTRODUCTION**

### **AMENDED PARAGRAPH 1.**

The consolidated actions have a pending request for class certification. Plaintiffs are

asserting claims individually and on behalf of a class of similarly situated persons, who satisfy

the following proposed class definition:

All persons who sustained damage through hazardous conditions, including, but not limited to, exposure to water intrusion and/or exposure to fungal substances such as mold and mold spores which were growing on building materials and were released into the air of the following apartment complexes in New Orleans: Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks and Wind Run/Carmel Springs, and who meet any one of the following criteria:

1. You currently and/or formerly resided and/or had an employment relationship with (meaning reported to work at) the apartment complexes known as Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks; and Wind Run/Carmel Springs, before December 13, 2017, and you allege damages from hazardous conditions, including, but not limited to, water intrusion and/or exposure to fungal substances such as mold and mold spores which were growing on building materials and were released into the air.

2. You currently and/or formerly resided and/or had an employment relationship with (meaning reported to work at) the apartment complexes known as Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks, and Wind Run/Carmel Springs, after December 13, 2017 to the present, and you allege damages from hazardous conditions including, but not limited to, water intrusion and/or exposure to fungal substances such as mold and mold spores which were growing on building materials and were released into the air.

---

[2]       See Fed. R. Civ. Proc 15.

### AMENDED PARAGRAPH 2.

The majority of Plaintiffs are African Americans who live below the poverty line and require federal housing assistance through the United States Department of Housing and Urban Development ("HUD")/ Housing Authority of New Orleans ("HANO"). HUD/HANO's mission is to provide quality, affordable homes for all persons. The housing must be decent, safe, sanitary and in good repair. HUD's quality housing standards are set forth 24 C.F.R. §982.401.

### AMENDED PARAGRAPH 3.

Defendants breached their contractual duties to HUD/HANO and the leaseholders who were Section 8 voucher recipients, pursuant to 24 C.F.R. Part 5, §5703(f), which mandates that Defendants maintain apartments and common areas free of health and safety concerns, including, but not limited to, the presence of mold.[3]

### AMENDED PARAGRAPH 4.

Defendants breached their contractual duties to <u>all</u> Plaintiffs who were leaseholders at the subject apartment complexes. Defendants did not tender the leased premises in a clean, safe and good working condition. Defendants tendered the units failing to disclose conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreements. Additionally, once Plaintiffs submitted maintenance requests, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control. **La. C.C. art. 2322.**

---

[3]   *See Claborne v. Hous. Auth. Of New Orleans*, 165 So.3d 268, (La. App, 4 Cir. 4/15/2015), a class certified for tenants receiving HANO housing vouchers who were exposed to mold at two apartment complexes in violation of 24 C.F.R. Part 5, § 5703(f).

3

## AMENDED PARAGRAPH 5.

Plaintiffs suffered damages as a result of the ruin of the buildings that encompass Defendants' apartment complexes. Neglectful property ownership and management caused indecent, unsafe, unsanitary conditions posing an unreasonable risk of harm to Plaintiffs. More specifically, Defendants allowed deteriorating structural components of buildings such as roofs, plumbing, gutters, slabs, siding, stairwells, etc. to cause persistent water-intrusion spurring widespread mold-infestation. Plaintiffs expressly allege "Sick Building Syndrome."[4] Additionally, Defendants' provision of inadequate security, failure to properly dispose of trash, failure to address insect, rodent, and reptile infestation, and failure to adhere to fire and safety building codes poses hazardous conditions to Plaintiffs.

## AMENDED PARAGRAPH 6.

Plaintiffs also include current and/or former employees of Defendants Southwood Realty, Latter & Blum, Dasmen Residential and The Lynd Company who claim to have suffered damages as a result of *intentional* exposure to unsafe and unsanitary working conditions, including, but not limited to, water-intrusion and mold-infestation, without personal protective equipment.  This conduct violates the standards of Occupational Safety and Health Administration (OSHA), U.S. Environmental Protection Agency (EPA), and the Centers for Disease Control (CDC)  which require employers to provide personal protective equipment.

---

[4]     *See Watters v. Dept of Soc. Servs.*, 15 So.3d 1128 (La. App. 4 Cir 2009) – class certified for environmental hazards, including mold and mold spores in the Plaza Tower Office Building alleging "Sick Building Syndrome."

# PARTIES

## NAMED PLAINTIFFS/PROPOSED CLASS REPRESENTATIVES

### AMENDED PARAGRAPH 7.

**The Akeem Plaintiffs**
*Joshua Akeem, et al. v. Dasmen Residential LLC, et al.*
**USDC No. 2:19-CV-13650-BWA**

**(a) JOSHUA AKEEM** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. He is a former lessee at the Laguna Run Apartment Complex. His former address was 7107 Martin Drive, Apartment H-104, New Orleans, Louisiana 70126.

**(b) BRANDY WILSON** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee of Hidden Lake and Laguna Run Apartment Complexes. Her address was 7209 Martin Drive, Apartment F-209, New Orleans, Louisiana 70126.

**(c) JANICE MORGAN WILSON** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee of Hidden Lake and Laguna Run Apartment Complexes. Her former address was 7123 Martin Drive, Apartment G-106, New Orleans, Louisiana 70126.

**(d) LAQUINTA CARTER** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee of Hidden Lake and Laguna Run Apartment Complexes. Her former address was 7123 Martin Drive, Apartment G-104, New Orleans, Louisiana 70126.

**(e) DARERANICA DUPLESSIS** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee of Hidden Lake and Laguna Run Apartment Complexes. Her former address was 7000 Morrison Road, Apartment A-101, New Orleans, Louisiana 70126.

**The Riley Plaintiffs**
*Andrea Riley, et al. v. Dasmen Residential, LLC, et al.*
**USDC No. 2:19-CV-13636-BWA**

**(f) ANDREA RILEY** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee at Laguna Run Apartment Complex. Her former address was 7021 Martin Drive, Apartment J-103, New Orleans, Louisiana 70126.

**(g) ANGELA WOODSON** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee at the Laguna Run

Apartment Complex. Her former address was 7001 Martin Drive, Apt. M-210,  New Orleans, Louisiana 70126.

**(h) ASHLEY BROWN** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee at the Laguna Run Apartment Complex. Her former address was 7021 Martin Drive, Apt. J-211, New Orleans, Louisiana 70126.

**(i) DAKOTA BLUNT** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee at the Laguna Run Apartment Complex, Her former address was 7021 Martin Drive, Apartment J-210, New Orleans, Louisiana 70126.

**(j) CATHY HARRIS** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee at the Laguna Run Apartment Complex. Her former address at was 6900 Lake Kenilworth Drive, Apartment 110, New Orleans, Louisiana 70126.

**The Johnson Plaintiffs**
***Penny Johnson, et al. v. Dasmen Residential, LLC, et al.***
**USDC No. 2:19-CV-14637-BWA**

**(k) PENNY JOHNSON** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee of Hidden Lake and Laguna Run Apartment Complexes. Her former address at was 6820 Martin Drive, Apt. D-103, New Orleans, Louisiana 70126.

**(l) PORSHA BROOKS** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee at Laguna Run Apartment Complex. Her former address was 7014 Martin Drive, Apartment U-211, New Orleans, Louisiana 70126.

**(m) ROCHELLE MITCHELL** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is former lessee at Laguna Run Apartment Complex. Her former address was 7001 Martin Drive, Apartment T-218, New Orleans, Louisiana 70126.

**(n) WENONAH CUTLER** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee at Laguna Run Apartment Complex. Her former address was 6812 Lake Kenilworth Drive, Apartment N-104, New Orleans, Louisiana 70126.

**(o) TRICHELL SORRELL** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee at Laguna Run Apartment Complex. Her former address at was 7005 Martin Drive, Apartment K-209, New Orleans, Louisiana 70126.

**(p) TROYNEISHA TERRANCE** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee at Hidden Lake Apartments and Laguna Run Apartment Complexes. Her former address was 6900 Lake Kenilworth Drive, Apartment Q-231, New Orleans, Louisiana 70126.

**(q) MELISHA BOWMAN** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee at Hidden Lake Apartments and Laguna Run Apartment Complex. Her former address was 6900 Lake Kenilworth Drive, Apartment Q-231, New Orleans, Louisiana 70126.

**(r) TYHEASHA CRUMEDY** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee at Laguna Run Apartment Complex. Her former address at Laguna Run was: 6918 Lake Kenilworth Drive, Apt. R-225, New Orleans, Louisiana 70126.

**(s) KESHA SIMMONS** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee at Hidden Lake and Laguna Run Apartment Complexes. Her former address was 7020 Lake Kenilworth Drive, Apartment V-216, New Orleans, Louisiana 70126.

### *The Powell Plaintiff*
### *Johnshane Powell, et al. v. Dasmen Residential, LLC, et al.*
### USDC No. 2:19-13705-BWA

**(t) JOHNSHANE POWELL** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee at Hidden Lake and Laguna Run Apartment Complexes.

### *The Miller Plaintiffs*
### *Charlene Miller, et al. v. Dasmen Residential, LLC, et al.*
### USDC No. 2:19-13673-BWA

**(u) CHARLENE MILLER** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee at Laguna Reserve Apartment Complex. Her former address at Laguna Reserve was 5131 Bundy Road, Apartment D-217, New Orleans, Louisiana 70126.

**(v) ERIC BROWN** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. He is a current lessee at Laguna Reserve Apartment Complex located at 5131 Bundy Road, Apartment K-22 and K-32, New Orleans, Louisiana 70126.

(w) **TIFFANY WADE** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a current lessee at Laguna Reserve Apartment Complex. Her current address at Laguna Reserve is 5131 Bundy Road, Apartment R-10, New Orleans, Louisiana 70126.

### The Walker Plaintiffs
### *Renata Walker, et al. v. Dasmen Residential, LLC, et al.*
### USDC No. 2:19-14634-BWA

(x) **RENATA WALKER** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee at Carmel Brooks Apartment Complex. Her former address was 12345 N-10 Service Road, Apartment 1502, New Orleans, Louisiana 70128.

(y) **TIFFANY A. CERRE** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a current lessee at Carmel Brooks Apartment Complex. Her address is 12345 N-10 Service Road, Apt. 202, in New Orleans, Louisiana 70128.

### *The Carmel Springs Named Plaintiffs/Proposed Class Representatives*

(z) **MELANIE ANDERSON** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a current lessee at Carmel Springs Apartment Complex. Her address is 12151 N-10 Service Road, Apt. 525, New Orleans, Louisiana 70128.

(aa) **AHSHAKI RILES** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a former lessee at Carmel Springs Apartment Complex. Her address was 12151 N-10 Service Road, Apt. 115, New Orleans, Louisiana 70128.

### *The Laguna Creek Named Plaintiffs/Proposed Class Representatives*

(bb) **LISHA BARLEY** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. She is a current lessee at Laguna Creek Apartment Complex. Her address is 6881 Parc Brittany Blvd., Apt. D-105, New Orleans, Louisiana 70128.

### *The Former Employee Named Plaintiffs/Proposed Class Representatives*

(cc) **DWAYNE CHANEY** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. He was employed by Defendant Dasmen Residential from December 14, 2017 through November 2019. He was employed by Defendant Lynd from November 2019 through 2020.

**(dd)** **RONALD L. EDWARDS, SR.** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. He was employed by Defendant Latter & Blum from 2015 through December 13, 2017. He was employed by Defendant Dasmen Residential from March 2019 through November 2019; He was employed by Defendant Lynd November 2019 through 2020.

**(ee)** **RICHARD COLEMAN** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. He was employed by Defendant Latter & Blum from 2016 through December 13, 2017. He was employed by Defendant Dasmen from December 13, 2017 through November 2019.

**(ff)** **JOHN HOUSE** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. was employed by Defendant Dasmen from March 1, 2018 through April 2019.

**(gg)** **SHELTON LUVINE** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. He was employed by Defendant Latter & Blum from April 20, 2014 through December 13, 2017. He was employed by Defendant Dasmen Residential from December 14, 2017 through November 2019.

**(hh)** **TONY CRAWFORD** is a person of the full age of majority, domiciled in the Parish of Orleans, State of Louisiana. He was employed by Defendant Dasmen Residential from July 2018 through February 2019. He worked as a renovations project manager at all of the subject apartment complexes.

## **DEFENDANTS**

## **AMENDED PARAGRAPH 8.**

Defendants are former and/or current property owners/managers (and their insurer) of Hidden Lake/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek; Chenault Creek/Carmel Brooks and Wind Run/Carmel Springs, who caused Plaintiffs to suffer damages occasioned by the ruin of buildings, as a result of neglect to repair them.

A. **THE FORMER OWNERS PRIOR TO DECEMBER 13, 2017:**

(1) **EASTLAKE DEVELOPMENT, LLC (hereinafter referred to as "Eastlake Development")** is a domestic corporation organized under the laws of the State of Louisiana.

(2) **LAKEWIND EAST APARTMENTS, LLC (hereinafter referred to as "Lakewind East**) is a domestic corporation organized under the laws of the State of Louisiana.

(3) **TRIANGLE REAL ESTATE OF GASTONIA, INC., (hereinafter referred to as "Triangle Real Estate")** is a foreign corporation organized under the laws of the State of North Carolina.

(4) **SOUTHWOOD REALTY COMPANY (hereinafter referred to as "Southwood Realty")** is a foreign corporation organized under the laws of the State of North Carolina.[5]

B. **THE CURRENT OWNERS AFTER DECEMBER 13, 2017:[6]**

(5) **RH EAST LAKE, LLC** (hereinafter referred to as "RH East Lake") is a foreign corporation organized under the laws of the State of Delaware.

(6) **RH LAKEWIND EAST, LLC** (hereinafter referred to as "RH Lakewind East") is a foreign corporation organized under the laws of the State of Delaware.

(7) **RH COPPER CREEK, LLC** (hereinafter referred to as "RH Copper Creek") is a foreign corporation organized under the laws of the State of Delaware.

(8) **RH WINDRUN, LLC** (hereinafter referred to as "RH Windrun") is a foreign corporation organized under the laws of the State of Delaware.

(9) **RH NEW ORLEANS HOLDINGS, LLC** (hereinafter referred to as "RH New Orleans Holdings") is a foreign corporation organized under the laws of the State of Delaware.

C. **THE FORMER PROPERTY MANAGEMENT COMPANIES**

(10) **KFK GROUP, LLC** ((hereinafter referred to as "KFK Group") is a domestic corporation organized under the laws of the State of Louisiana.

(11) **KFK DEVELOPMENT, LLC** (hereinafter referred to as "KFK Development") is a domestic corporation organized under the laws of the State of Louisiana.

---

[5]     Triangle Real Estate and Southwood Realty have the same President, namely: Herman E. Ratchford, Jr. They share the domicile address of 165 S. York Street, Gastonia, NC 28053. They share the same principal office located at 165 S. York Street, Gastonia, North Carolina 28053. They share the same registered agent for service: Andrew Burnside of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., 701 Poydras Street, Suite 3500, New Orleans, Louisiana 70139.

[6]     All of the RH entities (RH Eastlake, RH Lakewind East, RH Copper Creek, RH Windrun, and RH New Orleans Holdings) have the same sole member, namely: Mark Silber. They share the same domicile address of 1013 Centre Road, Suite 403-B, Wilmington, Delaware 19805. They share the same principal office located at 400 Rella Blvd., Suite 301, Suffern, New York 10901. They share the same registered agent for service: Vcorp Agent Services, Inc., 3867 Plaza Tower Blvd., 1st Floor, Baton Rouge, Louisiana 70816.

(12) **LATTER & BLUM PROPERTY MANAGEMENT, INC.** (hereinafter referred to as "Latter & Blum") is a domestic corporation organized under the laws of the State of Louisiana.

(13) **DASMEN RESIDENTIAL, LLC** (hereinafter referred to as "Dasmen") is a foreign corporation organized under the laws of Delaware.

### D. THE CURRENT PROPERTY MANAGEMENT COMPANY

(14) **THE LYND COMPANY** (hereinafter referred to as "Lynd") is a foreign corporation organized under the laws of the State of Texas.

### E. THE INSURER

(15) **WILSHIRE INSURANCE COMPANY** (hereinafter referred to as "Wilshire") is a foreign corporation organized under the laws of the State of North Carolina, which provided a policy of insurance that insured Defendants Eastlake Development, KFK Group, KFK Development, and Latter & Blum. It also provided a policy of insurance that insured Defendants Dasmen Residential, LLC, RH New Orleans Holdings, LLC, RH Chenault Creek, LLC, RH Copper Creek, LLC, RH Windrun LLC, RH East Lake, LLC, and RH Lakewind East, LLC.

Plaintiffs reserve the right to amend and to supplement this listing of defendants as new entities are discovered in this lawsuit.

# JURISDICTION

## AMENDED PARAGRAPH 9.

The consolidated lawsuits were originally filed in Orleans Parish, Louisiana. Defendants removed the consolidated lawsuits to the USDC, EDLA, pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA"), because (A) there are more than 100 members of the proposed class, (B) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (C) there is diversity of citizenship between one plaintiff class member and defendant.[7]

---

[7]    28 U.S.C. §1332(d)(2); *Robertson v. Exxon Mobil Corp.,* 814 F.3d 236 (5th Cir. 2015) (*citing Hood ex rel. Mississippi v. JP Morgan Chase & Co.*, 737 F.3d 78, 85-86 (5th Cir. 2013)).

## VENUE

### AMENDED PARAGRAPH 10.

Venue is proper because the USDC, EDLA is the district court embracing Orleans Parish, Louisiana, where the state court action is pending.[8]

## JOINT AND IN SOLIDO LIABILITY

### AMENDED PARAGRAPH 11.

Defendants are jointly and *in solido* liable and indebted to Plaintiffs for such damages as are reasonable in the premises, including bodily injury, emotional distress, loss of enjoyment of life, medical expenses, property damages and relocation expenditures, together with legal interest thereon from date of judicial demand, until paid, and for all costs of these proceedings for the following reasons, to-wit:

## FACTUAL BACKGROUND

### AMENDED PARAGRAPH 12.

Upon information and belief, <u>ALL</u> of the subject apartment complexes [Hidden Lake/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek; Chenault Creek/Carmel Brooks and Wind Run/Carmel Springs], were the subject of a **<u>December 13, 2017</u>** bulk sale of property between Elie Khouri [the owner of  Eastlake Development, KFK Development, and KFK Group]; Herman E. Ratchford, Jr. [the owner of Triangle Real Estate and Southwood Realty]; and Mark Silber [the owner of all of the RH Entities]. Curiously, some of the properties were transferred at no cost to the RH Entities. **The total number of apartment units transferred in the commercial transaction was 1,990.**

---

[8]      See 28 U.S.C. §1441; 28 U.S.C. §98(a) ("The Eastern District compromises the parishes of … Orleans…")

## HIDDEN LAKE/LAGUNA RUN

### AMENDED PARAGRAPH 13.

On December 11, 2012, Defendant Eastlake Development acquired Hidden Lake Apartment Complex located at 6800 Martin Drive, New Orleans, Louisiana 70126. Eastlake Development is wholly owned by Defendant KFK Development, which is wholly owned by Defendant KFK Group. From December 11, 2012 through December 13, 2017, the foregoing defendants owned Hidden Lake until they conveyed the property to Defendant RH Eastlake, through Act of Sale. Upon information and belief, Defendant Eastlake Development misrepresented to Defendant RH Eastlake that the subject property was in good condition and free of vices, ruin, and defects. Defendant RH Eastlake changed the name of the apartment complex to Laguna Run Apartment Complex.[9]

### AMENDED PARAGRAPH 14.

The building structures known as Hidden Lake/Laguna Run were built in 1970. The apartment complex has 442 units. It is comprised of multiple 2-story buildings. There units range from 729 square feet to 1,086 square feet in size. The apartment complex spans 30 acres around a stagnant pond infested with water moccasins and alligators. The pond is not fenced and poses a safety hazard to children and other residents.

### AMENDED PARAGRAPH 15.

When Hidden Lake was owned by Eastlake Development, KFK Development and KFK Group, Defendant Latter & Blum served as the property manager. From December 14, 2017 through November 2019, when RH Eastlake owned the property, Dasmen Residential served as

---

[9]       Ex. 1, Assessor's Records for City of New Orleans pertaining to 6800 Martin Drive, New Orleans, Louisiana 70126. The property was sold for $1,000.00.

property manager. In September 2019,  RH Eastlake terminated its contract with Dasmen

Residential and hired Lynd to serve as property manager.

## **WIDESPREAD WATER-INTRUSION ISSUES**

## **AMENDED PARAGRAPH 16.**

Laguna Run has substantial water intrusion issues causing the ruin of the building:

A.  The majority of buildings consist of Duro-Last roofs that were sealed improperly. Since
the construction of the building in 1970, the roofs have deteriorated over time. Traumatic
roof damage is causing water-intrusion to the upstairs units. The upstairs units are leaking
into the downstairs units. The roof has never been replaced; instead, the roof is
consistently patched.[10] The roofs are rotting and becoming sponge-like causing instability
and dangerous conditions. Because the roofs are flat, water pools and there is no way for
it to run off.[11]

B.  A few of the buildings have gray shingle roofs that cause water-intrusion because the
buildings do not have gutters to redirect the flow of water.[12]

C.  The air conditioning units sit directly on the Duro-Last rooftops and were installed
improperly. They should have been constructed on raised platforms; instead, they were
installed directly on the roof causing water to pool on the rooftops. Therefore, the air
conditioning units serve as a source of water-intrusion into second floor apartments.
Some of the air conditioning units are inoperable and were just taken apart and left on
rooftops.[13]

D.  Ten to twelve buildings have "floating slabs". The drainage system is deteriorating and
causing the slabs to separate from the buildings. As a result, inches of water rise up from
the slab and flood first floor apartments.[14]

E.  The foundation/slabs of other buildings are sinking, cracking and shifting causing water
intrusion into downstairs units.[15] In some buildings, there were actual sink holes in the
slab.[16]

F.  The cast iron pipes that were original to the building when it was constructed in 1970 are
eroding, developing hairline fractures, and causing severe plumbing problems throughout

---

[10]     Ex. 6, Depo Tr. of John House at pp. 16-18; 24-25.
[11]     Ex. 7, Depo Tr. of Dwayne Chaney at p. 40; Ex. 8, Depo Tr. of Shelton Luvine at pp. 20-21; Ex  9, Depo
Tr. of Ronald Edwards at p. 68 and 76.
[12]     Ex. 6, Depo Tr. of John House at p. 21.
[13]     Ex. 6, Depo Tr. of John House at pp. 22-23; Ex. 10, Depo Tr. of Tony Crawford at pp. 26-27; Ex. 7, Depo
Tr. of Dwayne Chaney at pp. 54-55; Ex. 8, Depo Tr. of Shelton Luvine at p. 20.
[14]     Ex. 6, Dep Tr. of John House at p. 32.
[15]     Ex. 6, Depo Tr. of John House at p. 33; Ex. 10, Depo Tr. of Tony Crawford at pp. 35-36.
[16]     Ex. 8, Depo Transcript of Shelton Luvine at pp. 22-24; Ex. 11, Depo Tr. of Richard Coleman at p. 20.

the entire apartment complex. Both the Regional Maintenance Supervisor, John House, and the Renovation Project Manager, Tony Crawford, recommended to Dasmen's corporate office that all cast iron pipes be removed and replaced with PVC pipe to satisfy building codes and render the buildings water-tight. The recommendations were rejected by Dasmen.[17]

G. The breach of the cast iron pipes is causing urine and feces to back up from toilets, tubs and sinks. It is also causing urine and feces to drain down walls and ceilings from upstairs apartments into downstairs apartments.[18]

H. The siding on the buildings is retaining water due to the lack of gutters.[19]

I. The windows are sealed improperly causing water intrusion.[20]

J. The water intrusion is causing the wood framing inside of the walls to rot.[21]

K. The water intrusion is causing the handrails and staircases to erode and become hazardous.[22]

L. The water intrusion causes structural weakness of the second floors causing them to rot, weaken and collapse into first floor apartments. Numerous first floor ceilings have collapsed into first floor apartments. One to two ceilings per week would collapse due to water intrusion issues.[23] [24]

M. Doors are leaking causing water intrusion issues.[25]

## AMENDED PARAGRAPH 17.

The Project Manager for Defendant Dasmen Residential, Tony Crawford, provided actual notice of the foregoing vices and defects to Jay Ginsberg and Joe Erblich in the corporate office of Defendant Dasmen Residential.

---

[17] Ex. 6, Depo Tr. of John House at pp. 34 and 61; Ex. 10, Depo Tr. of Tony Crawford at pp. 26-30; Ex. 7, Depo Tr. of Dwayne Chaney at p. 55; Ex. 9, Depo Tr. of Ronald Edwards at pp. 115-116; Ex. 11, Depo Tr. of Richard Coleman at p. 20.

[18] Ex. 10, Depo Tr. of Tony Crawford at p. 36; Ex. 6, Depo Tr. of John House at p. 88; Ex. 7, Depo Tr. of Dwayne Chaney at p. 44; Ex. 8, Depo Tr. of Shelton Luvine at p. 37; Ex. 9, Depo Tr. of Ronald Edwards at pp. 124-125.

[19] Ex. 6, Depo Tr. of John House at p. 39; Ex. 11, Depo Tr. of Richard Coleman at p. 20.

[20] Ex. 6, Depo Tr. of John House at pp. 34-36; Ex. 7, Depo Tr. of Dwayne Chaney at p. 45; Ex. 8, Depo Tr. of Shelton Luvine at pp. 17-19; 27; Ex. 11, Depo Tr. of Richard Coleman at p. 20.

[21] Ex. 6, Depo Tr. of John House at pp. 33.

[22] Ex. 10, Depo Tr. of Tony Crawford at p. 32; Ex.11, Depo Tr. of Richard Coleman at p. 20.

[23] Ex. 10, Depo Tr. of Tony Crawford at p. 33; Ex. 9, Depo Tr. of Ronald Edwards at pp. 118-119.

[24] Ex. 7, Depo Tr. of Dwayne Chaney at p. 61; Ex. 8, Depo Tr. of Shelton Luvine at pp. 28-29.

[25] Ex. 7, Depo Tr. of Dwayne Chaney at p. 49.

## WIDESPREAD MOLD-INTRUSION ISSUES

### AMENDED PARAGRAPH 18.

Laguna Run's widespread water-intrusion issues occurred over an extended period of time causing the ruin of the building and spurring widespread mold-intrusion throughout the apartment complex including apartment units and common areas.[26]

### AMENDED PARAGRAPH 19.

Maintenance crews were never properly trained to perform mold remediation; hence, mold remediation was performed improperly. The maintenance men would spray the mold with Kilz or bleach and only cut out the affected portion of the sheetrock. They were not cutting the sheetrock to the wood and curing it. Insulation was not being removed and replaced. Patch-work was being performed with tenants, including small children, living in the units.[27]

### AMENDED PARAGRAPH 20.

Whenever cabinets, vanities and sheetrock were removed at Laguna Run to perform cosmetic renovations, extensive plumbing problems, mold, insect and rodent infestation was evident throughout the apartment complex[28].

### AMENDED PARAGRAPH 21.

The apartments at Laguna Run shared a common ventilation system (HVAC) which allowed mold and mold spores to spread throughout the apartment complex by air.

---

[26]     Ex. 9, Depo Tr. of Ronald Edwards at p. 125; Ex. 11, Depo Tr. of Richard Coleman at p. 20.
[27]     Ex. 6, Depo Tr. of John House at pp. 40-42; Ex. 10, Depo. Tr. of Tony Crawford at p. 28; Ex.7, Depo Tr. of Dwayne Chaney at p. 12; Ex. 9, Depo Tr. of Ronald Edwards at p. 63.
[28]     Ex. 10, Depo Tr. of Tony Crawford at pp. 12-14.

### AMENDED PARAGRAPH 22.

There was also widespread mold intrusion in the common areas of Laguna Run including, but not limited to, laundry rooms, hallways and stairwells.[29]

### AMENDED PARAGRAPH 23.

Dasmen Residential brought at least one mold abatement company to Laguna Run to provide bids for mold abatement; however, Dasmen did not hire them for financial reasons.[30]

### AMENDED PARAGRAPH 24.

The maintenance staff was instructed by Dasmen Residential to spray Kilz, bleach or Microban on the mold knowing that it would not stop the spread of mold, but only silence tenants' complaints for a few days. Former maintenance employees testified that water soaked carpets were replaced at the discretion of the property manager. Many carpets were not replaced and maintained an odor and mold growth from water damage.[31]  Tenants at Laguna Run were not relocated during mold remediation efforts, even if they had young children.[32]

### WIDESPREAD ELECTRICAL PROBLEMS

### AMENDED PARAGRAPH 25.

Laguna Run had extensive electrical wiring problems because the wiring was outdated, not up to the City of New Orleans' building codes, and posed a fire hazard. The electrical panels were left uncovered which caused safety issues.[33]

---

[29]      Ex. 6, Depo Tr. of John House at pp. 48-49; Ex. 8, Depo Tr. of Shelton Luvine at p. 35; Ex. 9, Depo Tr. of Ronald Edwards at pp. 120-121.
[30]      Ex. 7, Depo Tr. of Dwayne Chaney at pp. 25-26; Ex. 9, Depo Tr. of Ronald Edwards at p. 48.
[31]      Ex. 7, Depo Tr. of Dwayne Chaney at pp. 46-48, 95; Ex. 9, Depo Tr. of Ronald Edwards at p. 64.
[32]      Ex. 7, Depo Tr. of Dwayne Chaney at p. 88.
[33]      Ex. 6, Depo Tr. of John House at pp. 68-69; Ex. 10, Depo Tr. of Tony Crawford at pp. 26-27.

## WIDESPREAD INSECT, RODENT AND REPTILE INFESTATION ISSUES

## AMENDED PARAGRAPH 26.

There was a widespread problem with insect, rodent, and reptile infestation at Laguna Run. There were bats and rats inside of the walls and HVAC ventilation system. There were poisonous water moccasins that would enter tenants' units and nest on outside patios. There were five to six foot alligators in an unfenced lake on the property. There are signs posted by the property managers stating: "Do not feed the alligators."[34] All of these issues present an unreasonable risk of harm to tenants.

## VIOLATIONS OF LOUISIANA FIRE CODE

## AMENDED PARAGRAPH 27.

On September 3, 2019, the Louisiana State Fire Marshall and the New Orleans Fire Department conducted a unit-to-unit inspection of Laguna Run. They cited Laguna Run's owners for the following violations of the NFPA National Fire Alarm and Signaling Code and NFPA Standard for Portable Fire Extinguishers:

A. The fire alarm system at the complex was inoperable;

B. The fire alarm systems had faulty wiring;

C. Extension cords were being used as permanent wiring in electrical rooms;

D. There were open electrical junction boxes;

E. Exits were not clearly marked;

F. The travel distance to fire extinguishers exceeded the maximum of 75 feet;

G. Every apartment unit lacked an operable smoke detector;

H. Every apartment unit lacked a fire extinguisher; and

---

[34]      Ex. 7, Depo Tr. of Dwayne Chaney at pp. 71-78; Ex.11, Depo of Richard Coleman at p. 33.

I.  There was no fire safety evacuation plan posted in every building.[35]

## AMENDED PARAGRAPH 28.

Because of the hazardous condition of the fire alarm system, the New Orleans Fire Department set up a mandatory life-safety protection for the residents which allowed them to stay in their homes. The fire department set up a fire-watch to monitor the facility for smoke or fire activity until fire protection equipment could be repaired or installed. A conference call was held with the property owner, property manager, and City Code Enforcement to bring the facility into compliance. 315 battery-operated, 10 year smoke alarms were installed at Laguna Run until the deficiencies could be addressed by Dasmen. It was determined that 140 unites were occupied by HANO-voucher recipients.[36] On September 11, 2019, the fire departments re-inspected Laguna Run and noted the deficiencies were satisfied.[37] The fire alarm system at Laguna Run was inoperable until September 11, 2019.[38]  The foregoing negligent conduct of the Defendants endangers the lives of every Laguna Run resident and employee.

## VIOLATIONS OF CITY OF NEW ORLEANS' BUILDING CODES

## AMENDED PARAGRAPH 29.

In response to a request from the Metropolitan Crime Commission, the City of New Orleans developed a task force to inspect every unit at Laguna Run on September 3, 2019. The City's Code Enforcement Department documented hazards and deficiencies including "a proliferation of mold, leaking plumbing, improper electrical wiring, and non-working and missing mandatory smoke and fire alarm protection.

---

[35]     Ex. 13, State Fire Marshall's Report #GE-19-038160-1 dated 9/3/2019.
[36]     Ex. 15, Meeting Memorandum to Mayor Cantrell from Chief Tim McConnell, Supt. Fire dated 9/4/2019
[37]     Ex. 14, State Fire Marshall's Report ##GE-19-038160-2 dated 9/11/2019.
[38]     Ex. 9, Depo. Tr. of Ronald Edwards at p. 131.

## AMENDED PARAGRAPH 30.

According to the sworn testimony of Zachary Smith, the Corporate Representative of the City's Department of Safety and Permits, the presence of the following violations of Chapter 26 of the Building Code were noted at Laguna Run:

A.  A proliferation of mold throughout the complex;

B.  Holes in walls and ceilings;

C.  Ceiling leaks;

D.  Deteriorated floors;

E.  Window problems;

F.  Roof issues;

G.  Siding issues;

H.  Electrical problems;

I.  Plumbing issues including feces and urine running down walls and ceilings;

J.  Trash issues;

K.  Green Swimming Pool.

Mr. Smith testified that the City was frustrated that in the midst of all of the code violations and deplorable living conditions, *which rank at the highest levels of severity,* tenants were being evicted from the property for complaining about the conditions. He testified the owners did not appear "to be acting in good faith."[39] Further, when the City returned to inspect the property on November 5, 2019, the conditions persisted showing a grave indifference to City's authority by the owner and property manager.[40]

---

[39]     Ex. 12, Depo Tr. of Zachary Smith at pp. 22, 61, 62, 66, 67, 83,84, and 134.
[40]     Ex. 16, City of New Orleans' inspection report dated 11/5/2019

## VIOLENT CRIME/INADEQUATE SECURITY

### AMENDED PARAGRAPH 31.

Security at Laguna Run is inadequate. There is widespread crime, including violent crime, at Laguna Run. Drug deals, shootings, and murders were occurring in broad daylight in common areas of the apartment complex.[41]  In fact, one of the proposed class representatives, Mr. Dwayne Pierce, was murdered in his apartment during the pendency of this case. Due to the unsafe conditions and inadequate security, Dasmen's maintenance men started carrying firearms to protect themselves while conducting repairs. Residents frequently expressed concerns for their safety to maintenance workers.[42]

### AMENDED PARAGRAPH 32.

Approximately eighty (80) apartment units are vacant and unsecured, given access to armed squatters and criminals to inhabit them.[43] There is a huge hole in the back of the fence that people use to gain entry to the complex.[44]

## LAKE WIND EAST/LAGUNA RESERVE

### AMENDED PARAGRAPH 33.

On November 12, 2007, Defendant Lakewind East acquired the Lakewind East Apartment Complex from Defendant Triangle Real Estate. The property is located at 5131 Bundy Road, New Orleans, Louisiana 70126. Defendant Lakewind East owned the property from November 12, 2007 through December 13, 2017, when it conveyed the property to Defendant RH Lakewind East, LLC, through Act of Sale. The sale of the property was for zero

---

[41]     Ex. 6, Depo Tr. of John House at pp. 53-54
[42]     Ex. 7, Depo. Tr. of Dwayne Chaney at pp, 66-69; Ex. 8, Depo Tr. of Shelton Luvine at pp. 40-41; Ex. 9, Depo Tr. of Ronald Edwards at p. 92, 105, 108, and 157.
[43]     Ex. 7, Depo. Tr. of Dwayne Chaney at pp. 26-28.
[44]     Ex. 7, Depo. Tr. of Dwayne Chaney at p. 76.

dollars. Upon information and belief, Defendant Lakewind East misrepresented to Defendant RH Lakewind East that the subject property was in good condition and free of vices, ruin, and defects. Defendant Lakewind East changed the name of the apartment complex to Laguna Reserve Apartment Complex.[45]

## AMENDED PARAGRAPH 34.

Lakewind East/Laguna Reserve is located at 5131 Bundy Road, New Orleans, Louisiana 70127. It was constructed in 1985 and consists of 348 units. Each building is three stories. The apartments range in size from 750 square feet to 1,250 square feet.

## AMENDED PARAGRAPH 35.

When Lakewind East was owned by Triangle Real Estate, Southwood Realty served as the property manager. From December 14, 2017 through November 2019, when RH Lakewind East owned the property, Dasmen Residential served as property manager. In September 2019, RH Eastlake terminated its contract with Dasmen Residential and hired Lynd to serve as property manager.

## WIDESPREAD WATER-INTRUSION ISSUES

## AMENDED PARAGRAPH 36.

Laguna Reserve had the following water intrusion issues that caused the ruin of the building:

A. The roofs and chimney caps were not properly installed and/or designed which caused water-intrusion issues.  This issue was finally addressed in 2019, but the water intrusion had already caused substantial damages to every apartment unit and the widespread presence of mold throughout the apartment complex.[46]

---

[45]      Ex. 2, Assessor's Records for City of New Orleans pertaining to 5131 Bundy Road, New Orleans, Louisiana 70126, New Orleans, Louisiana 70126.
[46]      Ex. 6, Depo Tr. of John House at pp. 79-80; Ex. 10, Depo Tr. of Tony Crawford at p. 39; Ex. 8, Depo Tr. of Shelton Luvine at pp. 33-34

B.  The air conditioning units and hot water heaters were placed in the same closet creating moisture and water-including issues.

C.  There were water intrusion issues present on all balconies, stairwells and common areas.[47]

## WIDESPREAD MOLD-INTRUSION

## AMENDED PARAGRAPH 37.

Water-intrusion from the roofs and chimney caps was neglected over an extended period of time spurring mold-intrusion throughout Laguna Reserve. Additionally, the air conditioning units were installed in the same closet as the hot water heaters creating moisture and water-intrusion issues spurring mold growth in 1/3 of the units at Laguna Reserve.[48]  There were tremendous amounts of mold in common areas such as laundry rooms.[49]

## AMENDED PARAGRAPH 38.

The apartments at Laguna Reserve shared a common ventilation system (HVAC) which allowed mold and mold spores to spread throughout the apartment complex through the air.

## AMENDED PARAGRAPH 39.

Maintenance crews were never properly trained to perform mold remediation; hence, mold remediation was performed improperly. The maintenance men would spray the mold with Kilz /bleach and only cut out the affected portion of the sheetrock. They were not cutting the sheetrock to the wood and curing it. Insulation was not being removed and replaced. Mold remediation was being performed with tenants, including small children, living in the units.[50]

---

[47]     Ex. 6, Depo Tr. of John House at p. 81
[48]     Ex. 10, Depo Tr. of Tony Crawford at p.39; Ex. 7, Depo Tr. of Dwayne Chaney at pp. 108-111; Ex. 8, Depo Tr. of Shelton Luvine at pp. 33-34
[49]     Ex. 9, Depo Tr. of Ronald Edwards at pp. 161-162
[50]     Ex. 6, Depo Tr. of John House at pp. 40-42; Ex.10, Depo Tr. of Tony Crawford at p. 28; Ex. 7, Depo Tr. of Dwayne Chaney at p. 12; Ex. 9, Depo Tr. of Ronald Edwards at p. 63.

## WIDESPREAD ELECTRICAL PROBLEMS

### AMENDED PARAGRAPH 40.

Laguna Reserve had widespread electrical problems caused by neglect to make repairs.[51]

# WINDRUN/CARMEL SPRINGS

### AMENDED PARAGRAPH 41.

On March 11, 2008, Defendant Triangle Real Estate acquired the Windrun Apartment Complex located at 12151 N. I-10 Service Road, New Orleans, Louisiana 70128. It owned the property from March 11, 2008 through December 13, 2017, when it conveyed the property to Defendant RH Windrun, LLC, through Act of Sale. The sale was for zero dollars. Upon information and belief, Defendant Triangle Real Estate misrepresented to Defendant RH Windrun, LLC that the subject property was in good condition and free of vices, ruin, and defects. Defendant RH Windrun changed the name of the apartment complex to Carmel Springs Apartment Complex.[52]

### AMENDED PARAGRAPH 42.

The building structures known as Windrun/Carmel Springs Apartment Complex were built in 1984. The apartment complex is comprised of 400, 2-story units. The complex offers two styles of apartments ranging in size from 680 square feet to 860 square feet.

### AMENDED PARAGRAPH 43.

When Carmel Springs was owned by Triangle Real Estate, Southwood Realty served as the property manager. From December 14, 2017 through November 2019, when RH Windrun owned the property, Dasmen Residential served as property manager. Then, after the filing of the

---

[51]   Ex. 6, Depo Tr. of John House at p. 83
[52]   Ex. 3, Assessor's Records for City of New Orleans pertaining to 12151 N. I-10 Service Road, New Orleans, Louisiana 70128

subject lawsuits, RH Windrun terminated its contract with Dasmen Residential in September 2019 and hired Lynd to serve as property manager.

## WIDESPREAD WATER INTRUSION ISSUES

## AMENDED PARAGRAPH 44.

Every roof at Carmel Springs leaks causing water-intrusion.

## WIDESPREAD MOLD-INTRUSION ISSUES

## AMENDED PARAGRAPH 45.

Due to the roofs leaking over an extended period of time, there is mold-intrusion present in every building.[53]

## AMENDED PARAGRAPH 46.

The apartments at Laguna Reserve shared a common ventilation system (HVAC) which allowed mold and mold spores to spread throughout the apartment complex through the air.

## AMENDED PARAGRAPH 47.

The maintenance crews at Carmel Springs were never properly trained to perform mold remediation; hence, mold remediation was performed improperly. The maintenance men would spray the mold with Kilz and only cut out the affected portion of the sheetrock. They were not cutting the sheetrock to the wood and curing it. Insulation was not being removed and replaced. Mold remediation was being performed with tenants, including small children, living in the units.

## WIDESPREAD ELECTRICAL PROBLEMS

## AMENDED PARAGRAPH 48.

Carmel Springs has widespread electrical problems caused by neglect to make repairs. The electrical wiring does not satisfy City building codes.[54]

---

[53]   Ex. 9, Depo Tr. of Ronald Edwards at p. 82; Ex. 10, Depo Tr. of Tony Crawford at p. 52
[54]   Ex.6, Depo Tr. of John House at p. 83

## CHENAULT CREEK/CARMEL BROOKS

### AMENDED PARAGRAPH 49.

On August 9, 2007, Defendant Triangle Real Estate acquired the Chenault Creek Apartment Complex located at 12345 N-10 Service Road in New Orleans, Louisiana 70128. From August 9, 2007 through December 13, 2017, when it conveyed the property to Defendant RH Chenault Creek, LLC, through Act of Sale. The sale was for zero dollars. Upon information and belief, Defendant Triangle Real Estate misrepresented to Defendant RH Chenault Creek, LLC that the subject property was in good condition and free of vices, ruin, and defects. Defendant RH Chenault Creek changed the name of the apartment complex to Carmel Brooks Apartment Complex.[55]

### AMENDED PARAGRAPH 50.

The building structures known as Chenault Creek/Carmel Brooks Apartment Complex were built in 1989. The apartment complex is comprised of 584, 3 story units. The size of the units ranges from 539 square feet to 953 square feet.

### AMENDED PARAGRAPH 51.

When Carmel Brooks was owned by Triangle Real Estate, Southwood Realty served as the property manager. From December 14, 2017 through November 2019, when RH Chenault owned the property, Dasmen Residential served as property manager. In September 2019, RH Chenault Creek terminated its contract with Dasmen Residential and hired Lynd to serve as property.

---

[55]     Ex. 4, Assessor's Records for City of New Orleans pertaining to 12345 N-10 Service Road in New Orleans, Louisiana 70128.

## WIDESPREAD WATER-INTRUSION ISSUES

## AMENDED PARAGRAPH 52.

Carmel Brooks has leaking roofs and balconies, [56] and leaking cast iron pipes,[57] causing water-intrusion.

## WIDESPREAD MOLD-INTRUSION ISSUES

## AMENDED PARAGRAPH 53.

Due to the failure to address water-intrusion issues, there was mold-intrusion present in every building.[58]

## AMENDED PARAGRAPH 54.

The apartments at Carmel Brooks shared a common ventilation system (HVAC) which allowed mold and mold spores to spread throughout the apartment complex through the air.

## AMENDED PARAGRAPH 55.

The maintenance crews at Carmel Brooks were never properly trained to perform mold remediation; hence, mold remediation was performed improperly. The maintenance men would spray the mold with Kilz/bleach and only cut out the affected portion of the sheetrock. They were not cutting the sheetrock to the wood and curing it. Insulation was not being removed and replaced. Patch-work was being performed with tenants, including small children, living in the units.

---

[56]      Ex. 9, Depo Tr. of Ronald Edwards at p. 82; Ex.10, Depo Tr. of Tony Crawford at p. 52
[57]      Ex. 9, Depo Tr. of Ronald Edwards at p. 82; Ex. 10, Depo Tr. of Tony Crawford at p. 52
[58]      Ex. 9, Depo Tr. of Ronald Edwards at p. 82; Ex. 10, Depo Tr. of Tony Crawford at p. 52; Ex. 6, Depo Tr. of John House at p. 98, lines 22-24.

**WIDESPREAD ELECTRICAL PROBLEMS**

**AMENDED PARAGRAPH 56.**

Carmel Springs had widespread electrical problems caused by neglect to make repairs.

The electrical wiring is not up to code.[59]

# COPPER CREEK/LAGUNA CREEK

**AMENDED PARAGRAPH 57.**

On October 8, 1999, Defendant Southwood Realty acquired the Copper Creek Apartment

Complex located at 6881 Parc Brittany Blvd., New Orleans, Louisiana 70126. It owned the

property from October 8, 1999 through December 13, 2017, when it conveyed the property to

Defendant RH Copper Creek, LLC, through Act of Sale. The sale was for zero dollars. Upon

information and belief, Defendant Southwood Realty misrepresented to Defendant RH Chenault

Creek, LLC that the subject property was in good condition and free of vices, ruin, and defects.

Defendant RH Copper Creek changed the name of the apartment complex to Laguna Creek

Apartment Complex.[60]

**AMENDED PARAGRAPH 58.**

The building structures known as Copper Creek/Laguna Creek Apartment Complex were

built in 1981. The apartment complex is comprised of 216, 3 story units. The units range in size

from 617 square feet to 866 square feet.

**AMENDED PARAGRAPH 59.**

At all times pertinent to the ownership of Laguna Creek by Triangle Real Estate,

Southwood Realty served as the property manager.

---

[59]    Ex. 6, Depo Tr. of John House at p. 83
[60]    Ex. 5, Assessor's Records for City of New Orleans pertaining 6881 Parc Brittany Blvd., New Orleans, Louisiana 70126

### AMENDED PARAGRAPH 60.

From December 14, 2017 through November 2019, when RH Copper Creek owned the property, Dasmen Residential served as property manager. In September 2019, RH Copper Creek terminated its contract with Dasmen Residential and hired Lynd to serve as property.

## WIDESPREAD WATER-INTRUSION PROBLEMS

### AMENDED PARAGRAPH 61.

Laguna Creek's source of water intrusion was leaking roofs and the lack of gutters to properly drain water. A lot of the porches have collapsed due to water intrusion. The exterior of entire sides of buildings have been replaced due to water intrusion. Sometimes, there was nothing solid to adhere sheetrock to because the wood inside of the wall was decayed from water intrusion.[61]

## WIDESPREAD MOLD-INTRUSION PROBLEMS

### AMENDED PARAGRAPH 62.

Ninety-percent of all units had mold-intrusion. Sometimes maintenance crews had to replace entire walls at Laguna Creek from mold damage and water damage.[62]

### AMENDED PARAGRAPH 63.

The apartments at Laguna Creek shared a common ventilation system (HVAC) which allowed mold and mold spores to spread throughout the apartment complex through the air.

### AMENDED PARAGRAPH 64.

The maintenance crews at Laguna Creek were never properly trained to perform mold remediation; hence, mold remediation was performed improperly. The maintenance men would spray the mold with Kilz/bleach and only cut out the affected portion of the sheetrock. They

---

[61]   Ex. 6, Depo Tr. of John House at p. 98, lines 10-21; p. 99, 21-25; 100, lines 1-9.
[62]   Ex. 6, Depo Tr. of John House at p. 98, lines 10-21; p. 99, lines 4-6; 11-20

were not cutting the sheetrock to the wood and curing it. Insulation was not being removed and replaced. Patch-work was being performed with tenants, including small children, living in the units.

### FINANCIAL PROBLEMS CONTRIBUTING TO THE RUIN OF THE BUILDINGS AT ALL OF THE SUBJECT APARTMENT COMPLEXES

### AMENDED PARAGRAPH 65.

Dasmen was not paying bills to vendors for building supplies. Ace Hardware and Home Depot consistently declined Dasmen Residential's credit card rendering it impossible to perform maintenance and upkeep on buildings. Ace Hardware eventually refused to do business with Dasmen until its account was satisfied. As a result, Dasmen employees were gathering building supplies from vacant apartment units in order to perform repairs in occupied apartment units.[63]

### AMENDED PARAGRAPH 66.

In 2018, Dasmen Residential set a budget of $10,000 to renovate 5 apartment units in each of the subject complexes. The work was bid out to outside contractors. After the outside contractors began the renovation process, Defendant Dasmen Residential arbitrarily lowered the budget to $3,000 per unit. This caused problems with maintaining relationships with outside contractors to perform work for Dasmen.[64]

### FACTS SUPPORTING INTENTIONAL TORT EMPLOYEES AT ALL APARTMENT COMPLEXES

### AMENDED PARAGRAPH 67.

Defendants *intentionally* exposed maintenance crews to mold and mold spores without providing them any mold-abatement training and without providing them with personal

---

[63]     Ex. 6, Depo Tr. of John House at pp. 50-51; Ex. 10, Depo Tr. of Tony Crawford at p. 18; Ex. 8, Depo Tr. of Shelton Luvine at pp. 16-17, 40; Ex. 9, Depo Tr. of Ronald Edwards at pp. 43-45.
[64]     Ex.10, Depo Tr. of Tony Crawford at pp. 16-18.

protective equipment including N-95 respirators, masks, safety goggles, and boots. Additionally, maintenance workers were not educated regarding the health effects posed by mold.[65] For example, with knowledge that Dwayne Chaney was asthmatic, he was intentionally exposed to mold without personal protective equipment.[66]

**FACTS SUPPORTING MISREPRESENTATION AND
FRAUD AT ALL APARTMENT COMPLEXES**

**AMENDED PARAGRAPH 68.**

Defendants misrepresented and/or suppressed of the truth regarding the unsafe, unsanitary, and hazardous conditions of the apartments made with the intention either to obtain an unjust advantage for Defendants and/or to cause a loss or inconvenience to the Plaintiffs.

**AMENDED PARAGRAPH 69.**

Dasmen Residential decided to make cosmetic changes to apartments instead of addressing the structural integrity of the buildings. This procedure was referred to as "operation make-ready."[67] They did not warn potential tenants about the presence of mold in the units before they moved into the property, including parents with small children. They wanted to continue to rent units despite knowledge of the mold-intrusion and temporarily covered the mold with paint to prevent tenants from knowing about the environmental hazards, prior to signing leases and moving into units.[68]

---

[65]     Ex. 6, Depo Tr. of John House at pp. 42-44; Ex. 10, Depo Tr. of Tony Crawford at p. 55; Ex. 7, Depo Tr. of Dwayne Chaney at p. 59, pp. 83-85; Ex. 8, Depo Tr. of Shelton Luvine at pp. 29-30; Ex. 9, Depo Tr. of Ronald Edwards at pp. 138-139; 142-143.
[66]     Ex. 7, Depo Tr. of Dwayne Chaney at pp. 85-87.
[67]     Ex. 9, Depo Tr. of Ronald Edwards at p. 89.
[68]     Ex. 6, Depo Tr. of John House at p. 55; Ex. 7, Depo Tr. of Dwayne Chaney at pp. 89, 92-93, and 99.

## AMENDED PARAGRAPH 70.

Dasmen maintenance men were instructed never to admit to tenants that there was "mold" in every unit. The maintenance men were trained to refer to "mold" on records as "AMG" which meant "assumed mold growth." The maintenance men were instructed to spray Kilz, bleach or Microban on the mold just to quiet complaints from tenants knowing that the mold would resurface days later. The maintenance men were instructed by Dasmen to tell tenants that black mold was just dirt.[69]

## CONTRA NON VALENTUM

## AMENDED PARAGRAPH 71.

Based upon the concealment of the hazardous conditions as described in Amended Paragraph 70, Plaintiffs expressly plead the jurisprudential doctrine of *contra non valentem* as an exception to prescription. The vices, defects and hazardous environmental conditions were routinely secreted from the plaintiffs.

The City of New Orleans did not confirm the presence of widespread mold until September 2019, but it did not disclose its findings to the Plaintiffs or the public. Plaintiffs' counsel received the City's file via a Freedom of Information request after the filing of the *Akeem* lawsuit. Mold testing by undersigned counsel did not begin in connection with this matter until September 2019. Media reports of mold did not occur until September 2019. A request for class certification was not filed until September 27, 2019.

---

[69] Ex. 9, Depo Transcript of Ronald Edwards at p. 64.

## CONTINUING TORT

### AMENDED PARAGRAPH 72.

Plaintiffs expressly plead the jurisprudential doctrine of *continuing tort* as an exception to prescription. The hazardous conditions are still widespread at all of the apartment complexes at the time of this filing.

## SPECIFIC ALLEGATIONS OF FACT
## REGARDING THE CLAIMS AND DAMAGES OF
## NAMED PLAINTIFF/PROPOSED CLASS REPRESENTATIVES

### JOSHUA AKEEM

### AMENDED PARAGRAPH 73.

Mr. Akeem is a former lessee at the Laguna Run. His former address was 7107 Martin Drive, Apartment H-104, New Orleans, Louisiana 70126. Mr. Akeem had a valid and enforceable lease with Defendants Dasmen Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Mr. Akeem secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreements. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Mr. Akeem, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322. As such, Mr. Akeem alleges breach of contract.

Mr. Akeem resided in the apartment complex from March 22, 2019 through August 1, 2019. Upon moving into his unit, he noticed a strange, musty order. He reported it to the property managers who assured him it was the smell of paint and it would go away. The

apartment did not smell like paint; rather, to him, it smelled like mildew and that odor did not subside.

    In mid-May 2019, Mr. Akeem noticed there was water leaking from the closet ceiling of in the second bedroom of his apartment (not the master bedroom). When he looked closer at the leaking water, he saw a hole emerging and a black substance on the ceiling. He reported it to Crystal Agnew, the assistant property manager. Ms. Agnew said that the maintenance staff would come to Mr. Akeem's apartment to check it out within a few days. Maintenance never showed up.

    When maintenance failed to come to his apartment, Mr. Akeem returned to the office to follow up with Daphne Walker (property manager) and Crystal Agnew (assistant property manager) about the presence of water intrusion and the black substance. About a week after the meeting, maintenance staff members came to his apartment. They sprayed the affected area of the ceiling with bleach and patched up the hole in the ceiling. They led Mr. Akeem to believe that the problem was remedied.

    A few weeks later, Mr. Akeem started noticing another black substance emerging in the master bedroom bathroom. This prompted him to perform a full inspection of the apartment. He found a black substance in the master bedroom in the corner by the windowsill as a result of water-intrusion from the window. He found the black substance in the walkway to the bathroom. And, he found a tremendous amount of black substance in the linen closet inside of the bathroom.

    On April 10, 2019, Mr. Akeem sent a letter of notice of unhealthy and unsafe living conditions letter to Laguna Run. He was on video handing the front office employee the letter, and he was told to leave the office and do not return. Thereafter, the property management staff

at Laguna Run viciously targeted Mr. Akeem as a troublemaker. He was barred enty into the

property management office; therefore, he was not allowed to retrieve his mail which was being

withheld by the property managers inside of the office, without his permission, for several

months. Mr. Akeem sought assistance from the U.S. postal police to get his mail from Dasmen.

The U.S. postal police advised Dasmen that it could not withhold Mr. Akeem's mail. Despite

that federal mandate, the mail was still being withheld. Therefore, Mr. Akeem filed a petition for

a restraining order in Orleans Parish asking the district court judge to order Dasmen to turn over

his mail. The Court issued an order compelling Dasmen to turn over the mail. For several weeks,

Mr. Akeem was accompanied by Civil Sheriff's officers to get his mail from the property

management office.

Angry over the outcome of the mail issue, the property managers launched a campaign to

evict Mr. Akeem. A letter was placed on his door on May 30, 2019 informing him of a number

of apartment complex rules regarding office hours, payment of rent, pets, parking, etc. He was

instructed that no animals were allowed on the property without the permission of the

management, despite the fact that the management had documentation (permits) allowing him to

have an emotional support animal (dog) on premises. Rightfully feeling harassed by the property

managers, Mr. Akeem sent the property managers a "cease and desist" letter. He advised them

that he was relying upon Louisiana's Landlord-Tenant statutes regarding the tenant's right to

"repair and deduct" if a landlord fails to take care of important repairs, such as mold infestation.

**On July 4, 2019, Mr. Akeem retained Terry Cederholm of Mold Inspection &**

**Testing to perform a basic mold inspection of his apartment. The analysis of the mold**

**sample was performed on July 8, 2019 by Southeast Environmental Microbiology**

**Laboratories. The unit tested positive for *Stachybotrys, Penicillium, Aspergillus*, and other**

**forms of mold/mold spores.**[70] At that time, Mr. Akeem receiving a report educating him regarding the adverse health effects caused by mold to which he had been exposed. He brought the results to the attention of Defendant Dasmen and requested abatement.

In response to Mr. Akeem's "cease and desist" letter, he was served with an Eviction Notice from Dasmen on August 9, 2019. The letter stated that he was being evicted for non-payment of $880.00 of rent. The letter gave him five (5) days to vacate the premises. The following day, on August 9, 2019, Mr. Akeem received a second eviction notice stating that he was being evicted for non-payment of $2,698.50 of rent. Believing that this eviction lacked merit and was retaliatory in nature, Mr. Akeem filed an opposition to the eviction process at First City Court for the City of New Orleans. Judge Angelique Reed ruled against Dasmen and applied the "repair and deduct" law to the facts of the case. After this ruling, Mr. Akeem was advised that he only owed $18.00 to Dasmen. He used an app on his phone to pay the $18.00.

After making that payment, Mr. Akeem was locked out of the online portal used to pay rent. He was instructed to pay $700.00 in August 2019. The system did not accept his payment. Dasmen retained an attorney who went back to First City Court and advised Judge Reed that Mr. Akeem failed to pay his August rent and a bench warrant was issued for him. When he learned what had occurred, Mr. Akeem retained Southeast Louisiana Legal Services to represent him. At the hearing, Judge Reed suggested that, given the history between the parties, it would be best for Mr. Akeem to move. Before he could make arrangements to move, Dasmen took all of Mr. Akeem's belongings out of his apartment and put them in the dumpster and/or next to the dumpster. Many of his personal belongings were stolen. He retrieved what he could from the

---

[70]     Ex. 17, Joshua Akeem Mold Testing Results dated 7/8/2019

dumpster and moved into a hotel with his parents. Councilmember Cyndi Nguyen made payment arrangements for the hotel through the City of New Orleans.

While residing at Laguna Run, Mr. Akeem personally observed inadequate security and ongoing criminal activity such as drug dealing in common areas. He became the victim of domestic violence at Laguna Run. He is also aware of numerous violent crimes that have occurred at the complex. Based upon Mr. Akeem's personal observations, Laguna Run is not a safe place to live.

While residing at Laguna Run, Mr. Akeem personally experienced the major plumbing problem of feces and urine backing up into his apartment from both toilets. He experienced roach infestation and bed bugs in his mattress. He encountered possums and numerous snakes on his patio. Mr. Akeem personally observed the following conditions throughout the apartment complex in common areas:

- Visible mold growth in other apartment units and common areas such as laundry rooms and hallways;
- Discoloration or water stains on walls and ceilings in other apartment units and common areas such as laundry rooms and hallways; and
- Areas of standing water or condensation in common areas such as laundry rooms and hallways.

The harmful conditions in Mr. Akeem's apartment were not apparent and/or visible to him at the time that he moved into his apartment at Laguna Run. He did not have any reason to believe that there was mold in the apartment unit when he moved in because the property management staff misrepresented to him that the apartment was habitable and free from environmental hazards and major plumbing./water intrusion issues.

During the time that Mr. Akeem lived in the apartment complex, he experienced headaches, respiratory infections, coughing, congestion, sneezing, sinus problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase of allergy symptoms. He now

relates his illnesses to the hazardous conditions posed by water-intrusion and mold exposure at Laguna Run. He has received medical treatment from The New Orleans East Hospital, Dr. Godwin Ogbuokiri, and Megan Dauenhauer (psychiatrist).

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **JOSHUA AKEEM** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); financial losses (past, present and future); property damages; and relocation expenses.

**BRANDY WILSON**

**AMENDED PARAGRAPH 74.**

**BRANDY WILSON** is a former lessee of Hidden Lake and Laguna Run. Her address at Laguna Run was 7209 Martin Drive, Apartment F-209, New Orleans, Louisiana 70126. Ms. Wilson had a valid and enforceable contract of lease with Defendants Eastlake Development and Latter & Blum and then Defendants Dasmen Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Wilson secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreements. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Wilson, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322. As such, Ms. Wilson alleges breach of contract.

Ms. Wilson resided in her apartment with her minor children Jadyn Holmes (age 5) and Jamar Holmes, Jr. (age 2). She experienced visible mold growth, discoloration or water stains on

internally facing walls and ceilings, discoloration or water stains on externally facing walls, areas of standing water or condensation on floors, wall, or window sills, and musty odors.

Ms. Wilson and her children experienced worsening of allergies, fever, nasal and sinus congestion, burning/watering eyes, coughing, sore throat, flu-like symptoms, skin irritation and headaches. Her minor children received medical treatment for various health effects that she attributes to mold exposure at Laguna Run. Her minor child, Jamar Holmes, Jr. (age 3) was diagnosed with RSV pneumonia twice and pneumonia once, while residing at Laguna Run. He was treated by the following healthcare providers: Children's Hospital – New Orleans; Ochsner Baptist; Katie Brown, MD (Pediatrician) and LSU Healthcare Network. Ms. Wilson's minor child, Jadyn Holmes (age 5) consistently experienced sinus and ear infections. It was necessary for her to undergo surgery to place tubes in her ears, which she still has to this date. Jadyn has received medical treatment from Ochsner Medical Center; Katie Brown, MD (Pediatrician); and LSU Healthcare Network.

Ms. Wilson moved into Hidden Lakes which later became Laguna Run on July 10, 2017, when Latter & Blum managed the complex. About four (4) months after moving into the apartment, she noted the presence of a black substance on and around the windowsill in the master bedroom and the other bedrooms. She also noted the presence of a black substance and water stains on the bathroom ceiling. Her requests for maintenance were ignored until her ceiling in the bathroom collapsed from water-intrusion and mold growth. The maintenance staff responded to the fallen ceiling by boarding it, spraying bleach on it, and painting over it. The maintenance men also sprayed bleach on the walls in her bedroom. They assured her that the problem had been addressed. However, the water intrusion and black substances kept returning. Despite Ms. Wilson's own cleaning efforts, the black substances continued to persist. The

apartment smelled like mildew and Ms. Wilson and her children began to experience consistent respiratory problems and other health effects.

**The unit was tested for mold on by Oscar Moya, and the results were analyzed by Air Allergen Mold Testing on September 24 2019. The test confirmed the presence of harmful *Aspergillus, Bipolaris,  Chaetomium, and Curvularia* mold and mold spores in her unit.**[71] At that time, Ms. Wilson was provided a report educating her regarding the adverse health effects caused by the mold to which she had been exposed.

Upon receipt of the mold test results evidencing a serious health concern that explained why her children continued to suffer from serious adverse health effects living in Laguna Run, Ms. Wilson decided to move out in October or November 2019. From the date of the major water intrusion issues and mold to the date that they moved out of the apartment, negligent attempts were made by the maintenance staff to address the water intrusion, mildew and mold in Ms. Wilson's apartment.

While residing at Laguna Run, Ms. Wilson personally observed inadequate security and ongoing criminal activity such as drug dealing in common areas. She is also aware of numerous violent crimes that have occurred at the complex. Based upon her personal observations, Laguna Run is not a safe place to live.

While residing at Laguna Run, she personally experienced flies and gnats in her unit. She personally observed the following conditions throughout the apartment complex in common areas:

- Visible mold growth in other apartment units and common areas such as laundry rooms and hallways;
- Discoloration or water stains on walls and ceilings in other apartment units and common areas such as laundry rooms and hallways; and

---

[71]     Ex. 18, Brandy Wilson Mold Testing Results dated 9/24/2019

- Areas of standing water or condensation in common areas such as laundry rooms and hallways.

The harmful conditions in Ms. Wilson's apartment were not apparent and/or visible to her at the time that she moved into her apartment at Laguna Run. Ms. Wilson did not have any reason to believe that there was mold in the apartment unit when she moved in because the property management staff misrepresented to her that the apartment was habitable and free from environmental hazards and major plumbing./water intrusion issues.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **BRANDY WILSON** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); financial losses (past, present and future); property damages; and relocation expenses.

## JANICE MORGAN

## AMENDED PARAGRAPH 75.

**JANICE MORGAN** is a former lessee of Hidden Lake and Laguna Run. Her former address at Laguna Run was 7123 Martin Drive, Apartment G-106, New Orleans, Louisiana 70126. Ms. Morgan had a valid and enforceable lease contract with Defendants Eastlake Development and Latter & Blum and then Defendants Dasmen Residential and the RH Entities. Under the provisions of the lease, the Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Morgan secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreements. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Morgan, Defendants failed to diligently make repairs to

remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322. As such, Ms. Morgan alleges breach of contract.

While living at Laguna Run, Ms. Morgan experienced visible mold growth, discoloration or water stains on internally facing walls and ceilings, discoloration or water stains on externally facing walls, areas of standing water or condensation on floors, wall, or window sills, and musty odors. As a result of exposure to deplorable living conditions, Ms. Morgan experienced worsening of allergies, respiratory problems, nasal and sinus congestion, burning/watering eyes, coughing, sore throat, and flu-like symptoms, itching skin, headaches, and achiness. Ms. Morgan addressed her symptoms with over the counter medication. She also sought treatment for various health effects that she now attributes to mold exposure at Laguna Run at The New Orleans East Hospital and Odyssey House Louisiana, Inc.

About one month after moving into Laguna Run, Ms. Morgan noted the presence of a black substance around the windowsill of her bedroom and in the kitchen near an air conditioning vent and near the refrigerator. She walked to the maintenance office and verbally presented a maintenance request. She was advised by the property management staff and the maintenance staff that the black substances were "dirt/dust" and she should clean them. Despite her cleaning efforts, the black substances continued to persist. Her apartment smelled like mildew and she began to experience consistent respiratory problems and other health effects.

On the morning of September 24, 2019, which happened to be her birthday, Ms. Morgan woke up to a disaster in her apartment. When she placed her bare feet on the floor in an attempt to get out of bed, the floor was soaked with ankle-deep water. The smell was extremely foul. As she advanced toward the bathroom, Ms. Morgan noticed that feces and urine were all over the floor of her apartment. The bathtub was filthy, and it was filled with urine, water and feces. The

toilet overflowing with feces. And, feces was running down the wall in the bathroom and emerging from the ceiling.

Ms. Morgan went to the property management office to report this disaster. She was advised by the property management staff that she would need to clean up her apartment and address the issue. The maintenance staff delivered a wet-dry vacuum to Ms. Morgan's apartment and a bucket of primer. She was left to address this plumbing nightmare, despite her adamant pleas for help from the property management office. Not knowing how to properly clean the unit, Ms. Morgan used a combination of cleaning supplies including bleach and ammonia. She became extremely ill and sought medical treatment from New Orleans East Hospital.

On September 26, 2019, Ms. Morgan and several other Laguna Run residents were interviewed by a news reporter named Sherman Desselle of WDSU regarding the deplorable living conditions at the complex. The media story showed actual video footage of feces all over the floor of Ms. Morgan's apartment. In response to Ms. Morgan's appearance on WDSU, she was evicted from Laguna Run. She had to rent a U-Haul truck and pay to store her damaged belongings in a storage facility. She had to pay people to help her to move. From the date of the major plumbing problem to the date that she moved out of her apartment in Laguna Run, no attempt was made by the maintenance staff to address the water intrusion, mildew and feces in Ms. Morgan's apartment.

**The unit was tested for mold on by Oscar Moya, and the results were analyzed by Air Allergen Mold Testing on December 10, 2019. Ms. Morgan's unit tested positive for hazardous *Aspergillus/Penicillium, Zygomycete, Acremonium and Ulocladium* mold and**

**mold spores.**[72]  At that time, Ms. Morgan was provided a report educating her regarding the adverse health effects caused by the mold to which she had been exposed.

While residing at Laguna Run, Ms. Morgan personally experienced roach infestation. She personally observed the following conditions throughout the apartment complex in common areas:

- Visible mold growth in other apartment units and common areas such as laundry rooms and hallways;
- Discoloration or water stains on walls and ceilings in other apartment units and common areas such as laundry rooms and hallways; and
- Areas of standing water or condensation in common areas such as laundry rooms and hallways.

The harmful conditions in Ms. Morgan's apartment were not apparent and/or visible to her at the time that she moved into her apartment at Laguna Run. She did not have any reason to believe that there was mold in the apartment unit when she moved in because the property management staff misrepresented to her that the apartment was habitable and free from environmental hazards and major plumbing./water intrusion issues.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); financial losses (past, present and future); property damages; and relocation expenses.

---

[72]      Ex. 19, Janice Morgan Mold Testing Results dated 12/10/2019

## LAQUINTA CARTER

## AMENDED PARAGRAPH 76.

**LAQUINTA CARTER** is a former lessee of Hidden Lake and Laguna Run. Her former address at Laguna Run was 7123 Martin Drive, Apartment G-104, New Orleans, Louisiana 70126.  Ms. Carter had a valid and enforceable lease with Defendants Eastlake Development and Latter & Blum and then Defendants Dasmen Residential and the RH Entities. Under the provisions of the lease, the Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Carter secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Carter, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322.  As such, Ms. Carter alleges breach of contract.

Ms. Carter resided with her minor children: Darrellnay Carter, Bobby Spears and Robert Spears. While living at Laguna Run, Ms. Carter experienced visible mold growth, discoloration or water stains on internally facing walls and ceilings, discoloration or water stains on externally facing walls, areas of standing water or condensation on floors, wall, or window sills, and musty odors.

Shortly after moving into Laguna Run, and throughout her period of occupancy, Ms. Carter and her minor children [Darrellnay Carter, Bobby Spears and Robert Spears] experienced the following health effects on a consistent basis: headaches, respiratory infections, coughing, congestion, sneezing, sinus problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms. Robert Spears also experienced wheezing in

addition to the other symptoms mentioned. Ms. Carter sought medical attention at The New

Orleans East Hospital for persistent and chronic headaches. She also received medical treatment

from her primary care doctor, Dr. Amy Navas, at Daughters of Charity located at 3201 S.

Carrollton Avenue, New Orleans, Louisiana 70118. Ms. Carter's minor child, Robert Spears, was

diagnosed with asthma in October 2019, after residing at Laguna Run. Robert Spears received

medical treatment at The New Orleans East Hospital located at 5620 Read Blvd., New Orleans,

Louisiana 70127. He has also received treatment for his medical conditions from his pediatrician,

Dr. Linda Doughty-White, Pediatric Associates New Orleans, 4511 Downman Road, New

Orleans, Louisiana 70126.

Shortly after moving into Laguna Run in 2018, Ms. Carter noted the presence of a black

substance in the hall bathroom and in a bedroom on the wall, near the floor. She verbally

presented a maintenance request. She was advised by the property management staff and

maintenance staff that the black substances were "dirt/dust" and she should clean them. She

followed the property management staff's instructions and attempted to clean the "dirt/dust"

herself with an array of household cleaning products to no avail. Despite her cleaning efforts, the

black substances continued to grow and worsen in her apartment. The apartment smelled like

mildew and Ms. Carter and her children began to experience consistent respiratory problems and

other health effects. Ms. Carter reported the presence of the consistent water intrusion and

expansion of the area containing black substances to Laguna Run's property management office.

In addition to the water intrusion and growth of mold in her apartment, on the morning of

September 24, 2019, Ms. Carter woke up to a disaster in her Laguna Run apartment unit. When

she placed her bare feet on the floor in an attempt to get out of bed, the floor was soaked with

ankle-deep water. The smell was extremely foul in her apartment. As she advanced toward the

bathroom, Ms. Carter noticed that feces was all over the floor of her apartment. The bathtub was filthy, and it was filled with water, urine and feces. The toilet was overflowing with feces. And, feces and urine were running down the wall in the bathroom and emerging from the ceiling.

**The unit was tested for mold on by Oscar Moya, and the results were analyzed by Air Allergen Mold Testing on September 27, 2019. The unit tested positive for the presence of the following harmful mold and mold-spores: _Aspergillus/Penicillium_[73]**. At that time, Ms. Carter was provided a report educating her regarding the adverse health effects caused by the mold to which she had been exposed.

While residing at Laguna Run, Ms. Carter personally observed inadequate security and ongoing criminal activity such as drug dealing in common areas. She is also aware of numerous violent crimes that have occurred at the complex. Based upon Ms. Carter's personal observations, Laguna Run is not a safe place to live.

While residing at Laguna Run, Ms. Carter personally experienced roach and fly infestation in her apartment. She personally observed the following conditions throughout the apartment complex in common areas:

- Visible mold growth in other apartment units and common areas such as laundry rooms and hallways;
- Discoloration or water stains on walls and ceilings in other apartment units and common areas such as laundry rooms and hallways; and
- Areas of standing water or condensation in common areas such as laundry rooms and hallways.

The harmful conditions in Ms. Carter's apartment were not apparent and/or visible to her at the time that she moved into the apartment at Laguna Run. She did not have any reason to believe that there was mold in the apartment unit when she moved in because the property

---

[73]     Ex. 20, Laquinta Carter Mold Testing Results dated 9/27/2019

management staff misrepresented to her that the apartment was habitable and free from environmental hazards and major plumbing./water intrusion issues.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); financial losses (past, present and future); property damages; and relocation expenses.

## DARERANICA DUPLESSIS

## AMENDED PARAGRAPH 77.

**DARERANICA DUPLESSIS** is a former lessee of Hidden Lake and Laguna Run. Her former address at Laguna Run was 7000 Morrison Road, Apartment A-101, New Orleans, Louisiana 70126. Ms. Duplessis had a valid and enforceable lease with Defendants Eastlake Development and Latter & Blum and then Defendants Dasmen Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Duplessis secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Duplessis, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322.  As such, Ms. Duplessis alleges breach of contract.

Ms. Duplessis moved into Laguna Run on February 7, 2019. After living there about one or two months, she and her mother started to notice a strong mildew smell in the apartment. By April 2019, Ms. Duplessis started to notice black substances forming in the entranceway of the

apartment. The black substance was along the wall and the ceiling. She reported the black substance to the property management office, and was advised that it would take some time for maintenance staff to come because they were backed up with request. The black substance continued to grow. Then, Ms. Duplessis noticed more of the black substance growing under the sink in the bathroom and around the bathtub. She reported the worsening problem to the property management office. Again, she was reassured that someone would come to address it "soon."

Ms. Duplessis was taking pictures of the growing black substances and providing them to the property managers. Near the end of April 2019, Ms. Duplessis and her daughter walked into the front door of the apartment and her daughter slipped and fell in water and parts of the entranceway ceiling that had collapsed. Ms. Duplessis was furious. She went directly to the property management office to complain about the collapsed ceiling. Ms. Duplessis felt that she had warned them about the ceiling, and they ignored her.

From the time that Ms. Duplessis reported the ceiling collapse until the end of May 2019, feces and urine were entering her apartment through the ceiling. The stench was horrible. Ms. Duplessis could not have guests over to her apartment, and she and her baby started spending the night by Ms. Duplessis's mother's house. By the end of May 2019, the maintenance men showed up to address the mold and the collapsed ceiling. They advised Ms. Duplessis that the pipes from the apartment upstairs were corroding. They needed to order parts but the owner was too cheap to replace all of the pipes that they needed to repair. They told Ms. Duplessis that, until the owners replace all of these pipes, this problem will continue to happen.

Ms. Duplessis watched the men repair her ceiling and wall. They did not relocate Ms. Duplessis and her daughter while the repairs were undertaken. Ms. Duplessis noticed that they did not remove any of the pink insulation that was wet. They just sprayed the beams and put dry

wood up and patched the ceiling. The men repainted the patched area. Within weeks, the mold started coming right back. Ms. Duplessis reported the mold to the property management office and she asked to be allowed to break the lease and move. The property management office denied her request. Ms. Duplessis also reported mold coming back in her unit to her HANO caseworker. Inspectors from HANO came out to inspect her unit three times and it failed each time. After the final failure, Ms. Duplessis was allowed to move out in December 2019.

**The unit was tested for mold on by Oscar Moya, and the results were analyzed by Air Allergen Mold Testing on September 17, 2019. Harmful *Cladosporium* mold spores were detected.[74]** At that time, Ms. Duplessis was provided a report educating her regarding the adverse health effects caused by the mold to which she had been exposed.

During the time period that Ms. Duplessis resided at Laguna Run, she and her minor child, Honesty Washington, suffered with headaches, respiratory infections, coughing, congestion, sneezing, sinus problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms. Ms. Duplessis has addressed her symptoms and her child's symptoms with over-the-counter medications. Additionally, Ms. Duplessis sought medical treatment for herself and her minor child, Honesty Washington (age 2), for various health effects that she attributes to mold exposure at Laguna Run. Honesty Washington has been placed on an inhaler due to diagnosis with a respiratory illness (bronchitis), while living at Laguna Run. She was treated by the following healthcare providers: Children's Hospital of New Orleans and Daughters of Charity. Ms. Duplessis has received medical treatment at the following facility: Touro Hospital.

---

[74]     Ex. 21, Dareranica Duplessis Mold Testing Results dated 9/17/2019

During the time period that Ms. Duplessis resided at Laguna Run, she observed visible mold growth, discoloration of water stains on walls and ceilings, areas of standing water or condensation on the floors, walls and window sills, and musty odors. While residing at Laguna Run, Ms. Duplessis personally observed inadequate security and ongoing criminal activity such as drug dealing in common areas. She is also aware of numerous violent crimes that have occurred at the complex. Based upon Ms. Duplessis's personal observations, Laguna Run is not a safe place to live.

While residing at Laguna Run, Ms. Duplessis personally experienced flies and gnats in her apartment unit. She personally observed the following conditions throughout the apartment complex in common areas:

- Visible mold growth in other apartment units and common areas such as laundry rooms and hallways;
- Discoloration or water stains on walls and ceilings in other apartment units and common areas such as laundry rooms and hallways; and
- Areas of standing water or condensation in common areas such as laundry rooms and hallways.

The harmful conditions in Ms. Duplessis's apartment were not apparent and/or visible to me at the time that she moved into the apartment at Laguna Run. She did not have any reason to believe that there was mold in the apartment unit when she moved in because the property management staff misrepresented to her that the apartment was habitable and free from environmental hazards and major plumbing./water intrusion issues.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **DARERANICA DUPLESSIS** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); financial losses (past, present and future); property damages; and relocation expenses.

## ANDREA RILEY

## AMENDED PARAGRAPH 78.

**ANDREA RILEY** is a former lessee at Laguna Run. Her former address at Laguna Run was 7021 Martin Drive, Apartment J-103, New Orleans, Louisiana 70126. Ms. Riley resided at Laguna Run with her minor children Kurt Riley (13) and Reginae Riley (6).  Ms. Riley had a valid and enforceable lease with Defendant Dasmen Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Riley secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreement. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Riley, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322. As such, Ms. Riley alleges breach of contract.

As a HUD/HANO Section 8 voucher recipient, Ms. Riley also alleges that the Defendants breached their contractual duty with HUD pursuant to 24 C.F.R. Part 5, §5703(f) to maintain said apartments and common areas free of health and safety concerns, including, but not limited to, the presence of mold for the benefit of the leaseholders of the apartment complex and other permanent residents.

While residing at Laguna Run, Ms. Riley and her children suffered with headaches, respiratory infections, coughing, congestion, sneezing, sinus problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms. Ms. Riley addressed her symptoms with over-the-counter medications. However, her minor children were

treated by the following healthcare providers: The New Orleans East Hospital; Dr. Louis Bevrotte (Pediatrician); and Daughters of Charity.

For several months in 2019, Ms. Riley had been smelling a strange, mildew-like order in her apartment but she could not tell where it was coming from. However, in July 2019, when her brother came to visit, he helped Ms. Riley to move furniture and things out of the closets and mold was in the master bedroom and in her daughter's room. Ms. Riley discovered a large amount of  water intrusion and mold, which she reported to HANO and to Laguna Run.

Laguna Run's maintenance staff came to the apartment and sprayed bleach on the mold, but it kept coming back. They made no effort to remove the moldy sheetrock or to replace the moldy carpet. Additionally, Ms. Riley experienced a ceiling collapse in the living room while living at Laguna Run. Upon information and belief, the ceiling collapsed due to water intrusion. HANO came out to inspect the apartment and it failed several inspections as uninhabitable. The apartment remained in deplorable condition until the day Ms. Riley moved out. Ms. Riley moved out due to a series of failed HANO inspections due to water intrusion and the presence of mold.

**The unit was tested for the presence of mold on October 1, 2019 by Oscar Moya of Moya Environmental. The sample was analyzed by Air Allergen Mold Testing, Inc. on October 2, 2019. The unit tested positive for the presence of harmful *Stachybotrys* mold.**[75] At that time, Ms. Riley was provided with a report educating her regarding the adverse health effects caused by the mold to which she had been exposed.

While residing at Laguna Run, Ms. Riley personally observed inadequate security and ongoing criminal activity such as drug dealing in common areas. She is also aware of numerous

---

[75]     Ex. 22, Andrea Riley Mold Testing Results dated 10/2/2019

violent crimes that have occurred at the complex. Based upon Ms. Riley's personal observations, Laguna Run is not a safe place to live.

While residing at Laguna Run, Ms. Riley personally experienced flies and gnats in her apartment. She personally observed the following conditions throughout the apartment complex in common areas:

- Visible mold growth in other apartment units and common areas such as laundry rooms and hallways;
- Discoloration or water stains on walls and ceilings in other apartment units and common areas such as laundry rooms and hallways; and
- Areas of standing water or condensation in common areas such as laundry rooms and hallways.

The harmful conditions in Ms. Riley's apartment were not apparent and/or visible to me at the time that she moved into her apartment at Laguna Run. She did not have any reason to believe that there was mold in the apartment unit when she moved in because the property management staff misrepresented to her that the apartment was habitable and free from environmental hazards and major plumbing./water intrusion issues.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **ANDREA RILEY** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); financial losses (past, present and future); property damages; and relocation expenses.

### **ANGELA WOODSON**

### **AMENDED PARAGRAPH 79.**

**ANGELA WOODSON** is a former lessee at Laguna Run. Her former address at Laguna Run was 7001 Martin Drive, Apt. M-210,  New Orleans, Louisiana 70126. Ms. Woodson had a valid and enforceable lease with Defendants Dasmen Residential and the RH Entities. Under the

provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Woodson secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreements. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Woodson, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322.  As such, Ms. Woodson alleges breach of contract.

While residing at Laguna Run, Ms. Woodson experienced visible mold growth, discoloration or water stains on internally facing walls and ceilings, discoloration or water stains on externally facing walls, areas of standing water or condensation on floors, wall, or window sills, and musty odors. Ms. Woodson's apartment had an upstairs and downstairs floor plan. There was a ceiling leak that caused water intrusion from upstairs to the first floor. The ceiling in the living room began to bubble up from water intrusion. Ms. Woodson repeatedly brought this to the attention of the property manager. Before the maintenance men came to repair the leak, the ceiling material started breaking off the ceiling and more and more water intrusion was occurring between September 13th and October 4, 2019. Ms. Woodson was collecting water in buckets provided to her by the maintenance staff.

On October 4, 2019, Ms. Woodson took a shower, dried herself off, and went downstairs to start the coffee pot. As soon as she stepped off the landing and took a few steps forward, Ms. Woodson slipped and fell to the ground as a result of slipping in water. The ceiling had completely collapsed in the area of the ceiling fan in the living room. Ms. Woodson has undergone extensive medical treatment as a result of her slip and fall accident which is the subject of a separate pending lawsuit. Ms. Woodson has also received emergency room treatment

for pneumonia and other respiratory issues as a result of the deplorable living conditions in her apartment.

In addition to the water intrusion in Ms. Woodson's apartment, there was mold growth in the living room and the kitchen. As a result of exposure to mold, Ms. Woodson experienced worsening of allergies, respiratory problems, nasal and sinus congestion, burning/watering eyes, coughing, sore throat, and flu-like symptoms, itching skin, headaches, and achiness.

Ms. Woodson also experienced electrical problems in her apartment. Ms. Woodson gave a news interview to Sherman Desselle of WDSU about the deplorable conditions in her unit. As a direct result of the interview, the property managers attempted to evict her.

**The unit was tested for mold on by Oscar Moya, and the results were analyzed by Air Allergen Mold Testing on September 17, 2019. The unit tested positive for** *Aspergillus/Penicillium* **spores.**[76] At that time, Ms. Woodson was provided a report educating her regarding the adverse health effects caused by the mold to which she had been exposed.

While residing at Laguna Run, Ms. Woodson personally experienced roach infestation. She personally observed the following conditions throughout the apartment complex in common areas:

- Visible mold growth in other apartment units and common areas such as laundry rooms and hallways;
- Discoloration or water stains on walls and ceilings in other apartment units and common areas such as laundry rooms and hallways; and
- Areas of standing water or condensation in common areas such as laundry rooms and hallways.

The harmful conditions in Ms. Woodson's apartment were not apparent and/or visible to her at the time that she moved into her apartment at Laguna Run. She did not have any reason to

---

[76]     Ex. 23, Angela Woodson Mold Testing Results dated 9/17/2019

believe that there was mold in the apartment unit when she moved in because the property

management staff misrepresented to her that the apartment was habitable and free from

environmental hazards and major plumbing./water intrusion issues.

As a direct result of the combined acts of negligent conduct of the Defendants, Named

Plaintiff/Proposed Class Representative **ANGELA WOODSON** has sustained bodily injuries

(past, present and future); emotional distress (past, present and future); loss of enjoyment of life

(past, present and future); medical expenses (past, present and future); financial losses (past,

present and future); property damages; and relocation expenses.

**ASHLEY BROWN**

**AMENDED PARAGRAPH 80.**

**ASHLEY BROWN** is a former lessee at Laguna Run. Her former address was 7021

Martin Drive, Apt. J-211, New Orleans, Louisiana 70126. Ms. Brown resided at Laguna Run

with her minor children: Amari Ealy (4) and Zayden Powell (5). She had a valid and enforceable

lease with Defendants Dasmen Residential and the RH Entities. Under the provisions of the

lease, Defendants were obligated to tender the leased premises in a clean, safe and good working

condition. The premises was tendered to Ms. Brown secreting conditions materially affecting the

health or safety of Plaintiffs in violation of the lease agreement. Additionally, once the defects

and vices were brought to the attention of the property owners and managers by Ms. Brown,

Defendants failed to diligently make repairs to remove the hazardous conditions over which they

exercised care, custody and control in violation of La. C.C. art. 2322.  As such, Ms. Brown

alleges breach of contract.

While residing at Laguna Run, Ms. Brown experienced visible mold growth,

discoloration or water stains on internally facing walls and ceilings, discoloration or water stains

on externally facing walls, areas of standing water or condensation on floors, wall, or window sills, and musty odors. After residing at Laguna Run, Ms. Brown and her children suffered with headaches, respiratory infections, coughing, congestion, sneezing, sinus problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms. Ms. Brown addressed her symptoms and her children's symptoms with over-the-counter medications. However, Ms. Brown's minor child, Amari Ealy, sought medical treatment for various health effects that I attributes to mold exposure at Laguna Run. Amari Ealy was treated by Tulane Lakeside Pediatric Clinic.

Ms. Brown moved into Laguna Run in April 2019. While she smelled strange, mildew-like odors in her apartment almost immediately after moving in, it was in October 2019 that she noticed black mold on the living room wall and in the bathroom. Ms. Brown reported the presence of mold to the property management office and was told it would take a while for maintenance to get to her unit because they had a lot of maintenance requests ahead of it. The maintenance men NEVER CAME to address the mold in Ms. Brown's unit. Initially, Ms. Brown sprayed bleach on the mold, but she thought that was making it worse. **The unit was tested for mold on by Oscar Moya, and the results were analyzed by Air Allergen Mold Testing on October 22, 2019. The unit tested positive for the presence of harmful *Cladosporium* mold spores.**[77] At that time, Ms. Brown was provided a report educating her regarding the adverse health effects caused by the mold to which she had been exposed.

While residing at Laguna Run, Ms. Brown personally observed inadequate security and ongoing criminal activity such as drug dealing in common areas. She is also aware of numerous

---

[77]     Ex. 24, Ashley Brown Mold Testing Results dated 10/22/2019

violent crimes that have occurred at the complex. Based upon Ms. Brown's personal

observations, Laguna Run is not a safe place to live.

While residing at Laguna Run, Ms. Brown personally experienced roach infestation in

her apartment unit. She personally observed the following conditions throughout the apartment

complex in common areas:

- Visible mold growth in other apartment units and common areas such as
  laundry rooms and hallways;
- Discoloration or water stains on walls and ceilings in other apartment units
  and common areas such as laundry rooms and hallways; and
- Areas of standing water or condensation in common areas such as laundry
  rooms and hallways.

The harmful conditions in Ms. Brown's apartment were not apparent and/or visible to me

at the time that she moved into her apartment at Laguna Run. She did not have any reason to

believe that there was mold in the apartment unit when she moved in because the property

management staff misrepresented to her that the apartment was habitable and free from

environmental hazards and major plumbing./water intrusion issues.

As a direct result of the combined acts of negligent conduct of the Defendants, Named

Plaintiff/Proposed Class Representative **ASHLEY BROWN** has sustained bodily injuries (past,

present and future); emotional distress (past, present and future); loss of enjoyment of life (past,

present and future); medical expenses (past, present and future); financial losses (past, present

and future); property damages; and relocation expenses.

## **DAKOTA BLUNT**

## **AMENDED PARAGRAPH 81.**

**DAKOTA BLUNT** is a former lessee at Laguna Run. Her former address at Laguna Run

was 7021 Martin Drive, Apartment J-210, New Orleans, Louisiana 70126. Ms. Blunt resided at

Laguna Run with her minor children: Kemon Blunt (7) and Kamille Blunt (3). She had a valid

and enforceable lease with Defendants Dasmen Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Blunt secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreements. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Blunt, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322. As such, Ms. Blunt alleges breach of contract.

While Ms. Blunt resided at Laguna Run, she experienced visible mold growth, discoloration or water stains on internally facing walls and ceilings, discoloration or water stains on externally facing walls, areas of standing water or condensation on floors, wall, or window sills, and musty odors. She and her children suffered with headaches, respiratory infections, coughing, congestion, sneezing, sinus problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms. Ms. Blunt addressed her symptoms and her children's symptoms with over-the-counter medications. Ms. Blunt sought medical treatment for her minor children, Ke'mon Blunt (age 8) and Ka'mille Blunt (age 4) for various health effects that she attributes to mold exposure at Laguna Run. The children were treated by Daughters of Charity.

Ms. Blunt moved into Laguna Run in 2018. She first noticed the presence of black mold on her air conditioning vents about ten (10) months later. Then, she noticed mold around the tub. The maintenance staff came to her apartment and sprayed a substance on the vents and around the tub, but the mold came back and began to spread. It moved from the vents down the walls.

From the time Ms. Blunt moved into the apartment until the time that she moved out, the mold was never properly abated from her unit. Laguna Run would not allow Ms. Blunt to break the lease even though the mold was not being addressed. When Ms. Blunt's lease term ended, she did not renew the lease in October 2019.

**The unit was tested for mold on by Oscar Moya, and the results were analyzed by Air Allergen Mold Testing on October 22, 2019. The unit tested positive for harmful *Cladosporium* mold spores.**[78] At that time, Ms. Blunt was provided a report educating her regarding the adverse health effects caused by the mold to which she had been exposed.

While residing at Laguna Run, Ms. Blunt personally observed inadequate security and ongoing criminal activity such as drug dealing in common areas. She is also aware of numerous violent crimes that have occurred at the complex. Based upon Ms. Blunt's personal observations, Laguna Run is not a safe place to live. She also personally experienced roach infestation in her apartment.

While residing at Laguna Run, Ms. Blunt personally observed the following conditions throughout the apartment complex in common areas:

- Visible mold growth in other apartment units and common areas such as laundry rooms and hallways;
- Discoloration or water stains on walls and ceilings in other apartment units and common areas such as laundry rooms and hallways; and
- Areas of standing water or condensation in common areas such as laundry rooms and hallways.

The harmful conditions in Ms.. Blunt's apartment were not apparent and/or visible to her at the time that she moved into her apartment at Laguna Run. She did not have any reason to believe that there was mold in the apartment unit when she moved in because the property

---

[78]     Ex. 25, Dakota Blunt Mold Testing Results dated 10/22/2019

management staff misrepresented to her that the apartment was habitable and free from

environmental hazards and major plumbing/water intrusion issues.

As a direct result of the combined acts of negligent conduct of the Defendants, Named

Plaintiff/Proposed Class Representative **DAKOTA BLUNT** has sustained bodily injuries (past,

present and future); emotional distress (past, present and future); loss of enjoyment of life (past,

present and future); medical expenses (past, present and future); financial losses (past, present

and future); property damages; and relocation expenses.

## CATHY HARRIS

## AMENDED PARAGRAPH 82.

**CATHY HARRIS** is a former lessee at Laguna Run. Her former address was 6900 Lake

Kenilworth Drive, Apartment 110, New Orleans, Louisiana 70126. Ms. Harris resided at Laguna

Run with her husband, Willard Harris, a disabled veteran of the United States military and

double amputee. The couple had a valid and enforceable lease with Defendant Dasmen

Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to

tender the leased premises in a clean, safe and good working condition. The premises was

tendered to Ms. Harris secreting conditions materially affecting the health or safety of Plaintiffs

in violation of the lease agreement. Additionally, once the defects and vices were brought to the

attention of the property owners and managers by Ms. Harris, Defendants failed to diligently

make repairs to remove the hazardous conditions over which they exercised care, custody and

control in violation of La. C.C. art. 2322.  As such, Ms. Harris alleges breach of contract.

During the time period that Ms. Harris resided at Laguna Run, she experienced visible

mold growth, discoloration or water stains on internally facing walls and ceilings, discoloration

or water stains on externally facing walls, areas of standing water or condensation on floors,

wall, or window sills, and musty odors. As a result of exposure to deplorable living conditions,

Ms. Harris and her spouse experienced worsening of allergies, respiratory problems, nasal and

sinus congestion, burning/watering eyes, coughing, sore throat, and flu-like symptoms. Ms.

Harris and her spouse have addressed their symptoms with over-the-counter medications. They

have also sought medical attention from various healthcare providers for very serious illnesses

that we have suffered as a result of mold exposure and living in unsanitary and unhealthy

conditions at Hidden Lake and Laguna Run.

Ms. Harris and her spouse are elderly people over the age of 65. Since 2017, Mr. Harris

has been on kidney dialysis and it is extremely important to his health that he live in a clean and

sanitary environment. Despite Ms. Harris repeatedly explaining her husband's health issues to

the various property management companies (Latter and Blum and Dasmen) who have operated

this complex, they were forced to live in horrific (unsafe and unsanitary) conditions.

In November 2019, Mr. Harris became so ill as a result of the living conditions at Laguna

Run, that he had to be rushed by ambulance to The New Orleans East Hospital. That was the last

straw for Ms. Harris. She called WDSU and the property management staff refused to allow the

media onto the premises.

Ms. Harris sought medical treatment from Dr. Danita Anderson - Primary Care at

JenCare Senior Medical Center, 4710 S. Carrollton Avenue, New Orleans, Louisiana 70119.Mr.

Harris sought medical treatment from the following healthcare providers: The New Orleans East

Hospital, 5620 Read Blvd. New Orleans, Louisiana 70127; Primary Care, Dr. Jan Cooper, 5620

Read Blvd., New Orleans, Louisiana 70127; and Southeast Louisiana Veterans Health Care

System, 2400 Canal Street, New Orleans, Louisiana 70119. The couple also suffered the loss of a

beloved Yorkie who became ill and died in November 2019. They attribute his death to mold exposure and the conditions in their apartment.

Mr. and Mrs. Harris were terrorized by criminals while living in Hidden Lake and Laguna Run. They were the victims of crime on several occasions. They filed several police reports for various attempts to break into their apartment. They continued to notify the police and the property management office about the criminal activity going on near their apartment unit. The couple lived in fear with a lot of drug dealers conducting drug dealing activities, shootings and fighting all around them. They personally observed numerous crimes that have occurred at or near Laguna Run, and they did not feel safe living at Hidden Lakes and Laguna Run. The criminal activity worsened under the management of Dasmen at Laguna Run. Based upon their personal observations, whether operated as Hidden Lake or Laguna Run, the apartment complex was not a safe places to live. The apartment complex (no matter what the name or the management company) was a hotbed for criminal activity.

Ms. Harris has lived in the following units at Hidden Lake and/or Laguna Run:  R-104 (where she noticed a small amount of mold);  an apartment in Building D (where she did not notice any mold); and then Q-110 (where the couple lived in the worst living conditions imaginable under the management of Dasmen and Lynd).  In Q-110, Ms. Harris first noticed mold in the master bedroom on the walls. She notified the property management office. It took months for them to come. During that time, the mold was spreading throughout the walls and ceilings in the master bedroom and the master bathroom and hall. Maintenance came and sprayed bleach. The mold came back even worse. Then, whenever it would rain, water started to poor into the master bedroom. Ms. Harris reported this problem to the property management

office. Ms. Harris advised them that there was a gaping hole in the ceiling of their master bedroom.

The couple started to smell a foul odor coming from upstairs. Every time the tenants in the apartment above them would flush the toilet, feces and urine would run down the ceiling and walls in the Harris's master bedroom. Whenever it rained outside, it would rain down from the ceiling in the master bedroom. Initially, when the maintenance staff came to look at the problem, they told Ms. Harris that the feces and urine were coming from the toilets in the units upstairs due to corroded cast iron pipes, and the water was coming from the walkway upstairs when it rained. They provided Ms. Harris with blue buckets to catch the water and to clean up the mess herself. Ms. Harris was depressed and heart-broken that anyone would expect two elderly people to live like that.

The couple was also facing the growth of mold from water intrusion coming from the windows in their apartment.  For several months, Ms. Harris remembered calling the property management office crying in desperation and explaining how this situation was adversely impacting her health and her husband's health. She told them that she slipped and fell in the water on the floor. Ms. Harris told them that she was too old to deal with the water and feces and urine on her own.  Eventually, a plumber was sent to address the toilets upstairs, but it did not solve the problem because the big gaping hole was still in the ceiling. After the news stories about Laguna Run ran on television in the fall of 2019, and Dasmen was fired, Lynd told Ms. Harris that they were "on lockdown." They could not make any repairs.

Ms. Harris stockpiled her rent for a few months so that the couple could move. Otherwise, they would still be living in those deplorable conditions. When Ms. Harris advised the property management office that we were leaving, she was told that in order to break the

lease, she owed them $2500.00. From the time the couple moved into their Hidden

Lakes/Laguna Run apartment until the time they left, the mold was never properly abated from

their unit.

**The unit was tested for mold on by Oscar Moya, and the results were analyzed by**

**Air Allergen Mold Testing on December 10, 2019. The unit tested positive for harmful**

***Stachybotrys, Aspergillus/Penicillium, and Basidiospores.*[79]**  At that time, Ms. Harris was

provided a report educating her regarding the adverse health effects caused by the mold to which

she had been exposed.

While residing at Laguna Run, Ms. Harris personally experienced roach infestation. She

also personally observed the following conditions throughout the apartment complex in common

areas:

- Visible mold growth in other apartment units and common areas such as laundry rooms and hallways;
- Discoloration or water stains on walls and ceilings in other apartment units and common areas such as laundry rooms and hallways; and
- Areas of standing water or condensation in common areas such as laundry rooms and hallways.

The harmful conditions in Ms. Harris's apartment were not apparent and/or visible to her

at the time that she moved into her apartment at Laguna Run. She did not have any reason to

believe that there was mold in the apartment unit when she moved in because the property

management staff misrepresented to her that the apartment was habitable and free from

environmental hazards and major plumbing./water intrusion issues.

As a direct result of the combined acts of negligent conduct of the Defendants, Named

Plaintiff/Proposed Class Representative **CATHY HARRIS** has sustained bodily injuries (past,

---

[79]     Ex. 26, Cathy Harris Mold Testing Results dated 12/10/2019

present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); financial losses (past, present and future); property damages; and relocation expenses.

## PENNY JOHNSON

## AMENDED PARAGRAPH 83.

**PENNY JOHNSON** is a former lessee of Hidden Lake and Laguna Run. Her former address at Laguna Run was 6820 Martin Drive, Apt. D-103, New Orleans, Louisiana 70126. Ms. Johnson had a valid and enforceable lease with Defendants Eastlake Development/Latter &Blum and then Defendants Dasmen Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Johnson secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreement. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Johnson, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322. As such, Ms. Johnson alleges breach of contract.

While Ms. Johnson resided at Laguna Run, she observed visible mold growth, discoloration of water stains on walls and ceilings, areas of standing water or condensation on the floors, walls and window sills, and musty odors. She actually had mushrooms growing inside of the apartment from the walls. Laguna Run's maintenance staff came to the apartment and sprayed bleach on the mold, but it kept coming back. They made no effort to remove the moldy sheetrock or to replace the moldy carpet. She suffered with headaches, respiratory problems, and nasal and sinus congestion.

**The unit was tested for the presence of mold on October 1, 2019 by Oscar Moya of Moya Environmental. The sample was analyzed by Air Allergen Mold Testing, Inc. on October 2, 2019. The unit tested positive for the presence of harmful *Stachybotrys* mold and mold spores.**[80] At that time, Ms. Johnson was provided with a report educating her regarding the adverse health effects caused by the mold to which she had been exposed.

While residing at Laguna Run, Ms. Johnson personally observed inadequate security and ongoing criminal activity such as drug dealing in common areas. She became the victim of domestic violence at Laguna Run. She is also aware of numerous violent crimes that have occurred at the complex. Based upon Ms. Johnson's personal observations, Laguna Run is not a safe place to live.

While residing at Laguna Run, Ms. Johnson personally experienced flies and gnats in her apartment. She also personally observed the following conditions throughout the apartment complex in common areas:

- Visible mold growth in other apartment units and common areas such as laundry rooms and hallways;
- Discoloration or water stains on walls and ceilings in other apartment units and common areas such as laundry rooms and hallways; and
- Areas of standing water or condensation in common areas such as laundry rooms and hallways.

The harmful conditions in Ms. Johnson's apartment were not apparent and/or visible to me at the time that she moved into the apartment at Laguna Run. She did not have any reason to believe that there was mold in the apartment unit when she moved in because the property management staff misrepresented to her that the apartment was habitable and free from environmental hazards and major plumbing./water intrusion issues.

---

[80]     Ex. 27, Penny Johnson Mold Testing Results dated 10/2/2019

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **PENNY JOHNSON** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); financial losses (past, present and future); property damages; and relocation expenses.

## PORSHA BROOKS

## AMENDED PARAGRAPH 84.

**PORSHA BROOKS** is a former lessee at Laguna Run. Her former address at Laguna Run was 7014 Martin Drive, Apartment U-211, New Orleans, Louisiana 70126. Ms. Brooks resided at Laguna Run with her minor child, Mason Foster (5). She had a valid and enforceable lease with Defendants Eastlake Development and Latter & Blum and then Dasmen Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Brooks secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreements. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Brooks, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322. As such, Ms. Brooks alleges breach of contract.

As a HUD/HANO Section 8 voucher recipient, Ms. Brooks also alleges that the Defendants breached their contractual duty with HUD pursuant to 24 C.F.R. Part 5, §5703(f) to maintain said apartments and common areas free of health and safety concerns, including, but not limited to, the presence of mold for the benefit of the leaseholders of the apartment complex and other permanent residents.

During the time period that Ms. Brooks resided at Laguna Run, she experienced visible mold growth, discoloration or water stains on internally facing walls and ceilings, discoloration or water stains on externally facing walls, areas of standing water or condensation on floors, wall, or window sills, and musty odors.

While residing at Laguna Run, Ms. Brooks and her son suffered with headaches, respiratory infections, coughing, congestion, sneezing, sinus problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms.  Mason Foster was diagnosed with asthma in 2017, while residing at Laguna Run. He requires daily medication for asthma. He has a breathing machine and pumps. Mason Foster was treated by the following healthcare providers: Hosea Doucet, MD (Pediatrician), Tulane Lakeside, 4740 I-10 Service Road, Suite 120, Metairie, Louisiana 70001; Fernando Urrego, MD (Pediatric Pulmonology, Ochsner Health Center for Children, 1514 Jefferson Highway, New Orleans, Louisiana 70121

Ms. Brooks moved into Laguna Run in November 2017. Six months later, she noticed a black substance on the ceiling of the bathroom. The black substance was spreading into Mason Foster's room. She reported it to the property management office. The property managers said they would send someone out to address it, but it was dirt. It took several months for the maintenance staff to come to her apartment. While Ms. Brooks waited for the maintenance men, she was told to spray bleach on it. She began spraying bleach which aggravated Mason's respiratory problems. To her surprise, when the maintenance men finally came to her unit to address the black substance, the only thing they did was spray bleach on it. They never replaced any sheetrock. They never determined the source of the water intrusion. They never painted over the black substance. The maintenance people told Ms. Brooks to continue to spray bleach on the substance when it came back.

Spraying bleach on the black substance did not stop the growth and spread of it in Ms. Brooks' apartment. As her son's asthma continued to worsen living in the apartment, she reported this issue to the Housing Authority of New Orleans. Inspectors from HANO came out to Ms. Brooks' unit, conducted an inspection, and failed the unit several times for "mold." Finally, HANO gave Ms. Brooks permission to move. She moved out of Laguna Run in January 2020. From the time Ms. Brooks moved into her Laguna Run apartment until the time that she moved out, the mold was never properly abated from her unit.

**The unit was tested for mold on by Oscar Moya, and the results were analyzed by Air Allergen Mold Testing on December 10, 2019. The unit tested positive for *Cladosporium* mold spores.**[81] At that time, Ms. Brooks was provided a report educating her regarding the adverse health effects caused by the mold to which she had been exposed.

While residing at Laguna Run, Ms. Brooks personally observed inadequate security and ongoing criminal activity such as drug dealing in common areas. She is also aware of numerous violent crimes that have occurred at the complex. Based upon Ms. Brooks' personal observations, Laguna Run is not a safe place to live. She also personally experienced roach infestation in her apartment.

While residing at Laguna Run, Ms. Brooks personally observed the following conditions throughout the apartment complex in common areas:

- Visible mold growth in other apartment units and common areas such as laundry rooms and hallways;
- Discoloration or water stains on walls and ceilings in other apartment units and common areas such as laundry rooms and hallways; and
- Areas of standing water or condensation in common areas such as laundry rooms and hallways.

---

[81]     Ex. 28, Porsha Brooks Mold Testing Results dated 12/10/2019

The harmful conditions in Ms. Brooks' apartment were not apparent and/or visible to her at the time that she moved into her apartment at Laguna Run. She did not have any reason to believe that there was mold in the apartment unit when she moved in because the property management staff misrepresented to her that the apartment was habitable and free from environmental hazards and major plumbing/water intrusion issues.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **PORSHA BROOKS** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); financial losses (past, present and future); property damages; and relocation expenses.

### ROCHELLE MITCHELL

### AMENDED PARAGRAPH 87.

**ROCHELLE MITCHELL** is former lessee at Laguna Run. Her former address at Laguna Run was 7001 Martin Drive, Apartment T-218, New Orleans, Louisiana 70126. Ms. Mitchell resided at Laguna Run with her minor children: Anthony Mitchell (age 8) and Ava Thompson (age 3), Emoni Mitchell (1 month). She had a valid and enforceable lease with Defendants Dasmen Residential and the RH Entities. Under the provisions of the lease, the Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Mitchell secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreements. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Mitchell, Defendants failed to diligently make repairs to remove the hazardous conditions over

which they exercised care, custody and control in violation of La. C.C. art. 2322.  As such, Ms. Mitchell alleges breach of contract.

While residing at Laguna Run, Ms. Mitchell experienced visible mold growth, discoloration or water stains on internally facing walls and ceilings, discoloration or water stains on externally facing walls, areas of standing water or condensation on floors, wall, or window sills, and musty odors. She and her children suffered with headaches, respiratory infections, coughing, congestion, sneezing, sinus problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms. Anthony Mitchell was diagnosed with asthma before Ms. Mitchell moved into Laguna Run. However, his asthma worsened and his attacks became more frequent living at Laguna Run. Ms. Mitchell addressed her symptoms and her children's symptoms with over-the-counter medications. However, she sought medical treatment for her minor children Anthony Mitchell and Ava Thompson for various health effects that she now attributes to mold exposure at Laguna Run. Anthony Mitchell and Ava Thompson were treated by Kelly R. Davillier (Pediatrician), EXCELth Family Health Center – New Orleans East, 9900 Lake Forest Boulevard, Suite F, New Orleans, Louisiana 70127.

Ms. Mitchell moved into Laguna Run in February 2019. Within three months, she started to smell mildew and she noticed black substances on the ceiling of the bathroom. The black substances were spreading across the ceiling. Ms. Mitchell reported it to the property management office and was told it would take a while for maintenance to get to her because they had a lot of maintenance requests ahead of her apartment. It took several months for the maintenance men to come to Ms. Mitchell's apartment. During that time, she watched helplessly as the black substance stretched across the ceiling and water started leaking out. She kept calling

the property management office during that time to stress the importance of dealing with the black substance and water.

When the maintenance men came, they sprayed bleach on the area and patched a hole in the ceiling. In the following weeks, Ms. Mitchell kept smelling a musty odor and noticed that the black substance was in the vents in her apartment. She reported the black substance in the vents and the fact that it was coming back on the bathroom ceiling to the property management office on multiple occasions. When it appeared that the property management staff was not responding, Ms. Mitchell called her Permanent Supportive Housing Case Worker. An investigator came to Ms. Mitchell's apartment and the unit failed the inspection on two occasions for the presence of "mold." Ever since that time, Permanent Supportive Housing has been trying to locate suitable housing for Ms. Mitchell to relocate to. In the interim, she is being forced to live in a mold-infested apartment with three minor children. (She has a baby girl named Emoni Mitchell).

From the time Ms. Mitchell moved into her Laguna Run apartment until the present time, the mold has never properly abated from her unit. The unit experienced the following failing inspections for mold conducted by the Louisiana Housing Corporation:

- 9/30/2019 FAILING inspection by the Louisiana Housing Corporation T218 revealing mold in the HVAC duct work and registers master bedroom ceiling is buckled and presenting cracks in the sheet rock

- 10/15/2019 FAILING inspection by the Louisiana Housing Corporation of Apartment T218 revealing mold in the HVAC duct work and registers master bedroom ceiling is buckled and presenting cracks in the sheet rock

While residing at Laguna Run, Ms. Mitchell personally observed inadequate security and ongoing criminal activity such as drug dealing in common areas. She is also aware of numerous violent crimes that have occurred at the complex. Based upon Ms. Mitchell's personal observations, Laguna Run is not a safe place to live.

**The unit was sampled for mold by Oscar Moya of Moya Environmental. The sample was analyzed by Air Allergen Mold Testing on October 2, 2019. The unit tested positive for the harmful mold and mold spores *Cladosporium, Penicillium, and Ulocladium*.[82]** At that time, Ms. Mitchell was provided a report educating her regarding the adverse health effects caused by the mold to which she had been exposed.

While residing at Laguna Run, Ms. Mitchell personally experienced roach infestation in her apartment. She also personally observed the following conditions throughout the apartment complex in common areas:

- Visible mold growth in other apartment units and common areas such as laundry rooms and hallways;
- Discoloration or water stains on walls and ceilings in other apartment units and common areas such as laundry rooms and hallways; and
- Areas of standing water or condensation in common areas such as laundry rooms and hallways.

The harmful conditions in Ms. Mitchell's apartment were not apparent and/or visible to her at the time that she moved into her apartment at Laguna Run. She did not have any reason to believe that there was mold in the apartment unit when she moved in because the property management staff misrepresented to her that the apartment was habitable and free from environmental hazards and major plumbing./water intrusion issues.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **ROCHELLE MITCHELL** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); property damages; and relocation expenses.

---

[82] Ex. 29, Rochelle Mitchell Mold Testing Results dated 10/2/2019

## **WENONAH CUTLER**

## **AMENDED PARAGRAPH 88.**

**WENONAH CUTLER** is a former lessee at Laguna Run. Her former address at Laguna

Run was 6812 Lake Kenilworth Drive, Apartment N-104, New Orleans, Louisiana 70126. Ms.

Cutler resided at the Laguna Run with her minor children: Alliyah Hull (13), Jamier Hull (12),

Osirus Cutler (16) and child Ausure Cutler (18). She had a valid and enforceable lease with

Defendants Eastlake Development and Latter & Blum and then Dasmen Residential and the RH

Entities. Under the provisions of the lease, Defendants were obligated to tender the leased

premises in a clean, safe and good working condition. The premises was tendered to Ms. Cutler

secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease

agreements. Additionally, once the defects and vices were brought to the attention of the

property owners and managers by Ms. Cutler, Defendants failed to diligently make repairs to

remove the hazardous conditions over which they exercised care, custody and control in

violation of La. C.C. art. 2322. As such, Ms. Cutler alleges breach of contract.

As a HUD/HANO Section 8 voucher recipient, Ms. Cutler also alleges that the

Defendants breached their contractual duty with HUD pursuant to 24 C.F.R. Part 5, §5703(f) to

maintain said apartments and common areas free of health and safety concerns, including, but

not limited to, the presence of mold for the benefit of the leaseholders of the apartment complex

and other permanent residents.

While Ms. Cutler resided at Laguna Run, she experienced visible mold growth,

discoloration or water stains on internally facing walls and ceilings, discoloration or water stains

on externally facing walls, areas of standing water or condensation on floors, wall, or window

sills, and musty odors. As a result of exposure to deplorable living conditions, Ms. Cutler and her

children experienced worsening of allergies, respiratory problems, nasal and sinus congestion, burning/watering eyes, coughing, sore throat, and flu-like symptoms, itching skin, headaches, and achiness.

Ms. Cutler experienced raw sewerage backing up into her unit. The unit failed inspection by HANO. She also experienced electrical problems. Ms. Cutler slipped and fell in water intrusion in her unit and suffered substantial injuries which are the subject of another lawsuit.

Ms. Cutler gave a news interview to Sherman Desselle of WDSU about the deplorable conditions in her apartment. As a direct result of the interview, Ms. Cutler and her children were evicted. Councilwoman Cyndi Nguyen put the family into a hotel for several weeks. Ms. Cutler ended up losing her HANO voucher, as a direct result of what was occurring between her and Dasmen.

While residing at Laguna Run, Ms. Cutler personally experienced roach infestation in her apartment. She also personally observed the following conditions throughout the apartment complex in common areas:

- Visible mold growth in other apartment units and common areas such as laundry rooms and hallways;
- Discoloration or water stains on walls and ceilings in other apartment units and common areas such as laundry rooms and hallways; and
- Areas of standing water or condensation in common areas such as laundry rooms and hallways.

The harmful conditions in Ms. Cutler's apartment were not apparent and/or visible to her at the time that she moved into her apartment at Laguna Run. She did not have any reason to believe that there was mold in the apartment unit when she moved in because the property management staff misrepresented to her that the apartment was habitable and free from environmental hazards and major plumbing./water intrusion issues.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **WENONAH CUTLER** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); property damages; and relocation expenses.

## TRICHELL SORRELL

## AMENDED PARAGRAPH 89.

**TRICHELL SORRELL** is a former lessee at Laguna Run. Her former address at Laguna Run was 7005 Martin Drive, Apartment K-209, New Orleans, Louisiana 70126. She had a valid and enforceable lease with Defendants Dasmen Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Sorrell secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreements. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Sorrell, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322. As such, Ms. Sorrell alleges breach of contract.

During the time period that Ms. Sorrell resided at Laguna Run, she experienced visible mold growth, discoloration or water stains on internally facing walls and ceilings, discoloration or water stains on externally facing walls, areas of standing water or condensation on floors, wall, or window sills, and musty odors. She experienced worsening of allergies, fever, nasal and sinus congestion, burning/watering eyes, coughing, sore throat, flu-like symptoms, skin irritation and headaches.

**The unit was tested for mold on by Oscar Moya, and the results were analyzed by Air Allergen Mold Testing on October 2, 2019. The unit tested positive for the presence of harmful *Cladosporium* and *Ulocadium* mold and mold spores.[83]** At that time, Ms. Sorrell was provided with a report educating her regarding the adverse health effects caused by the mold to which she had been exposed.

While residing at Laguna Run, Ms. Sorrell personally observed inadequate security and ongoing criminal activity such as drug dealing in common areas. She is also aware of numerous violent crimes that have occurred at the complex. Based upon Ms. Sorrell's personal observations, Laguna Run is not a safe place to live.

While residing at Laguna Run, Ms. Sorrell personally experienced roach infestation in her apartment. She also personally observed the following conditions throughout the apartment complex in common areas:

- Visible mold growth in other apartment units and common areas such as laundry rooms and hallways;
- Discoloration or water stains on walls and ceilings in other apartment units and common areas such as laundry rooms and hallways; and
- Areas of standing water or condensation in common areas such as laundry rooms and hallways.

The harmful conditions in Ms. Sorrell's apartment were not apparent and/or visible to her at the time that she moved into her apartment at Laguna Run. She did not have any reason to believe that there was mold in the apartment unit when she moved in because the property management staff misrepresented to her that the apartment was habitable and free from environmental hazards and major plumbing/water intrusion issues.

---

[83]     Ex. 30, Trichelle Sorrell Mold Testing Results dated 10/2/2019

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **TRICHELL SORRELL** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); property damages; and relocation expenses.

**TROYNEISHA TERRANCE**

**AMENDED PARAGRAPH 90.**

**TROYNEISHA TERRANCE** is a former lessee at Hidden Lake and Laguna Run. Her former address at Laguna Run was 6900 Lake Kenilworth Drive, Apartment Q-231, New Orleans, Louisiana 70126. She had a valid and enforceable lease with Defendants Eastlake Development and Latter & Blum and then Dasmen Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Terrance secreting conditions materially affecting the health or safety Plaintiffs in violation of the lease agreement. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Terrance, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322. As such, Ms. Terrance alleges breach of contract.

While Ms. Terrance resided in the apartment, she personally observed visible mold growth and musty odors. Ms. Terrance moved into Hidden Lakes in 2015. About seven months after living in the apartment unit, she noticed water intrusion and the presence of a black substance growing by the window in the living room, dining room and upstairs bedroom. She reported the presence of the black substance to the property management office. Before anyone

came out to attend to the problems, she noticed the black substance growing on the wall near the tub. She also noticed the growth of the black substance on the ceiling in the bathroom. She also reported all of these issues again.

After a few weeks, a maintenance man came out to address it. He sprayed bleach on the windows, walls and ceilings. He cleaned and repainted the entire tub and painted it.  However, within a month or two, the black substance resurfaced. This became a pattern. Ms. Terrance continued to report this problem. She waited months for someone to come to spray bleach on it and paint over it. It resurfaced. Additionally, she experienced the collapse of the living room ceiling due to water intrusion.

Ms. Terrance personally experienced worsening allergies and nasal and sinus congestion. **The unit was tested for mold on by Oscar Moya, and the results were analyzed by Air Allergen Mold Testing on October 21, 2019. The unit tested positive for harmful *Cladiosporium* and *Ulocladium* mold and mold spores. [84]**At that time, Ms. Terrance was provided with a report educating her regarding the adverse health effects caused by the mold to which she had been exposed.

The mailboxes were inoperable at the complex. The mailman was leaving Ms. Terrance's mail in the property management office. When it was closed, she could not receive her mail.; The dumpsters were not emptied on a regular basis creating insect and rodent problems and horrible orders throughout the complex.

While residing at Laguna Run, Ms. Terrance personally observed inadequate security and ongoing criminal activity such as drug dealing in common areas. Her vehicle was broken into

---

[84]     Ex. 31, Troyneisha Terrance Mold Testing Results dated 10/21/2019

and ransacked. She is aware of numerous violent crimes that have occurred at the complex. Based upon Ms. Terrance's personal observations, Laguna Run is not a safe place to live.

While residing at Laguna Run, Ms. Terrance personally observed the following conditions throughout the apartment complex in common areas:

- Visible mold growth in other apartment units and common areas such as laundry rooms and hallways;
- Discoloration or water stains on walls and ceilings in other apartment units and common areas such as laundry rooms and hallways; and
- Areas of standing water or condensation in common areas such as laundry rooms and hallways.

The harmful conditions in Ms. Terrance's apartment were not apparent and/or visible to her at the time that she moved into the apartment at Laguna Run. She did not have any reason to believe that there was mold in the apartment unit when she moved in because the property management staff misrepresented to her that the apartment was habitable and free from environmental hazards and major plumbing/water intrusion issues.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **TROYNEISHA TERRANCE** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); property damages; and relocation expenses.

<u>**MELISHA BOWMAN**</u>

<u>**AMENDED PARAGRAPH 91.**</u>

**MELISHA BOWMAN** is a former lessee at Hidden Lake and Laguna Run. Her former address at Laguna Run was 6900 Lake Kenilworth Drive, Apartment Q-231, New Orleans, Louisiana 70126. She had a valid and enforceable lease with Defendants Eastlake Development and Latter & Blum and then Dasmen Residential and the RH Entities. Under the provisions of

the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Bowman secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreements. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Bowman, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322.  As such, Ms. Bowman alleges breach of contract.

While Ms. Bowman resided in the apartment, she personally observed visible mold growth and musty odors. Ms. Bowman moved into Hidden Lakes in 2015. About seven months after living in the apartment unit, Ms. Bowman noticed water intrusion and the presence of a black substance growing by the window in the living room, dining room and upstairs bedroom. Ms. Bowman reported the presence of the black substance to the property management office. Before anyone came out to attend to the problems, she noticed black substance growing on the wall near the tub. She also noticed the growth of the black substance on the ceiling in the bathroom. Ms. Bowman reported all of these issues again.

After a few weeks, a maintenance man came out to address it. He sprayed bleach on the windows, walls and ceilings. He cleaned and repainted the entire tub and painted it.  However, within a month or two, the black substance resurfaced.  This became a pattern. Ms. Bowman reported the presence of black substances. She waited months for someone to come to spray bleach on it and paint over it. It resurfaced. Additionally, Ms. Bowman experienced the collapse of their living room ceiling due to water intrusion.

Ms. Bowman personally experienced worsening allergies and nasal and sinus congestion. **The unit was tested for mold on by Oscar Moya, and the results were analyzed by Air**

**Allergen Mold Testing on October 21, 2019. The unit tested positive for harmful** *Cladiosporium* **and** *Ulocladium* **mold and mold spores.**[85] At that time, Ms. Bowman was provided with a report educating her regarding the adverse health effects caused by the mold to which she had been exposed.

The mailboxes were inoperable. The mailman was leaving Ms. Bowman's mail in the property management office. When it was closed, she would not receive our mail. The dumpsters were not emptied on a regular basis creating insect and rodent problems and horrible orders throughout the complex. While residing at Laguna Run, Ms. Bowman personally observed inadequate security and ongoing criminal activity such as drug dealing in common areas. Her roommate's vehicle was broken into and ransacked. She is also aware of numerous violent crimes that have occurred at the complex. Based upon Ms. Bowman's personal observations, Laguna Run is not a safe place to live.

While residing at Laguna Run, I personally observed the following conditions throughout the apartment complex in common areas:

- Visible mold growth in other apartment units and common areas such as laundry rooms and hallways;
- Discoloration or water stains on walls and ceilings in other apartment units and common areas such as laundry rooms and hallways; and
- Areas of standing water or condensation in common areas such as laundry rooms and hallways.

The harmful conditions in Ms. Bowman's apartment were not apparent and/or visible to me at the time that she moved into her apartment at Laguna Run. She did not have any reason to believe that there was mold in the apartment unit when she moved in because the property

---

[85]        See Ex. 31 (Same Unit as Troyneisha Terrance)

management staff misrepresented to her that the apartment was habitable and free from environmental hazards and major plumbing/water intrusion issues.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **MELISHA BOWMAN** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); property damages; and relocation expenses.

**TYHEASHA CRUMEDY**

**AMENDED PARAGRAPH 92.**

**TYHEASHA CRUMEDY** is a former lessee at Laguna Run. Her former address was 6918 Lake Kenilworth Drive, Apt. R-225, New Orleans, Louisiana 70126, where she lived for 5 ½ years. Ms. Crumedy had a valid and enforceable lease with Defendants Dasmen Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Crumedy secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreements. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Crumedy, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322.  As such, Ms. Crumedy alleges breach of contract.

As a HUD/HANO Section 8 voucher recipient, Ms. Crumedy also alleges that the Defendants breached their contractual duty with HUD pursuant to 24 C.F.R. Part 5, §5703(f) to maintain said apartments and common areas free of health and safety concerns, including, but

not limited to, the presence of mold for the benefit of the leaseholders of the apartment complex and other permanent residents.

While Ms. Crumedy resided at Laguna Run, she experienced visible mold growth, discoloration or water stains on internally facing walls and ceilings, discoloration or water stains on externally facing walls, areas of standing water or condensation on floors, wall, or window sills, and musty odors.

While residing at Laguna Run, Ms. Crumedy suffered with headaches, respiratory infections, coughing, congestion, sneezing, sinus problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms. She addressed her symptoms with over-the-counter medications. Ms. Crumedy received medical treatment for mold-related symptoms from Dr. Godwin Ogbuokiri, 4543 Downman Road, New Orleans, Louisiana 70126.

**The apartment failed a HANO inspection due to mold on September 27, 2019. The unit was tested for mold on by Oscar Moya, and the results were analyzed by Air Allergen Mold Testing on October 22, 2019. The unit tested positive for harmful *Cladosporium* mold and mold spores.[86]** At that time, Ms. Crumedy was provided with a report educating her regarding the adverse health effects caused by the mold to which she had been exposed.

While residing at Laguna Run, Ms. Crumedy personally observed inadequate security and ongoing criminal activity such as drug dealing in common areas. She is also aware of numerous violent crimes that have occurred at the complex. Based upon Ms. Crumedy's personal observations, Laguna Run is not a safe place to live.

---

[86]     Ex. 32, Tyheasha Crumedy Mold Testing Results dated 10/22/2019

While residing at Laguna Run, Ms. Crumedy personally experienced roach infestation in her apartment. She also personally observed the following conditions throughout the apartment complex in common areas:

- Visible mold growth in other apartment units and common areas such as laundry rooms and hallways;
- Discoloration or water stains on walls and ceilings in other apartment units and common areas such as laundry rooms and hallways; and
- Areas of standing water or condensation in common areas such as laundry rooms and hallways.

The harmful conditions in Ms. Crumedy's apartment were not apparent and/or visible to her at the time that she moved into her apartment at Laguna Run. She did not have any reason to believe that there was mold in the apartment unit when she moved in because the property management staff misrepresented to her that the apartment was habitable and free from environmental hazards and major plumbing/water intrusion issues.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **TYHEASHA CRUMEDY** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment (past, present and future); medical expenses (past, present and future); property damages; and relocation expenses.

## **KESHA SIMMONS**

## **AMENDED PARAGRAPH 93.**

**KESHA SIMMONS** is a former lessee at Hidden Lake and Laguna Run. Her former address was 7020 Lake Kenilworth Drive, Apartment V-216, New Orleans, Louisiana 70126. Ms. Simmons resided at Hidden Lake/Laguna Run with her minor children: Laila Alonzo (age 11), Bella Randolph (age 4) and Kaleb Randolph (age 2). She had a valid and enforceable lease with Defendants Eastlake Development and Latter and Blum and then Defendants Dasmen

Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Simmons secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreements. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Simmons, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322.  As such, Ms. Simmons alleges breach of contract.

As a HUD/HANO Section 8 voucher recipient, Ms. Crumedy also alleges that the Defendants breached their contractual duty with HUD pursuant to 24 C.F.R. Part 5, §5703(f) to maintain said apartments and common areas free of health and safety concerns, including, but not limited to, the presence of mold for the benefit of the leaseholders of the apartment complex and other permanent residents.

While Ms. Simmons resided at  Hidden Lakes/Laguna Run, she experienced visible mold growth, discoloration or water stains on internally facing walls and ceilings, discoloration or water stains on externally facing walls, areas of standing water or condensation on floors, wall, or window sills, and musty odors. She and her children suffered with headaches, respiratory infections, coughing, congestion, sneezing, sinus problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms.

Ms. Simmons addressed our symptoms with over-the-counter medications, and her children received medical treatment for various health effects that she now attributes to mold exposure at Hidden Lakes/Laguna Run.  More specifically, Ms. Simmons was pregnant with Kaleb Randolph while living in an environment filled with mold at Laguna Run. Despite Ms.

Simmons's insistence that the mold be abated before the birth of her baby and her return from the hospital, it was not adequately addressed. As a result, both Bella Randolph and Kaleb Randolph experienced severe respiratory illnesses while residing at Laguna Run. They have been treated by Napoleon Pediatrics, 3040 33rd Street, Metairie, Louisiana 70001. Ms. Simmons received medical treatment at Tulane Lakeside 4700 S. I-10 Service Road, West Metairie, Louisiana 70001. Ms. Simmons is now personally aware that the health effects that she and her children have suffered at Laguna Run are supported by medical literature regarding mold exposure. Since she and her minor children moved out of Laguna Run in February 2020, their health conditions have dramatically improved.

Ms. Simmons moved into East Lake Apartments/Hidden Lakes/Laguna Run on February 20, 2017. About seven (7) months after moving into her apartment, Ms. Simmons noted the presence of a black substance along the windowsills in the apartment. More specifically, there was a black substance present on and around the windowsills of the Master Bedroom, Guest Bedroom and Dining Room. She reported the black substance to the property managers and a work order was completed on the computer in her presence. About two weeks later, maintenance workers came to her apartment and told her that the black mold was "just dirt." The maintenance man sprayed Kilz on the black substance (a mold disinfectant). Within weeks, the black substance re-appeared and became even more widespread along all of the windowsills in the apartment.

Months later, going into the new lease in 2018, black substance presented in the bathroom on the ceiling over the showerhead. Ms. Simmons reported the presence of this black substance to the office. It took approximately three months for a maintenance worker to respond. While the black substance went unaddressed, it was literally taking over the walls of the

apartment. During this time period, Ms. Simmons had a small minor child, Bella Randolph, and she was expecting her son, Kaleb Randolph. She was pleading with the property managers to address the mold issues before she returned home from the hospital with her son. Needless to say, they did not. Ms. Simmons returned home with her son who was born prematurely in November 2018, to an apartment filled with the black substance. It was on the windowsills, the bathroom wall where the tub was and the ceiling. It started to spread where the vent was located in the bathroom.

**In 2019, Ms. Simmons's unit failed all inspections with HANO and the black substance was referred to as "mold." Finally, after she ran the course of having three failed inspections, HANO allowed Ms. Simmons to move out of the Laguna Run apartment in February 2020.  The unit was tested for mold on by Oscar Moya, and the results were analyzed by Air Allergen Mold Testing on September 27, 2019. The unit tested positive for harmful *Penicillium*.[87]** At that time, Ms. Simmons was provided with a report educating her regarding the adverse health effects caused by the mold to which she had been exposed.

During the time period that Ms. Simmons resided at Laguna Run, she observed visible mold growth, discoloration of water stains on walls and ceilings, areas of standing water or condensation on the floors, walls and window sills, and musty odors.

While residing at Laguna Run, Ms. Simmons personally observed inadequate security and ongoing criminal activity such as drug dealing in common areas. She is also aware of numerous violent crimes that have occurred at the complex. Based upon Ms. Simmons's personal observations, Laguna Run is not a safe place to live.

---

[87]       Ex. 33, Kesha Simmons Mold Testing Results dated 9/27/2019

While residing at Laguna Run, Ms. Simmons personally experienced roach and fly infestation in her apartment. Ms. Simmons also personally observed the following conditions throughout the apartment complex in common areas:

- Visible mold growth in other apartment units and common areas such as laundry rooms and hallways;
- Discoloration or water stains on walls and ceilings in other apartment units and common areas such as laundry rooms and hallways; and
- Areas of standing water or condensation in common areas such as laundry rooms and hallways.

The harmful conditions in Ms. Simmons' apartment were not apparent and/or visible to her at the time that she moved into the apartment at Laguna Run. She did not have any reason to believe that there was mold in the apartment unit when she moved in because the property management staff misrepresented to her that the apartment was habitable and free from environmental hazards and major plumbing/water intrusion issues.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **KESHA SIMMONS** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); property damages; and relocation expenses.

## JOHNSHANE POWELL

## AMENDED PARAGRAPH 94.

**JOHNSHANE POWELL** is a former lessee at Hidden Lake and Laguna Run. She had a valid and enforceable lease with Defendants Eastlake Development and Latter and Blum and then Dasmen Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Powell secreting conditions materially affecting the health or

safety of Plaintiffs in violation of the lease agreement. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Powell, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322.  As such, Ms. Powell alleges breach of contract.

On or about August 23, 2017, Ms. Powell entered into a one year lease agreement with Defendant Eastlake Development, LLC.  Ms. Powell resided in her apartment with her minor child, K.A.(1), and she was pregnant with her second minor child, K.A. (2). During her period of occupancy, Ms. Powell noted the presence of mold throughout her apartment. Ms. Powell notified Defendant Latter & Blum about the presence of mold on several occasions.

On or about, October 17, 2018, the Louisiana Housing Authority (hereinafter "LHA") conducted an inspection of Ms. Powell's apartment. As a result of the inspection, LHA determined that Ms. Powell's apartment failed to meet health and safety requirement due to mold and mildew like substances. Latter & Blum claimed to have remediated the mold, but they simply painted over it.

A second LHA inspection was conducted on or about October 31, 2018, and again, Ms. Powell's unit failed the health and safety requirements due to the presence of mold. During her period of occupancy in the apartment, Ms. Powell and her minor children experienced illnesses that she now attributes to mold exposure. She also had personal property destroyed and experienced emotional distress.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **JOHNSHANE POWELL** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life

(past, present and future); medical expenses (past, present and future); property damages; and relocation expenses.

**CHARLENE MILLER**

**AMENDED PARAGRAPH 95.**

**CHARLENE MILLER** is a former lessee at Laguna Reserve. Her former address was 5131 Bundy Road, Apartment D-217, New Orleans, Louisiana 70126. In 2015, Ms. Miller moved into the apartment complex and entered into a one year lease which was annually extended. She had a valid and enforceable lease with Defendants Triangle Real Estate and Southwood Realty and then Dasmen Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Miller secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreements. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Miller, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322.  As such, Ms. Miller alleges breach of contract.

In November 2018, the presence of black mold was confirmed in Ms. Miller's apartment. Ms. Miller was hospitalized at University Hospital in New Orleans for two weeks for lung infections related to mold exposure. Defendant Dasmen misrepresented to Ms. Miller that they were abating the mold in her unit. However, they sprayed a substance on the wall and painted over it. The mold continued to re-emerge throughout the duration of her occupancy until June 2019 when she moved out. Since Ms. Miller has moved out of the apartment, her health has continued to improve.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **CHARLENE MILLER** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); property damages; and relocation expenses.

**ERIC BROWN**

**AMENDED PARAGRAPH 96.**

**ERIC BROWN** is a current lessee at Laguna Reserve. His current address is 5131 Bundy Road, Apartments K-22, New Orleans, Louisiana 70127. He has also resided in Apartment Q-32. He has resided in the complex from 2017 through 2020. Mr. Brown has a valid and enforceable lease with Defendants Triangle Real Estate and Southwood Realty and then Dasmen Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Mr. Brown secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreements. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Mr. Brown, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322.  As such, Mr. Brown alleges breach of contract.

While he resided at the complex, he noted the presence of visible mold growth, discoloration of walls and ceilings, areas of standing water and condensation on floors, walls, and window sills, and a musty odor. He voiced complaints to the property managers to no avail. Mr. Brown experienced worsening of allergies, respiratory problems, nasal and sinus congestion, burning/watery eyes, worsening of asthma, coughing, sore throat, flu-like symptoms, skin

irritation, and headaches. Mr. Brown provided an interview to the media regarding the deplorable conditions of his apartment.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **ERIC BROWN** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future);medical expenses (past, present and future); property damages; and relocation expenses.

**TIFFANY WADE**

**AMENDED PARAGRAPH 97.**

**TIFFANY WADE** is a current lessee at Laguna Reserve. Her current address at Laguna Reserve is 5131 Bundy, Road, Apartments R-10, New Orleans, Louisiana 70127. She has resided in the complex since 2011. She has resided with her children: Ava Wade (age 4) and Dejon Boie (age 13). Ms. Wade had a valid and enforceable lease with Defendants Dasmen Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Wade secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreements. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Wade, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322.  As such, Ms. Wade alleges breach of contract.

Since she has resided at the complex, Ms. Wade has noted the presence of visible mold growth, discoloration of walls and ceilings, areas of standing water and condensation on floors, walls, and window sills, and a musty odor. The mold emerged in the master bedroom, kitchen,

bathroom, dining room and living room, as a result of defective plumbing which caused leaks and flooded her apartment. The water intrusion was also caused by damp conditions, washing machine leaks, hot water heater leaks, defective cladding, unprotected sheathing, siding leaks, air conditioner leaks and refrigerator leaks. She voiced complaints to the property managers and they continue to paint over the affected areas of water intrusion.

Ms. Wade and her minor children have experienced worsening of allergies, respiratory problems, nasal and sinus congestion, burning/watery eyes, worsening of asthma, coughing, sore throat, flu-like symptoms, skin irritation, and headaches.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **TIFFANY WADE** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); property damages; and relocation expenses.

## <u>RENATA WALKER</u>

## <u>AMENDED PARAGRAPH 98.</u>

**RENATA WALKER** is a former lessee at Carmel Brooks. Her former address was 12345 N-10 Service Road Apartment 1502, New Orleans, Louisiana 70128. Ms. Walker resided with her minor children: Amari Lewis (7); Elaiyah Lewis (5), Ariyah Lewis (4) an Jaylum Walker (2). She had a valid and enforceable lease with Defendants Dasmen Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Walker secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreements. Additionally, once the defects and vices were brought to the attention of the

property owners and managers by Ms. Walker, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322.  As such, Ms. Walker alleges breach of contract.

While residing in the apartment, Ms. Walker personally observed visible mold growth, discoloration or water stains on internally facing walls and ceilings, discoloration or water stains on externally facing walls, areas of standing water or condensation on floors, wall, or window sills, and musty odors. The issues that she reported to the property managers included water soaked and moldy carpet, a leak in her bathroom ceiling and the growth of mold, the air conditioning unit was leaking above her bedroom, mold and paint peeling in the tub.

Since she moved into the complex in 2015, Ms. Walker and her minor children experienced illnesses that they now attributed to mold.  While residing at Carmel Brooks, Ms. Walker and her children suffered with headaches, respiratory infections, coughing, congestion, sneezing, sinus problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms. Ms. Walker addressed our symptoms with over-the-counter medications. After residing at Carmel Brooks, Ms. Walker and her children suffered with headaches, respiratory infections, coughing, congestion, sneezing, sinus problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms.

**The unit was tested for mold on by Oscar Moya, and the results were analyzed by Air Allergen Mold Testing on December 10, 2019. The unit tested positive for harmful *Aspergillus/Penicillium, Cladosporium, Ulocladium* and *Ascospores.*[88]** At that time, Ms. Walker was provided with a report educating her regarding the adverse health effects caused by the mold to which she had been exposed.

---

[88]      Ex. 34, Renata Walker Mold Testing Results dated 12/10/2019

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **RENATA WALKER** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); property damages; and relocation expenses.

## TIFFANY A. CERRE

## AMENDED PARAGRAPH 99.

**TIFFANY A. CERRE** is a current lessee at Carmel Brooks. Her current address is 12345 N-10 Service Road, Apt. 202, New Orleans, Louisiana 70128. Ms. Cerre has resided in her Carmel Brooks apartment for 2 years.  She has a valid and enforceable lease with Defendants Dasmen Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Cerre secreting conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreements. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Cerre, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322.  As such, Ms. Cerre alleges breach of contract.

During her period of occupancy, Ms. Cerre personally observed visible mold growth, discoloration or water stains on internally facing walls and ceilings, discoloration or water stains on externally facing walls, areas of standing water or condensation on floors, wall, or window sills, and musty odors. While residing at Carmel Brooks, Ms. Cerre suffered with headaches, respiratory infections, coughing, congestion, sneezing, sinus problems and infections, sore

throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms. She has sought medical attention for her ailments and treated them with over-the-counter medications.

Ms. Cerre contends that the apartment is unsafe, unsanitary and uninhabitable due to the presence of mold and the smell. Water intrusion and mold have damaged her furniture. **The unit was tested for mold on by Oscar Moya, and the results were analyzed by Air Allergen Mold Testing on October 22, 2020. The unit tested positive for harmful *Altemaria/Ulocladium, Basidiospores, Chaetomium, and Aspergillus.*[89]** At that time, Ms. Cerre was provided with a report educating regarding the adverse health effects caused by the mold to which she had been exposed.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **TIFFANY CERRE** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); property damages; and relocation expenses.

## MELANIE ANDERSON

## AMENDED PARAGRAPH 100.

**MELANIE ANDERSON** is a current lessee at Carmel Springs. Her address at Carmel Springs is 12151 N-10 Service Road, Apt. 525.New Orleans, Louisiana 70128. She had a valid and enforceable lease with Defendants Dasmen Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Anderson secreting conditions materially affecting the health or safety of ordinary persons in violation of the lease agreements.

---

[89]     Ex. 35, Tiffany Cerre Mold Testing Results dated 10/22/2020

Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Anderson, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322.  As such, Ms. Anderson alleges breach of contract.

Ms. Anderson resided in Carmel Springs for 1 year with her children: Diamond Anderson (25), Tawanna Anderson (20), and Edward Anderson (26). On April 16, 2019, Ms. Anderson's apartment was flooded by another apartment. She was advised that she could not be moved to another apartment and she would have to wait for the maintenance staff to get to her unit to address the damage. After the flooding of her living room, kitchen and bathroom, Ms. Anderson personally observed visible mold growth, discoloration or water stains on internally facing walls and ceilings, discoloration or water stains on externally facing walls, areas of standing water or condensation on floors, wall, or window sills, and musty odors.

While residing at Carmel Springs, Ms. Anderson suffered with headaches, respiratory infections, coughing, congestion, sneezing, sinus problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms. She also experienced worsening asthma.

**The unit was tested for mold on by Oscar Moya, and the results were analyzed by Air Allergen Mold Testing on October 21, 2020. The unit tested positive for harmful *Chaetomium and Aspergillus/Penicillium.*[90]** At that time, Ms. Anderson was educated regarding the adverse health effects caused by the mold to which she had been exposed. To date the conditions have not been addressed and this is a continuing tort.

---

[90]     Ex. 36, Melanie Anderson Mold Testing Results dated 10/21/2020

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **MELANIE ANDERSON** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); property damages; and relocation expenses.

## AHSHAKI RILES

## AMENDED PARAGRAPH 101.

**AHSHAKI RILES** is a former lessee at Carmel Springs. Her address at Carmel Springs is 12151 N-10 Service Road, Apt. 115.New Orleans, Louisiana 70128. She resided in the unit from August 2015 through November 2020. At the time that she moved out, the conditions in her unit had not been addressed. Ms. Riles had a valid and enforceable lease with Defendants Dasmen Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Riles secreting conditions materially affecting the health or safety of ordinary persons in violation of the lease agreements. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Riles, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322.  As such, Ms. Riles alleges breach of contract.

She experienced water intrusion in the kitchen and living room. The mold was visible on the walls and in the carpet after her apartment was flooded. While residing at Carmel Springs, Ms. Riles suffered with headaches, respiratory infections, coughing, congestion, sneezing, sinus

problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms. She also experienced worsening asthma.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **AHSHAKI RILES** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); property damages; and relocation expenses.

<u>**LISHA BARLEY**</u>

<u>**AMENDED PARAGRAPH 102.**</u>

**LISHA BARLEY** is a current lessee at Laguna Creek. Her address at Laguna Creek is 6881 Parc Brittany Blvd., Apt. D-105, New Orleans, Louisiana 70128. Ms. Barley resides at Laguna Creek with her two minor children: Anayla Barley (7) and Giya Barley (2). At the time that she moved out, the conditions in her unit had not been addressed. Ms. Barley had a valid and enforceable lease with Defendants Dasmen Residential and the RH Entities. Under the provisions of the lease, Defendants were obligated to tender the leased premises in a clean, safe and good working condition. The premises was tendered to Ms. Barley secreting and failing to disclose conditions materially affecting the health or safety of Plaintiffs in violation of the lease agreement. Additionally, once the defects and vices were brought to the attention of the property owners and managers by Ms. Barley, Defendants failed to diligently make repairs to remove the hazardous conditions over which they exercised care, custody and control in violation of La. C.C. art. 2322.  As such, Ms. Barley alleges breach of contract.

During her period of occupancy, Ms. Barley personally observed visible mold growth, discoloration or water stains on internally facing walls and ceilings, discoloration or water stains

on externally facing walls, areas of standing water or condensation on floors, wall, or window sills, and musty odors. While residing at Laguna Creek, Ms. Barley suffered with headaches, respiratory infections, coughing, congestion, sneezing, sinus problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms. Her youngest child, Giya Barley, has undergone two blood transfusions. She experience random nose bleeds and high fevers.

While residing at Laguna Creek, Ms. Barley has constantly asked the property managers to replace the moldy carpets in her apartment. The apartment has an unbearable odor. **The unit was tested for mold on by Oscar Moya, and the results were analyzed by Air Allergen Mold Testing on December 10, 2019. The unit tested positive for harmful *Chaetomium* and *Cladosporium*.**[91] At that time, Ms. Barley was educated regarding the adverse health effects caused by the mold to which she had been exposed.*TO DATE, her maintenance needs are ongoing and they are continuing to be exposed to harmful mycotoxins.*

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **LISHA BARLEY** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); property damages; and relocation expenses.

## **DWAYNE CHANEY**

## **AMENDED PARAGRAPH 103.**

**DWAYNE CHANEY** is a former employee of Defendant Dasmen Residential and The Lynd Company. He was employed by Dasmen from December 14, 2017 through November

---

[91]        Ex. 37, Lisha Barley Mold Testing Results dated 12/10/2019

2019. He was employed by Lynd from November 2019 through 2020 as a maintenance tech. He did not receive any training in mold abatement. He was compelled to perform mold abatement without the provision of personal protective gear by this employers. As a direct result, he was intentionally exposed to toxic mold on a daily basis.

Mr. Chaney was an asthmatic when he went to work for Dasmen. As a direct result of intentional mold exposure, he experienced worsening asthma, headaches, respiratory infections, coughing, congestion, sneezing, sinus problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **DWAYNE CHANEY** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); and medical expenses (past, present and future).

## RONALD L. EDWARDS, SR.

## AMENDED PARAGRAPH 104.

**RONALD L. EDWARDS, SR.** is a former employee of Defendant Dasmen Residential and The Lynd Company. He was employed by Latter & Blum from 2015 through December 13, 2017. He was employed by Dasmen from March 2019 through November 2019. He was employed by Lynd from November 2019 through 2020 as a maintenance supervisor at all of the subject apartment complexes.. He did not receive any training in mold abatement. He was compelled to perform mold abatement without the provision of personal protective gear by this employers. As a direct result, he was intentionally exposed to toxic mold on a daily basis. He experienced headaches, respiratory infections, coughing, congestion, sneezing, sinus problems

and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **RONALD L. EDWARDS, SR.** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); and medical expenses (past, present and future).

### RICHARD COLEMAN

### AMENDED PARAGRAPH 105.

**RICHARD COLEMAN** was employed by Defendant Latter & Blum from 2016 through December 13, 2017. He was employed by Defendant Dasmen from December 13, 2017 through November 2019. He worked as a maintenance man at all of the subject apartment complexes.

He did not receive any training in mold abatement. He was compelled to perform mold abatement without the provision of personal protective gear by this employers. As a direct result, he was intentionally exposed to toxic mold on a daily basis. He experienced headaches, respiratory infections, coughing, congestion, sneezing, sinus problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **RICHARD COLEMAN** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); and medical expenses (past, present and future).

## JOHN HOUSE

## AMENDED PARAGRAPH 106.

**JOHN HOUSE** was employed by Defendant Dasmen from March 1, 2018 through April 2019. He worked as a regional maintenance supervisor at all of the subject apartment complexes. He did not receive any training in mold abatement from Dasmen. He was compelled to perform mold abatement without the provision of personal protective gear by this employers. As a direct result, he was intentionally exposed to toxic mold on a daily basis. He experienced headaches, respiratory infections, coughing, congestion, sneezing, sinus problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **JOHN HOUSE** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); and medical expenses (past, present and future).

## SHELTON LUVINE

## AMENDED PARAGRAPH 107.

**SHELTON LUVINE** was employed by Defendant Latter & Blum from April 20, 2014 through December 13, 2017. He was employed by Defendant Dasmen Residential from December 14, 2017 through November 2019. He worked as a maintenance man at all of the subject apartment complexes. He did not receive any training in mold abatement from Dasmen. He was compelled to perform mold abatement without the provision of personal protective gear by this employers. As a direct result, he was intentionally exposed to toxic mold on a daily basis. He experienced headaches, respiratory infections, coughing, congestion, sneezing, sinus

problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **JOHN HOUSE** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); and medical expenses (past, present and future).

## TONY CRAWFORD

## AMENDED PARAGRAPH 108.

**TONY CRAWFORD** was employed by Defendant Dasmen Residential from July 2018 through February 2019. He worked as a renovations project manager at all of the subject apartment complexes. He did not receive any training in mold abatement from Dasmen. He was compelled to perform mold abatement without the provision of personal protective gear by this employers. As a direct result, he was intentionally exposed to toxic mold on a daily basis. He experienced headaches, respiratory infections, coughing, congestion, sneezing, sinus problems and infections, sore throats, achiness, flu-like symptoms, itching, and an increase in allergy symptoms.

As a direct result of the combined acts of negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative **TONY CRAWFORD** has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); and medical expenses (past, present and future).

# LEGAL THEORIES OF LIABILITY

## STRICT LIABILITY

## AMENDED PARAGRAPH 109.

In leasing a thing, a lessor warrants that the thing is free from vices or defects that prevent the thing from being used for the purpose for which it was leased. That warranty extends to vices or defects that arise after delivery of the thing that are not attributable to the fault of the lessee and even to the vices or defects that are known to the lessor.  Plaintiffs expressly allege Defendant property owners and/or property managers (former and current) tendered to them apartment units that contained defects [water-intrusion and mold-infestation] and caused them injuries. As such, Defendants are strictly liable for their damages pursuant to **La. C.C. Arts. 2696 and 2697**.

## AMENDED PARAGRAPH 110.

Defendant property owners and/or property managers (former and current) caused Plaintiffs' damages as a result of the ruin of their buildings by virtue of neglect. Defendants failed to exercise reasonable care in performing maintenance, upkeep and repairs on their properties. As such, Defendants are strictly liable for their damages pursuant to pursuant to **La. C.C. Arts. 2317.1 and 2322.**

## NEGLIGENCE

## AMENDED PARAGRAPH 111.

Plaintiffs' damages were caused by the negligence of the Defendant property owners and/or property managers (former and current) who failed to exercise reasonable care in performing maintenance, upkeep and repairs to buildings constructed in the 1970's and 1980's. Defendants have violated International Building Codes, National Fire Protection Association

Life Safety Codes, City of New Orleans' Building Codes and have created hazardous conditions for residents and employees. The ruin of the buildings posing an unreasonable risk of harm to Plaintiffs. The ruinous conditions of the property took many forms including: (1) roofs that needed to be replaced and were leaking; (2) cast iron pipes that were eroding, fracturing and leaking; (d) windows and doors that were not properly sealed and leaking; (4) heating, ventilation and air conditioning systems that were improperly installed and leaking; (5) floating slabs caused by cast-iron pipes; (6) mold in wall cavities; topes of ceilings; under carpets; behind interior walls; behind exterior walls; behind water stained ceilings and walls; (7) rotting windows, doors, stairways, balconies and threshholds; (8) defective cladding; and (9) leaking chimney caps. As these conditions have persisted over a decade, the Court can presume that the property owners had constructive notice of the defect.[92]

## AMENDED PARAGRAPH 112.

Through mold testing results, failed inspection reports, third-party documents, and medical evidence, Plaintiffs have proven actual exposure to mold and that the exposure was a dose sufficient to cause health effects. Plaintiffs have proven a sufficient causative link between the alleged health problems and the specific types of old found at the complexes, namely:

*Stachybotrys*, *Cladosporium*, *Aspergillus*, *Ullocladium*, *Badiospores*, *Bipolaris*, *Ascospores*, *Chaetomium*, *Curvularia*, *Acremonium*, *Zygomycete.* As such, Defendants are liable for Plaintiffs' damages pursuant to pursuant to **La. C.C. Art. 2315.**

## AMENDED PARAGRAPH 113.

Defendants undertook a duty to provide security, but it is being performed in negligent manner. **La. C.C. Art. 2315.**

---

[92]     *Carrero v. Mandina's Inc.,* 2019 LEXIS La. App. LEXIS 1388 (La. App. 4 Cir. 2019).

**FRAUD**

**AMENDED PARAGRAPH 114.**

Plaintiffs assert claims of fraud against Defendant property owners and/or property managers (former and current) under **La. C.C. art. 1953** which applies to contract cases. "Fraud" is defined as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." Fraud may also result from silence or inaction.  Defendant property owners and/or property managers (former and current) misrepresented the condition of the subject apartment complexes with the intent to lure and to deceive leaseholders and third-party payees like HUD/HANO. Plaintiffs had a reasonable and justifiable reliance upon the misrepresentations and injury resulted.

**AMENDED PARAGRAPH 115.**

Prior to leasing the subject apartment units, Defendant property owners and/or property managers (former and current) had knowledge of extensive water-intrusion and mold-infestation in the apartment complexes; yet, Defendants secreted this information from Plaintiffs and instructed the leasing staff and maintenance workers to deceive Plaintiffs regarding the condition of the apartment complexes. Defendants' misrepresentation, suppression or omission of information regarding the condition of the apartment substantially influenced the Plaintiffs' consent to the lease agreements.

**AMENDED PARAGRAPH 116.**

A former owner of property can be held liable for defective conditions in the property if the former owner knew of the defective conditions in the property prior to the transfer of the

property and concealed those problems.[93] Upon information and belief, Defendants Eastlake

Development, Lakewind East, Triangle Real Estate, and Southwood Realty had knowledge of

widespread water-intrusion issues and mold-infestation at all of the subject apartment complexes

on or before December 13, 2017, and concealed the defective conditions in the buildings to

transfer the subject properties to the Defendant RH Entities.

## AMENDED PARAGRAPH 117.

The defective conditions were present in the subject apartment buildings prior to the Acts

of Sale on December 13, 2017. Plaintiffs have obtained HANO failed inspection records for

water-intrusion and mold-infestation that pre-date the Acts of Sale on December 13, 2017.[94]

Even though the ownership of the apartment complexes were transferred to the Defendant RH

Entities in 2017, Defendants Eastlake Development, Lakewind East, Triangle Real Estate, and

Southwood Realty are still liable for Plaintiffs' damages caused by water-intrusion and mold-

infestation because they failed to waterproof and remedy other problems occasioned by water-

intrusion which led to the mold that caused harm to Plaintiffs.

## NEGLIGENT MISREPRESENTATION

## AMENDED PARAGRAPH 118.

Plaintiffs assert claims for negligent representation against the Defendant property

owners and property managers (former and current) under **La. C.C. Art. 2315.** Defendants had a

legal duty to support correct information about the condition of the apartment complexes,

breached that duty, and caused Plaintiffs' damages as a result of the breach. Defendants'

misrepresentation, suppression or omission of information regarding the condition of the

apartment substantially influenced the Plaintiffs' consent to the lease agreements.

---

[93]   *See Learson v. Bussey*, 96-2339 (La. App. 4 Cir.. 3/26/97), 691 So.2d 1301.
[94]   Ex.38, HANO failed inspection records

## BREACH OF CONTRACT PURSUANT TO LA. C.C. ART. 2684

## AMENDED PARAGRAPH 119.

Defendant property owners and/or property managers (former and current) breached their contractual duty with Plaintiff leaseholders, pursuant to lease agreements. Defendants contractually obligated themselves to give Plaintiff leaseholders the use and enjoyment of apartment units for a term in exchange for rent that the leaseholders bound themselves to pay. Defendants breach the contractual duty to deliver the apartments in good condition suitable for the purpose for which it was leased. As such, Defendants are liable for Plaintiffs' damages pursuant to pursuant to **La. C.C. Art. 2684.**

## BREACH OF CONTRACT PURSUANT TO 24 C.F.R. 5.703(f)

## AMENDED PARAGRAPH 120.

Defendant property owners and/or property managers (former and current) breached their contractual duty with HUD pursuant to **24 C.F.R. Part 5, §5703(f)** to maintain said apartments and common areas free of health and safety concerns, including, but not limited to, the presence of mold for the benefit of the leaseholders of the apartment complex and other permanent residents. Through their combined acts of neglect of the subject properties, the Defendants have breached their contractual duties to persons who receive housing rental assistance from HUD/HANO.[95]

## RES IPSA LOQUITUR

## AMENDED PARAGRAPH 121.

---

[95]    *See Claborne v. Hous. Auth. Of New Orleans*, 165 So.3d 268, (La. App, 4 Cir. 4/15/2015), a class certified for tenants receiving HANO housing vouchers who were exposed to mold at two apartment complexes in violation of 24 C.F.R. Part 5, § 5703(f).

Plaintiffs invoke the doctrine of *res ipsa loquitur*. The condition of the apartment buildings and the various code violations speak for themselves to infer negligence on the part of the defendants.

## INTENTIONAL TORT – EMPLOYEES – La. R.S. 23:1032(B)

## AMENDED PARAGRAPH 122.

Although workers' compensation is the exclusive remedy available to an employee against an employer for work-related injuries, La. R.S. 23:1032(B) provides an exception to this general rule in the event it arises from an intentional or deliberate act. Here, Plaintiffs who worked at the subject apartment complexes were intentionally exposed to mold, without training, without an education regarding health hazards, and without protective personal equipment. The conduct of Defendants Southwood Realty, Latter & Blum, Dasmen Residential and The Lynd Company was extreme and outrageous. The conduct violates Occupational Safety and Health Administration (OSHA) standards which require employers to provide personal protective equipment, when it is necessary to protect employees from job-related injuries, illnesses, and fatalities. With few exceptions, OSHA requires employers to pay for personal protective equipment when it is used to comply with OSHA standards. These typically include: hard hats, gloves, goggles, safety shoes, safety glasses, welding helmets and goggles, face shields, chemical protective equipment and fall protection equipment. The Defendants knew, or should have known, that injury was substantially certain to follow given the severity of environmental hazards at the apartment complexes to which the workers were exposed.

## DAMAGES

### AMENDED PARAGRAPH 124.

As a direct result of the combined acts of negligent conduct of the Defendants, Plaintiffs have sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); property damages; and the cost of relocation.

### BODILY INJURIES

### AMENDED PARAGRAPH 125.

Based upon environmental sampling and analysis, Plaintiffs have confirmed that the mold was present in an environmental medium (e.g. air, water and dust) that allowed it to come into contact with Plaintiffs and move along a biologic pathway (e.g. inhalation, ingestion, and absorption). The concentration of the mold and mold spores was sufficient to create a biologic response in human beings and animals that led to adverse health outcomes. The presence of the following mold, mold-spores, and mycotoxins, including, not limited to the following, has been confirmed in apartment units at the subject properties: *Stachybotrys*, *Cladosporium*, *Aspergillus*, *Ullocladium*, *Badiospores*, *Bipolaris*, *Ascospores*, *Chaetomium*, *Curvularia*, *Acremonium*, *Zygomycete.*

### AMENDED PARAGRAPH 126.

The type of mold, mold spores and mycotoxins found in all of the subject apartment complexes is consistent with the symptoms and diseases suffered by class members during periods of occupancy and/or work performed in the properties: respiratory symptoms, nasal irritation, sinus discomfort, watery eyes, throat discomfort, coughing, nasal symptoms, runny,

blocked or stuffy nose, headaches, itchy skin, weak voice, swallowing problems, and other more serious illnesses and/or diseases.

## EMOTIONAL DISTRESS

## AMENDED PARAGRAPH 127.

Plaintiffs seek non-pecuniary damages for breach of a contract of lease. As a matter of law, a tenant is not precluded from seeking nonpecuniary damages for breach of a contract of lease." However, the plaintiff has the burden of proving the damage he suffered as a result of the defendant's fault. Mental anguish may be awarded. A lease for residential purposes includes, as one of its objects, the enjoyment of habitable living quarters. Testimony and photographic evidence of the living conditions is sufficient evidence to warrant damages for mental anguish." Mental anguish may also be awarded for property damage. In Louisiana, an award for mental anguish resulting from property damage is permissible when property is damages by acts for which the tortfeasor will be strictly or absolutely liable or when property is damaged by acts constituting a continuing nuisance.[96]

## NEGLIGENT AND/OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## AMENDED PARAGRAPH 128.

Tenants who consistently voiced complaints to the property managers about vices and defects in their apartments had their work orders placed on the back burner.[97] Additionally, tenants who retained attorneys and tenants who gave interviews to the media were routinely

---

[96]     *Ganheart v. Exec. House Apartments*, 95-1278, p. 7 (La. App. 4 Cir. 2/15/96), 671 So.2d 525, 529; *Jensen v. Matute*, 2019-0709, p. 12 (La. App. 4 Cir. 1/29/20), 289 So.3d 1136, 1145; *First of Georgia Insurance Co. v. Cohen*, 398 So.2d 1209 (La. App. 4 Cir. 1981); *Turgeau v. Pan American World Airways*, 764 F.2d 1084 (5th Cir. 1985).

[97]     Ex. 7, Depo Tr. of Dwayne Chaney at p. 49.

evicted under the guise of "failure to pay rent."[98] Dasmen employees who gave interviews to the media about the deplorable housing conditions at Laguna Run were terminated.[99]

## PROPERTY DAMAGES

## AMENDED PARAGRAPH 129.

When tenants' belongings were destroyed by mold, Defendants would not compensate them for their losses.[100]

## CLASS ALLEGATIONS

## AMENDED PARAGRAPH 130.

There are at least 6,000 putative class members who either lived and/or worked at the 1990 apartment units at issue in these proceedings. The Defendants' own employees, third-party records from the City of New Orleans, Metropolitan Crime Commission, Housing Authority of New Orleans, Permanent Supportive Housing, Louisiana Housing Corporation,  and Plaintiffs' records have demonstrated that Defendants were fully aware of a widespread water-intrusion problem that spurred widespread mold-intrusion at all of the subject apartment complexes. Yet, the Defendant property owners and property managers (former and current) failed to properly remediate these problems causing the ruin of the buildings and Sick Building Syndrome.

## AMENDED PARAGRAPH 131.

There is evidentiary support for Plaintiffs' burden of proving numerosity, commonality, typicality, adequacy of representation, an objectively definable class, and predominance and superiority. All proposed class representatives have described visible mold in their apartments and common areas; they notified Defendants about water intrusion problems and mold; they

---

[98]    Ex. 7, Depo Tr. of Dwayne Chaney at p. 82; Ex. 9, Depo Tr. of Ronald Edwards at pp. 136-137.
[99]    Ex. 7, Depo Tr. of Dwayne Chaney at pp. 106-107.
[100]    Ex. 9, Depo Tr. of Ronald Edwards at p. 87

attests that the mold never went away with bleaching, or repainting among other factors; and they have confirmed the presence of mold with inspection records and mold testing. As such, Plaintiffs request class certification.

## RETENTION AND PAYMENT OF EXPERTS

## AMENDED PARAGRAPH 132.

Plaintiffs also anticipates that expert testimony may be required and prays that all expert fees and expenses incurred by her be taxed as costs to Defendants.

As a direct result of the slip and fall accident, and as a direct result of the negligent conduct of the Defendants, Named Plaintiff/Proposed Class Representative has sustained bodily injuries (past, present and future); emotional distress (past, present and future); loss of enjoyment of life (past, present and future); medical expenses (past, present and future); financial losses (past, present and future); and damages to her personal property.

## INSURANCE COVERAGE

## AMENDED PARAGRAPH 133.

**WILSHIRE INSURANCE COMPANY** (hereinafter referred to as "Wilshire") is a foreign corporation organized under the laws of the State of North Carolina, which provided a policy of insurance that insured Defendants Eastlake Development, KFK Group, KFK Development, and Latter & Blum. It also provided a policy of insurance that insured Defendants Dasmen Residential, LLC, RH New Orleans Holdings, LLC, RH Chenault Creek, LLC, RH Copper Creek, LLC, RH Windrun LLC, RH East Lake, LLC, and RH Lakewind East, LLC.

117

## **PRAYER**

WHEREFORE, the Plaintiffs pray:

A.  That Defendants be served with a copy of this Complaint and cited to appear and answer same;
B.  That after due proceedings had and a trial by jury, there be judgment in this matter in favor or the Plaintiffs and against the Defendants declaring them liable to the Plaintiffs, jointly, severally, and in solido, for compensatory damages from the date of judicial demand.
C.  That Plaintiffs recover their costs for prosecution of this lawsuit, and for interest on all damages from the date of judicial demand until paid, and for all other general and equitable relief which the Court may find reasonable in the premises.

**RESPECTFULLY SUBMITTED:**

*/s/ Suzette Bagneris*

Suzette Bagneris (LSBA No. 22241)
Emile A. Bagneris III (LSBA No. 22240)
THE BAGNERIS FIRM, LLC
2714 Canal Street, Suite 403
New Orleans, Louisiana 70119
Telephone: (504) 810-3995
Facsimile: (504) 336-2198
Email: sbagneris@ bagnerislawfirm.com
        ebagneris@ bagnerislawfirm.com
*Attorneys for Plaintiffs*

*/s/ Walter Leger, Jr.*

Walter Leger, Jr.
Matthew Landry
LEGER & SHAW
935 Gravier Street, Suite 2150
New Orleans, Louisiana 70112
Telephone: (504) 588-9043
Facsimile: (504)
wleger@ legershaw.com
mlandry@ legershaw.com
*Attorneys for Plaintiffs*

*/s/ Devonn Jarrett*

Devonn Jarrett
JARRETT LAW FIRM
643 Magazine Street, Suite 301(A)
New Orleans, Louisiana  70130
Telephone: (504) 491-6806
Email: djarrett @jarrettlawgroup.com
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 16, 2021, the foregoing Motion was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system. Parties who are not enrolled with the Clerk shall be served by operation of law.

*/s/ Suzette Bagneris*

_____

Suzette Bagneris (LSBA No. 22241)

**WILSHIRE INSURANCE COMPANY**
**Through its Attorneys of Record:**
Tabitha Durbin
LEWIS, BRISBOIS, BISGAARD, & SMITH
100 E. Vermillion Street, Suite 300
Lafayette, Louisiana 70501
Telephone: (337) 326-5777
Email: Tabitha.Durbin @lewisbrisbois.com
  jenny.michel @lewisbrisbois.com
  Dakota.chenevert @lewisbrisbois.com
  Malise.Dennard @lewisbrisbois.com

**EASTLAKE DEVELOPMENT, LLC**
**KFK DEVELOPMENT, LLC**
**KFK GROUP, LLC**
Through their attorney of record:
Jonathan M. Walsh
Cassie P. Gailmor
DEUTSCH, KERRIGAN & STILES, LLP
755 Magazine Street
New Orleans, Louisiana 70130
Telephone: (504) 581-5141
Email: jwalsh@deutchkerrigan.com
  Cassie @deutschkerrigan.com

**DASMEN RESIDENTIAL, LLC**
**RH COPPER CREEK, LLC**
**RH EAST LAKE, LLC**
**RH CHENAULT CREEK, LLC**
**RH LAKEWIND EAST, LLC**
**RH WINDRUN, LLC**
**RH NEW ORLEANS HOLDINGS, LLC**
Through their attorneys of record:
Ernest Gieger, Jr.
Emily Eagan
Michael Hill
Nicholas Bergeron
Tucker Bohren
GIEGER, LABORDE & LAPEYROUSE
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone: (504) 654-1378
Email: egieger @glllaw.com
         eeagan @glllaw.com
         mhill @glllaw.com
         nbergeron @glllaw.com
         Tbohren @glllaw.com

**LATTER & BLUM PROPERTY MANAGEMENT, INC.**
Through its attorney of record:
Gustave A. Fritchie, III
Troy Bell
IRWIN, FRITCHIE, URQUHART & MOORE, LLC
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Email: gfritchie@irwinllc.com
         tbell @irwinllc.com

**TRIANGLE REAL ESTATE OF GASTONIA, INC.**
Through its Attorneys of Record:
Chris D'Amour
William Wright, IV
Luke LaHaye
ADAMS & REESE, LLP
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139
Telephone: (504) 585-0432
Email: luke.lahaye@arlaw.com
         Billy.wright@arlaw.com

120

**THE LYND COMPANY**
Through its registered agent for service of process:
First Corporate Solutions, Inc.
3867 Plaza Tower Drive, 1st Floor
Baton Rouge, Louisiana 70816