UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSHUA AKEEM, ET AL. | CIVIL ACTION |
| VERSUS | NO. 19-13650 c/w 19-13636, 19-13673, 19-14634, 19-13705 |
| DASMEN RESIDENTIAL, LLC, ET AL. | & 20-187 |
| | SECTION M (3) *Pertains to all cases* |

## ORDER & REASONS

Before the Court is a motion by defendants Triangle Real Estate of Gastonia, Inc. ("Triangle"), Southwood Realty Co. ("Southwood"), and Lakewind East Apartments, LLC ("Lakewind") (collectively, "Triangle Defendants") to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Also before the Court is a Rule 12(b)(6) motion to dismiss filed by defendant Latter & Blum Management, Inc. ("Latter & Blum").[2] Plaintiffs respond in opposition,[3] and the Triangle Defendants and Latter & Blum reply in further support of their respective motions.[4] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

**I.     BACKGROUND**

These consolidated matters involve a putative class action brought by current and former tenants and maintenance workers of five apartment complexes ("Plaintiffs") against the current and former owners and property managers ("Defendants") for damages allegedly caused by hazardous conditions. In their master amended complaint, which combines the allegations of the

---

[1] R. Doc. 169.
[2] R. Doc. 174.
[3] R. Docs. 188 & 189.
[4] R. Docs. 193 & 197.

six consolidated actions, Plaintiffs allege that the apartment complexes' current and former owners and property managers "allowed deteriorating structural components of buildings such as roofs, plumbing, gutters, slabs, siding, stairwells, etc. to cause persistent water-intrusion spurring widespread mold-infestation."[5] Plaintiffs also allege that defendants provided inadequate security, failed to properly dispose of trash, failed to address insect, rodent, and reptile infestations, and failed to adhere to fire and safety codes, all of which created hazardous conditions.[6] Plaintiffs seek to represent a class defined as follows:

> All persons who sustained damage through hazardous conditions, including, but not limited to, exposure to water intrusion and/or exposure to fungal substances such as mold and mold spores which were growing on building materials and were released into the air of the following apartment complexes in New Orleans: Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks and Wind Run/Carmel Springs,[7] and who meet any one of the following criteria:
>
> 1. You currently and/or formerly resided and/or had an employment relationship with (meaning reported to work at) the apartment complexes known as Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks; and Wind Run/Carmel Springs, before December 13, 2017, and you allege damages from hazardous conditions, including, but not limited to, water intrusion and/or exposure to fungal substances such as mold and mold spores which were growing on building materials and were released into the air.
>
> 2. You currently and/or formerly resided and/or had an employment relationship with (meaning reported to work at) the apartment complexes known as Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks, and Wind Run/Carmel Springs, after December 13, 2017 to the present, and you allege damages from hazardous conditions including, but not limited to, water intrusion and/or exposure to fungal substances such as mold and mold spores which were growing on building materials and were released into the air.[8]

---

[5] R. Doc. 165 at 4.
[6] *Id.*
[7] The first name is the apartment complex's former name, and the second is its current name. After this block quote, each apartment complex will be referenced only by its current name.
[8] *Id.* at 2 (emphasis in original).

The ownership of the buildings changed on December 13, 2017. Prior to that date, the Triangle Defendants, which are related entities, owned four of the apartment complexes.[9] Specifically, Triangle owned Carmel Brooks, Lakewind owned Laguna Reserve, and Southwood owned Laguna Creek.[10] While the Triangle Defendants owned these buildings, Southwood served as the property management company.[11] On December 13, 2017, the Triangle Defendants sold their respective properties to RH Chenault Creek, LLC (Carmel Brooks), RH Lakewind East, LLC (Laguna Reserve), and RH Copper Creek, LLC (Laguna Creek).[12] Defendant Eastlake Development, LLC ("Eastlake") owned Laguna Run from December 11, 2012, until December 14, 2017, when it sold the property to RH East Lake, LLC.[13] Latter & Blum was Laguna Run's property manager from April 25, 2016, through December 14, 2017.[14] After the sales, defendants KFK Group, LLC, KFK Development, LLC, Dasmen Residential, LLC, and the Lynd Company managed the various properties.[15]

Plaintiffs' master amended complaint alleges that all the owners and property managers knew about the water, mold, and numerous other issues with the properties and failed to properly fix them.[16] They further allege that the property managers did not provide to the maintenance workers personal protective equipment or adequate training on mold remediation, but rather simply

---

[9] *Id.* at 9-10.
[10] R. Doc. 169-1 at 2. Wind Run Apartments, LLC ("Wind Run"), another entity that is related to the Triangle Defendants but was not named in this suit, owned Carmel Springs. *Id.* Plaintiffs agree that no Triangle Defendant ever had any ownership interest in Laguna Run and that their claims against the Triangle Defendants related to that apartment complex should be dismissed. R. Doc. 189 at 8. Accordingly, any purported claims against the Triangle Defendants related to Laguna Run are hereby DISMISSED WITH PREJUDICE.
[11] R. Doc. 169-1 at 2. Southwood is sued only in its capacity as an owner, and not as a property manager. *See* R. Doc. 165 at 9-11.
[12] R. Doc. 169-1 at 2. Wind Run sold Carmel Springs to RH Wind Run, LLC. *Id.*
[13] R. Doc. 174-1 at 3.
[14] *Id.* Latter & Blum never owned or managed Carmel Brooks, Laguna Reserve, Carmel Springs, or Laguna Creek. *Id.* at 7. Indeed, Plaintiffs do not advance any allegations against Latter & Blum related to these properties. *See* R. Doc. 165. Thus, any purported claims against Latter & Blum related to Carmel Brooks, Laguna Reserve, Carmel Springs, or Laguna Creek are DISMISSED WITH PREJUDICE.
[15] *Id.* at 10-11.
[16] *Id.* at 12-107.

instructed them to spray the affected areas with Kilz or bleach and paint over them.[17] Plaintiffs also allege that Eastlake and the Triangle Defendants misrepresented that the properties were in good condition and free of vices, ruin, and defects when the properties were sold in December 2017.[18] Moreover, Plaintiffs allege that Defendants breached the lease agreements in various ways, including failing to tender apartment units that were clean, safe, and in good working condition.[19] Plaintiffs assert several theories of liability including strict liability, negligence, fraud, negligent misrepresentation, and breach of contract as to all Plaintiffs, and intentional tort as to the employees.[20]

## II.   PENDING MOTION

The Triangle Defendants argue that all of Plaintiffs' claims against them sound in tort and are prescribed on the face of the complaint under Louisiana's one-year prescriptive period for delictual obligations.[21] In these consolidated actions, Plaintiffs first brought claims against the Triangle Defendants in November 2019, which was more than one year after the Triangle Defendants sold the properties in December 2017.[22] The Triangle Defendants further argue that neither the continuing tort doctrine nor *contra non valentem* applies to save Plaintiffs' tort claims from prescription.[23] Moreover, the Triangle Defendants contend that Plaintiffs did not allege a breach-of-contract claim, which has a ten-year prescriptive period, because Plaintiffs have not pointed to a contractual duty that the Triangle Defendants allegedly breached.[24]

---

[17] *Id.* at 16, 17, 23, 25, 27, 29-30, 103-07.
[18] *Id.* at 13, 21-22, 24, 26, 28.
[19] *Id.* at 33-103.
[20] *Id.* at 108-13.
[21] R. Doc. 169-1.
[22] *Id.* at 7-9.
[23] *Id.* at 10-11.
[24] *Id.* at 9.

Latter & Blum also argues that Plaintiffs' claims against it sound in tort and are prescribed on the face of the complaint.[25] Latter & Blum's management of Laguna Run ceased on December 14, 2017, and the first complaint implicating it in these consolidated actions was filed more than a year later on April 1, 2019.[26] Latter & Blum argues that all of the named Plaintiffs making claims against it specifically allege that they knew about the mold more than a year before they filed suit and neither the continuing tort doctrine nor *contra non valentem* interrupted or suspended the running of prescription.[27] Further, Latter & Blum argues that the tenant Plaintiffs have not stated a breach-of-contract claim against it because it was not a party to any contract with any tenant Plaintiff.[28]

In opposition, Plaintiffs argue that the doctrines of continuing tort and *contra non valentem* apply to interrupt or suspend prescription of their tort claims against the Triangle Defendants and Latter & Blum.[29] Plaintiffs also argue that they have stated breach-of-contract claims against the Triangle Defendants because they allege that the Triangle Defendants breached the lease agreements by failing to provide a premises that was free of vices and defects.[30] With respect to Latter & Blum, Plaintiffs argue that the property owner's obligations as lessor were transferred to Latter & Blum as property manager who thereafter breached those obligations intended to benefit Plaintiffs as lessees.[31]

---

[25] R. Doc. 174-1.
[26] *Id.* at 7.
[27] *Id.* at 8-21.
[28] *Id.* at 21-22.
[29] R. Docs. 188 at 21-26; 189 at 28-33.
[30] R. Doc. 189 at 6-23.
[31] R. Doc. 188 at 3-21.

## III.   LAW & ANALYSIS

### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts

pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)). Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the

allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### B. Prescription of Plaintiffs' Tort Claims

A federal court sitting in diversity applies state substantive law, *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), including "state statutes of limitations and related state law governing tolling of the limitation period." *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989). Under Louisiana law, liberative prescription is similar to the common-law concept of statute of limitations. It "is a mode of barring of actions as a result of inaction for a period of time." La. Civ. Code. art. 3447.

Louisiana Civil Code article 3492 provides: "Delictual actions are subject to a liberative prescription of one year [that] commences to run from the day injury or damage is sustained." The party pleading prescription usually bears the burden of proof. *Younger v. Marshall Indus., Inc.*, 618 So. 2d 866, 869 (La. 1993). However, if a claim appears to be prescribed on the face of the complaint, the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive period. *Id.*

Here, Plaintiffs' tort claims against the Triangle Defendants and Latter & Blum are prescribed on the face of the complaint. Plaintiffs allege that, during the Triangle Defendants' and Latter & Blum's tenure as owners and property manager, respectively, Plaintiffs observed mold growth, water stains on walls and ceilings, standing water or condensation on floors, walls, or windowsills, and musty odors, and that they had medical issues they believed were caused by

mold. Thus, Plaintiffs' alleged injuries related to any actions of the Triangle Defendants or Latter & Blum had to have occurred prior to the sale of the properties in December 2017. Plaintiffs filed their claims against the Triangle Defendants and Latter & Blum more than a year later, in 2019. Although Plaintiffs' tort claims against these defendants are prescribed on the face of the complaint, Plaintiffs argue that the continuing tort doctrine and *contra non valentem* operate to interrupt or suspend the prescriptive period.

### 1. Continuing tort doctrine

The continuing tort doctrine "applies when continuous conduct causes continuing damages." *Risin v. D.N.C. Invs., L.L.C.*, 921 So. 2d 133, 136 (La. App. 2005). "Where the cause of the injury is a continuous one giving rise to successive damages, prescription does not begin to run until the conduct causing the damage is abated." *Id.* "A continuing tort is occasioned by continual unlawful acts and for there to be a continuing tort there must be a continuing duty owed to the plaintiff and a continuing breach of that duty by the defendant." *Crump v. Sabine River Auth.*, 737 So. 2d 720, 728 (La. 1999).

Citing toxic exposure cases, Plaintiffs argue that they allege continuing torts against the Triangle Defendants and Latter & Blum because the hazardous conditions of the buildings persist and continue to cause them damage.[32] Plaintiffs' argument is flawed, however, because neither the Triangle Defendants nor Latter & Blum owes a continuing duty to Plaintiffs with respect to the condition of the buildings. Any duty these defendants had terminated when their association with the buildings ended in December 2017. As former owners and property managers, the Triangle Defendants and Latter & Blum have no duty with respect to the ongoing condition of the buildings. *Acosta v. Denka Performance Elastomer LLC*, 2021 WL 493391, at *3 (E.D. La. Feb. 10, 2021)

---

[32] R. Docs. 188 at 23-26; 189 at 30-33.

(continuing tort doctrine did not apply because sale of a chemical plant severed any legally cognizable tie between the former owner's operation of the plant and any continuing harm to plaintiffs). Their duty ended more than a year before Plaintiffs filed suit, and thus, the continuing tort doctrine does not save Plaintiffs' tort claims against the Triangle Defendants and Latter & Blum from prescription.

### 2. *Contra non valentem*

*Contra non valentem* is a Louisiana jurisprudential doctrine under which prescription is suspended when a person could not bring his or her suit. *Carter v. Haygood*, 892 So. 2d 1261, 1268 (La. 2005). The Louisiana supreme court recognizes four instances where *contra non valentem* is applied to prevent the running of prescription:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>
> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
>
> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and
>
> (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.

*Id.* These categories allow "the courts to weigh the equitable nature of the circumstances in each individual case to determine whether prescription will be tolled." *Id.* at 1268-69 (quotation omitted).

Here, Plaintiffs argue that they did not know and could not have known that mold in the apartment complexes was causing or exacerbating their symptoms until 2019 when their counsel performed mold tests and the issue was reported in the media.[33] Plaintiffs contend that when they

---

[33] R. Docs. 188 at 21-23; 189 at 28-29.

complained to the property managers about the black substance that they assumed was mold, the property managers said it was dirt, and as a result, Plaintiffs did not know that it was actually mold until 2019 when the mold tests were done.[34]

Plaintiffs' arguments in opposition to the motions to dismiss are belied by their master amended complaint which is replete with allegations that Plaintiffs continually complained about mold and suffered from the symptoms of mold exposure prior to 2019.[35] Regardless of whether the property managers misrepresented the nature of the black substance, Plaintiffs clearly suspected it was mold and were exhibiting symptoms they associated with mold exposure. Plaintiffs have not met their burden of proving that their cause of action was not reasonably knowable before prescription expired.

The case at bar is distinguishable from *Watters v. Department of Social Services*, 102 So. 3d 118 (La. App. 2012), upon which Plaintiffs rely. In *Watters*, the court applied *contra non valentem* to interrupt prescription where former employees alleged they sustained injuries as a result of mold in an office building. *Id.* at 131. When the employees, who were exhibiting respiratory and other medical issues, questioned whether their symptoms were caused by asbestos, they were told that asbestos was not the culprit, but they were not informed that possible mold in the building could be the cause of their issues. *Id.* Here, Plaintiffs allege in their complaint that they saw the mold. Even if Defendants did not confirm that the substance was indeed mold, Plaintiffs saw it with their own eyes and suspected that it was mold. Nothing prevented them from verifying their suspicions within the prescriptive period. Therefore, *contra non valentem* does not

---

[34] *Id.*
[35] *See* R. Doc. 165.

apply and Plaintiffs' tort claims against the Triangle Defendants and Latter & Blum are prescribed.[36]

### C. Plaintiffs' Breach-of-Contract Claims

#### 1. Triangle Defendants as owners

The Triangle Defendants argue that, although they had lease contracts with the tenant Plaintiffs, all of the tenant Plaintiffs' claims against them sound in tort because Plaintiffs do not identify any specific contract provision that was allegedly breached.[37] And, as such, the Triangle Defendants argue, all of Plaintiffs' claims against them are prescribed.[38] In opposition, Plaintiffs point out that the lease contracts required the landlords to provide premises that were habitable and free from vices and defects, and these are the contractual provisions that were allegedly breached.[39] Viewing the complaint as a whole, Plaintiffs have alleged enough, for the purposes of a motion to dismiss, to state breach-of-contract claims against the Triangle Defendants as building owners. Contract claims have a liberative prescriptive period of ten years. *See* La. Civ. Code art. 3499. Suit was filed well within this period. Thus, the Triangle Defendants' motion to dismiss is denied as to the tenant Plaintiffs' breach-of-contract claims against them.

#### 2. Latter & Blum as property manager

Latter & Blum argues that all of the tenant Plaintiffs' claims against it sound in tort because it was not a party to any contract with the tenant Plaintiffs.[40] Plaintiffs argue that, although they

---

[36] Plaintiffs cite Louisiana Code of Civil Procedure article 596 for the proposition that prescription was interrupted as to all class members when the named plaintiffs filed a request for class certification on September 27, 2019. R. Docs. 188 at 26-27; 189 at 33-35. Article 596 provides that prescription is *suspended*, not interrupted, upon the filing of the class petition. Moreover, the relevant petitions were filed in 2019, after Plaintiffs' tort claims against the Triangle Defendants and Latter & Blum had already prescribed.
[37] R. Doc. 169-1 at 9.
[38] *Id.*
[39] R. Doc. 189 at 6-23.
[40] R. Doc. 174-1 at 21-22. Although Southwood does not specifically make these arguments as a property manager, the same analysis applies to Plaintiffs' claims against it as a property manager.

did not have a contract with Latter & Blum, they were direct and intended beneficiaries of Latter & Blum's property management agreement with Eastlake, and thus, Plaintiffs contend, they can sue Latter & Blum for breaching the property management contract.[41]

Louisiana law provides that a contracting party may stipulate a benefit for a third party. La. Civ. Code art. 1978. A contract for the benefit of a third party is called a stipulation *pour autrui*. *Joseph v. Hosp. Serv. Dist. No. 2*, 939 So. 2d 1206, 1211-12 (La. 2006). A stipulation *pour autrui* exists if (1) the contract manifests a clear intention to benefit the third party; (2) there is certainty as to the benefit provided the third party; and (3) the benefit is not a mere incident of the contract between the parties. *Id.* at 1212. "A stipulation *pour autrui* is never presumed." *Id.* The party claiming the benefit bears the burden of proof. *Id.*

Plaintiffs baldly state that the property management contract between Latter & Blum and Eastlake constitutes a stipulation *pour autrui* as to which they were the intended beneficiaries. But Plaintiffs cite no provision in the contract that manifests Latter & Blum's clear intention to extend any benefit to them. Plaintiffs point to a contractual provision authorizing Latter & Blum to make or cause to be made "all alterations required to comply with rental agreement requirements."[42] This provision does not obligate Latter & Blum as property manager directly to the tenant Plaintiffs, but instead, merely authorizes Latter & Blum to make the alterations for which the landlord was obligated to its tenants. Any failure on the part of Latter & Blum under the property management contract is a matter between it and the landlord (the contracting parties), just as any failure on the part of the landlord under the rental agreements is a matter between it and the tenants. Any benefit Plaintiffs received as a result of the property management agreement was a mere incident of that contract. There is no provision in the contract evincing that the parties intended a

---

[41] R. Doc. 188 at 10-16.
[42] *Id.* at 12 (citing R. Doc. 174-2 at 7).

13

direct benefit to Plaintiffs. Without a clear expression of any intention to provide a benefit to Plaintiffs, the contract does not amount to a stipulation *pour autrui*. Consequently, the tenant Plaintiffs' breach-of-contract claims against Latter & Blum are dismissed with prejudice.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that the Triangle Defendants' motion to dismiss (R. Doc. 169) is GRANTED as to Plaintiffs' tort claims, and those claims are DISMISSED WITH PREJUDICE. The motion is DENIED as to Plaintiffs' breach-of-contract claims.

IT IS FURTHER ORDERED that Latter & Blum's motion to dismiss (R. Doc. 174) is GRANTED, and the tenant Plaintiffs' claims against it are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 21st day of July, 2021.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE