UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSHUA AKEEM, *et. al.* | CIVIL ACTION |
| VERSUS | NO. 19-13650 c/w 19-13673; 19-13705; 19-14634; 19-636; 19-14637; 20-187 |
| DASMEN RESIDENTIAL, LLC, *et. al.* | |
| | SECTION M (3) *Pertains to all cases* |

## ORDER & REASONS

Before the Court is a motion by defendants RH East Lake, LLC ("RH East Lake"), RH Chenault Creek, LLC ("Chenault Creek"), RH Lakewind East, LLC ("Lakewind East"), RH Copper Creek, LLC ("Copper Creek"), RH Windrun, LLC ("Windrun"), RH New Orleans Holdings, LLC ("New Orleans Holdings") (collectively, "RH Defendants"), and Dasmen Residential Management, LLC ("Dasmen") to dismiss certain claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Plaintiffs respond in opposition,[2] and the RH Defendants and Dasmen reply in further support of their motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion.

**I.   BACKGROUND**

These consolidated matters involve a putative class action brought by current and former tenants and maintenance workers of five apartment complexes ("Plaintiffs") against the current and former owners and property managers ("Defendants") for damages allegedly caused by hazardous conditions. In their master amended complaint, which combines the allegations of the

---

[1] R. Doc. 179.
[2] R. Doc. 194.
[3] R. Doc. 203.

six consolidated actions, Plaintiffs allege that the apartment complexes' current and former owners and property managers "allowed deteriorating structural components of buildings such as roofs, plumbing, gutters, slabs, siding, stairwells, etc. to cause persistent water-intrusion spurring widespread mold-infestation."[4]  Plaintiffs also allege that Defendants provided inadequate security, failed to properly dispose of trash, failed to address insect, rodent, and reptile infestations, and failed to adhere to fire and safety codes, all of which created hazardous conditions.[5]  Plaintiffs seek to represent a class defined as follows:

> All persons who sustained damage through hazardous conditions, including, but not limited to, exposure to water intrusion and/or exposure to fungal substances such as mold and mold spores which were growing on building materials and were released into the air of the following apartment complexes in New Orleans: Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks and Wind Run/Carmel Springs,[6] <u>and</u> who meet any <u>one</u> of the following criteria:
>
> 1. You currently and/or formerly resided and/or had an employment relationship with (meaning reported to work at) the apartment complexes known as Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks; and Wind Run/Carmel Springs, before December 13, 2017, <u>and</u> you allege damages from hazardous conditions, including, but not limited to, water intrusion and/or exposure to fungal substances such as mold and mold spores which were growing on building materials and were released into the air.
>
> 2. You currently and/or formerly resided and/or had an employment relationship with (meaning reported to work at) the apartment complexes known as Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks, and Wind Run/Carmel Springs, after December 13, 2017 to the present, <u>and</u> you allege damages from hazardous conditions including, but not limited to, water intrusion and/or exposure to fungal substances such as mold and mold spores which were growing on building materials and were released into the air.[7]

---

[4] R. Doc. 165 at 4.
[5] *Id.*
[6] The first name is the apartment complex's former name, and the second is its current name.  After this block quote, each apartment complex will be referenced only by its current name.
[7] *Id.* at 2 (emphasis in original).

The ownership of the buildings changed on December 13, 2017. Prior to that date, defendants Triangle Real Estate of Gastonia, Inc. ("Triangle"), Southwood Realty Co. ("Southwood"), and Lakewind East Apartments, LLC ("Lakewind") (collectively, "Triangle Defendants"), which are related entities, owned four of the apartment complexes.[8] Specifically, Triangle owned Carmel Brooks, Lakewind owned Laguna Reserve, and Southwood owned Laguna Creek.[9] While the Triangle Defendants owned these buildings, Southwood served as the property management company.[10] On December 13, 2017, the Triangle Defendants sold their respective properties to Chenault Creek (Carmel Brooks), Lakewind East (Laguna Reserve), and Copper Creek (Laguna Creek).[11] Defendant Eastlake Development, LLC ("Eastlake") owned Laguna Run from December 11, 2012, until December 14, 2017, when it sold the property to RH East Lake.[12] Latter & Blum Management, Inc. ("Latter & Blum") was Laguna Run's property manager from April 25, 2016, through December 14, 2017.[13] After the sales, defendants KFK Group, LLC, KFK Development, LLC, Dasmen, and the Lynd Company managed the various properties.[14]

Plaintiffs' master amended complaint alleges that all the owners and property managers knew about the water, mold, and numerous other issues with the properties and failed to properly fix them.[15] They further allege that the property managers did not provide to the maintenance workers personal protective equipment or adequate training on mold remediation, but rather simply

---

[8] *Id.* at 9-10.
[9] R. Doc. 169-1 at 2. Wind Run Apartments, LLC ("Wind Run"), another entity that is related to the Triangle Defendants but was not named in this suit, owned Carmel Springs. *Id.*
[10] *Id.* Southwood is sued only in its capacity as an owner, and not as a property manager. *See* R. Doc. 165 at 9-11.
[11] R. Doc. 169-1 at 2. Wind Run sold Carmel Springs to RH Wind Run, LLC. *Id.*
[12] R. Doc. 174-1 at 3.
[13] *Id.* Latter & Blum never owned or managed Carmel Brooks, Laguna Reserve, Carmel Springs, or Laguna Creek. *Id.* at 7. Indeed, Plaintiffs do not advance any allegations against Latter & Blum related to these properties. *See* R. Doc. 165.
[14] *Id.* at 10-11.
[15] *Id.* at 12-107.

instructed them to spray the affected areas with Kilz or bleach and paint over them.[16] Plaintiffs also allege that Eastlake and the Triangle Defendants misrepresented that the properties were in good condition and free of vices, ruin, and defects when the properties were sold in December 2017.[17] Moreover, Plaintiffs allege that all owner defendants breached the lease agreements in various ways, including failing to tender apartment units that were clean, safe, and in good working condition, and that the RH Defendants breached their contracts with the United States Department of Housing and Urban Development ("HUD") to provide low-income housing that complied with federal regulations.[18] Plaintiffs assert several theories of liability including strict liability, negligence, fraud, negligent misrepresentation, and breach of contract as to all Plaintiffs, and intentional tort as to the employee Plaintiffs.[19]

## II. PENDING MOTION

The RH Defendants argue that Plaintiffs cannot state a claim against them for allegedly breaching their contracts with HUD by failing to comply with federal regulations regarding the conditions of low-income housing because 24 C.F.R. § 5.703(f), the regulation relied upon by Plaintiffs, does not confer a private right of action.[20] The RH Defendants argue that "[n]otwithstanding whether Plaintiffs receive a benefit or right from the implementation of [§ 5.703(f)], the [r]egulation omits any language displaying an intent to create a private remedy."[21] They contend that the purpose of HUD regulations, such as § 5.703(f), is to set standards that owners must meet in order to receive government funding for low-income housing assistance programs, not to confer a private right of action on the tenants.[22] The RH Defendants further

---

[16] *Id.* at 16, 17, 23, 25, 27, 29-30, 103-07.
[17] *Id.* at 13, 21-22, 24, 26, 28.
[18] *Id.* at 33-103.
[19] *Id.* at 108-13.
[20] R. Doc. 179-1 at 3.
[21] *Id.* at 6.
[22] *Id.* at 5.

4

assert that even if the regulation did confer a private right of action, Plaintiffs lack standing to bring their breach-of-contract claim because they lack privity of contract and cannot show that any alleged contract between the RH Defendants and HUD contains a stipulation *pour autrui* in Plaintiffs' favor.[23]

Dasmen argues that the employee Plaintiffs' intentional tort claim should be dismissed because Plaintiffs do not plead sufficient factual allegations to establish the "intentional act" exception to the Louisiana Workers' Compensation Act ("LWCA").[24] Dasmen maintains that its alleged negligence was not intentional and therefore this claim does not fall within the narrow exception to an employee's exclusive remedy for work-related injuries.[25] Further, Dasmen asserts that the requisite intent or intentional act is absent from Plaintiffs' allegations because they "cannot demonstrate that the incident or [their] injuries were inevitable consequences of or substantially certain to occur while working at the subject apartment complexes."[26]

In opposition, Plaintiffs argue that § 5.703 confers a private right of action for a breach-of-contract claim in their favor because they are third-party beneficiaries to their landlords' agreement with HUD and the Housing Authority of New Orleans pursuant to Louisiana Civil Code article 1978.[27] Plaintiffs contend that under Louisiana jurisprudence, landlords and property managers of publicly funded housing are "contractually bound to provide mold-free housing," and "ha[ve] a duty, as a matter of Louisiana tort law, to exercise the degree of care specified in the federal regulations."[28] Further, Plaintiffs assert that Congress intended § 5.703 to benefit tenants and thus Plaintiffs have standing to sue for breach of contract.[29] Finally, Plaintiffs argue that Dasmen

---

[23] *Id.* at 7-8; R. Doc. 203 at 3-5.
[24] R. Doc. 179-1 at 8.
[25] *Id.* at 11.
[26] *Id.* at 15.
[27] R. Doc. 194 at 11.
[28] *Id.* at 13 (quoting *In re New Orleans Train Car Leakage Fire Litig.*, 795 So. 2d 364, 396 (La. App. 2001)).
[29] *Id.* at 14.

knowingly exposed employees to a dangerous work environment which amounts to an intentional tort because Dasmen chose to disregard the law.[30] Therefore, the employee Plaintiffs say, their tort claim falls under the "intentional act" exception of the LWCA and Dasmen is not immune from civil tort liability.[31]

### III.   LAW & ANALYSIS

#### A. 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (alteration omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[30] *Id.* at 16-17.
[31] *Id.* at 15.

6

for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration omitted).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*.  The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.  However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  "[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).  Motions to dismiss are disfavored and rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v.*

7

*Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### B. Analysis

#### 1. Breach-of-contract claim

Plaintiffs seek redress as purported third-party beneficiaries for the RH Defendants' alleged breach of their contract with HUD. Federal regulations require publicly funded housing to be free of health and safety hazards including mold and pest infestation. 24 C.F.R. § 5.703(f). To receive public subsidies, owners of these properties must fulfill the requirements imposed on them by federal regulations. *Banks v. Dall. Hous. Auth.*, 271 F.3d 605, 609-10 (5th Cir. 2001) (statute enacted "for the purpose of placing conditions upon the property owners' receipt of assistance payments, not in order to confer a benefit upon tenants of public housing"). Such regulations "may not confer a private right of action upon plaintiffs" but "may be utilized in determining whether defendants violated their duties and obligations under Louisiana law." *Claborne v. Hous. Auth. of New Orleans*, 165 So. 3d 268, 286 (La. App. 2015). Thus, although public safety laws, such as these regulations, are "very useful in determining the standard of care applicable in a negligence

action," *id.* (quoting *In re New Orleans Train Car Leakage*, 795 So. 2d at 396), courts recognize that "there is no private right of action for failure to comply with HUD regulations." *Wingfield v. Carrington Mortg. Servs., LLC*, 2015 WL 4886462, at *2 (N.D. Tex. Aug. 13, 2015).

Plaintiffs, relying on *Claborne*, contend that § 5.703 affords them a private right of action to assert a breach-of-contract claim. Plaintiffs clearly misread *Claborne*, which explicitly states that the regulation does not confer a private right of action. 165 So. 3d at 286. In *Claborne*, the court, relying on *In re New Orleans Train Car Leakage*, did not find a private right of action under a HUD regulation but instead held that such provisions are useful to determine duties and establish a standard of care under Louisiana *tort* law. *Id.* In the case at bar, Plaintiffs attempt to bring a *breach-of-contract* claim pursuant to § 5.703, which is not permitted. Thus, Plaintiffs do not have a private right of action under § 5.703 to bring such a claim.[32]

Even if the regulation did provide a private right of action, Plaintiffs lack standing to bring a breach-of-contract claim against the RH Defendants for allegedly breaching their purported contract with HUD. Recognizing that they are not parties to the allegedly breached contract, Plaintiffs argue that the purported contract between the RH Defendants and HUD contains a stipulation *pour autrui* for their benefit. Under Louisiana law, a stipulation *pour autrui* exists if (1) the contract manifests a clear intention to benefit the third party; (2) there is certainty as to the benefit provided the third party; and (3) the benefit is not a mere incident of the contract between the parties. *Joseph v. Hosp. Serv. Dist. No. 2*, 393 So. 2d 1206, 1212 (La. 2006). "A stipulation *pour autrui* is never presumed," and "[t]he party claiming the benefit bears the burden of proof." *Id.*

---

[32] Plaintiffs assert that their negligence and intentional tort claims are brought pursuant to § 5.703. R. Doc. 194 at 12. Perhaps so, but Plaintiffs' general negligence claim is not the subject of the RH Defendants' motion now before the Court.

Plaintiffs have not plausibly shown that there was a contract between the RH Defendants and HUD or that they are parties to any such contract. Nor do they point to any specific provision in said contract manifesting a clear intention to provide a benefit in their favor. As with the statutory provision at issue in *Banks*, the alleged contractual requirement to abide by § 5.703 in this case "focuses on the recipients of federal funding and on the federal agencies – not on the class represented by the plaintiffs." 272 F.3d at 611. If the RH Defendants failed to comply with the regulation, they placed their federal funding in jeopardy, but they did not confer a private remedy on Plaintiffs. While Plaintiffs certainly would benefit from clean and safe housing, any benefit they received (or were supposed to receive) was a mere incident of the alleged contract. Plaintiffs have not borne their burden of demonstrating the existence of a stipulation *pour autrui* for their benefit. Therefore, Plaintiffs' breach-of-contract claim against the RH Defendants concerning any contract between the RH Defendants and HUD is dismissed with prejudice.

### 2. Employees' intentional tort claim

The employee Plaintiffs argue that their intentional tort claim against Dasmen is not barred by the LWCA. The LWCA is the exclusive remedy for employees in cases of injury, sickness, or disease arising within the scope of their employment. La. R.S. 23:1032(A)(1)(a). In making their tort claim, Plaintiffs' rely upon the "intentional act" exception to the exclusiveness of the LWCA remedy, which states:

> Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.

La. R.S. 23:1032(B). This exception allows employees to recover damages outside of the LWCA if their injuries are the result of an intentional tort. In the context of an LWCA claim, the Louisiana supreme court held that an intentional act occurs when "the person who acts either (1) consciously

10

desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result." *Bazley v. Tortorich*, 397 So. 2d 475, 481 (La. 1981). "'Substantially certain to follow' requires more than a reasonable probability that an injury will occur and 'certain' has been defined to mean 'inevitable' or 'incapable of failing.'" *Jasmin v. HNV Cent. Riverfront Corp.*, 642 So. 2d 311, 312 (La. App. 1994). Substantial certainty "requires more than a reasonable probability, even more than a high probability, that an accident or injury will occur." *Bridges v. Carl E. Woodward, Inc.*, 663 So. 2d 458, 463 (La. App. 1995). "Believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers' compensation." *Reeves v. Structural Pres. Sys.*, 731 So. 2d 208, 212 (La. 1999). Louisiana appellate courts have narrowly construed the intentional act exception and have "almost universally held that employers are not liable under the intentional act exception for violations of safety standards or for failing to provide safety equipment." *Id*. (collecting cases); *see, e.g., Jacobsen v. Se. Distribs., Inc.*, 413 So. 2d 995 (La. App. 1982) (holding that failure to provide safety equipment was not an intentional act).

Here, Plaintiffs claim that Dasmen "made a choice to ignore the law" when it did not provide the employee Plaintiffs with adequate mold abatement training or proper safety equipment, which they liken to "sending them into a snake-pit."[33] Plaintiffs do not allege that Dasmen desired for Plaintiffs to become sick after mold exposure, so the question is whether the allegations plausibly show that it was "substantially certain" Plaintiffs would become sick as a result of Dasmen's conduct. *Bazley*, 397 So. 2d at 481. Substantial certainty has been held to mean

---

[33] R. Doc. 194 at 16-17.

11

"inevitable" or "incapable of failing" – a high bar to meet. *Jasmine*, 642 So. 2d at 312. Even if dangerous, Plaintiffs have not alleged it is certain that sickness will result from mold exposure. Instead, Plaintiffs contend that Dasmen "knew or should have known" that it was violating standards for mold abatement because it is a professional in the housing field.[34] But allegedly breaking a law does not mean that Dasmen acted intentionally for the purposes of the LWCA. *Mott v. River Par. Maint., Inc.*, 432 So. 2d 827, 832 (La. 1983) ("Violation of a statute alone is not per se such an intentional act as will result in the employer's tort liability if injuries are sustained by an employee because of the violation."). Furthermore, in pleading their tort claim, Plaintiffs used the language of negligence, perhaps even gross negligence (terms like "should have known"), but they did not use the language of intentional tort. *Bridges*, 663 So. 2d at 463; *see Tapia v. Schwegmann Giant Supermarkets, Inc.*, 590 So. 2d 806, 807-08 (La. App. 1991) ("Mere knowledge and appreciation of a risk does not constitute intent. Reckless or wanton conduct by an employer does not constitute intentional wrongdoing."). Therefore, even if Dasmen allegedly "made a choice to disregard the law" or "should have known" that sending workers into the apartment complexes with no training or protective equipment was dangerous, it does not amount to an intentional act for the purposes of the exception from the LWCA. Because the LWCA is the exclusive remedy for employers injured while in the scope of their employment, and Plaintiffs' tort claim does not fall within the narrow "intentional act" exception, this claim is dismissed with prejudice.

---

[34] *Id.* at 23.

## IV. CONCLUSION

Accordingly, for the forgoing reasons,

IT IS ORDERED that the RH Defendants' motion to dismiss the tenant Plaintiffs' breach-of-contract claim premised on the RH Defendants' alleged breach of its contract with HUD (R. Doc. 179) is GRANTED, and this claim is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Dasmen's motion to dismiss the employee Plaintiffs' intentional tort claim (R. Doc. 179) is GRANTED, and this claim is also DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 10th day of August, 2021.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE