UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSHUA AKEEM, *et al.*                         CIVIL ACTION

VERSUS                                          NO. 19-13650 c/w 19-13636,
                                                19-13673, 19-14634, 19-13705
DASMEN RESIDENTIAL, LLC, *et al.*               & 20-187

                                                SECTION M (3)
                                                *Pertains to all cases*

## ORDER & REASONS

Before the Court is a motion by Plaintiffs for reconsideration[1] of this Court's July 21, 2021

Order & Reasons (the "O&R") granting motions to dismiss filed by defendants Triangle Real

Estate of Gastonia, Inc. ("Triangle"), Southwood Realty Co. ("Southwood"), and Lakewind East

Apartments, LLC ("Lakewind") (collectively, "Triangle Defendants"), and defendant Latter &

Blum Management, Inc. ("Latter & Blum").[2]  The Triangle Defendants and Latter & Blum respond

in opposition.[3]  Having considered the parties' memoranda, the record, and the applicable law, the

Court issues this Order & Reasons denying Plaintiff's motion for reconsideration.

## I.      BACKGROUND

These consolidated matters involve a putative class action brought by current and former

tenants and maintenance workers of five apartment complexes ("Plaintiffs") against the current

---

[1] R. Doc. 204.  In their opening paragraph, Plaintiffs request, in the alternative, that this Court certify the dismissals for immediate appeal under Rule 54(b) of the Federal Rules of Civil Procedure which provides: "When an action presents more than one claim for relief … or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  Thus, to certify an otherwise interlocutory order for immediate appeal, a district court must make two separate findings under Rule 54(b): first, the court must determine that the order constitutes a "final judgment" as to one or more "claims or parties"; and second, the court must determine that "there is no just reason for delay."  Plaintiffs present no arguments on the merits of Rule 54(b), and the Court finds that immediate appeal is not warranted.

[2] R. Doc. 199.

[3] R. Docs. 209 & 214.

and former owners and property managers ("Defendants") for damages allegedly caused by hazardous conditions.  In their master amended complaint, which combines the allegations of the six consolidated actions, Plaintiffs allege that the apartment complexes' current and former owners and property managers "allowed deteriorating structural components of buildings such as roofs, plumbing, gutters, slabs, siding, stairwells, etc. to cause persistent water-intrusion spurring widespread mold-infestation."[4]   Plaintiffs also allege that Defendants provided inadequate security, failed to properly dispose of trash, failed to address insect, rodent, and reptile infestations, and failed to adhere to fire and safety codes, all of which created hazardous conditions.[5]  Plaintiffs seek to represent a class defined as follows:

> All persons who sustained damage through hazardous conditions, including, but not limited to, exposure to water intrusion and/or exposure to fungal substances such as mold and mold spores which were growing on building materials and were released into the air of the following apartment complexes in New Orleans: Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks and Wind Run/Carmel Springs,[6] and who meet any one of the following criteria:
>
> 1.  You currently and/or formerly resided and/or had an employment relationship with (meaning reported to work at) the apartment complexes known as Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks; and Wind Run/Carmel Springs, before December 13, 2017, and you allege damages from hazardous conditions, including, but not limited to, water intrusion and/or exposure to fungal substances such as mold and mold spores which were growing on building materials and were released into the air.
>
> 2.  You currently and/or formerly resided and/or had an employment relationship with (meaning reported to work at) the apartment complexes known as Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks, and Wind Run/Carmel Springs, after December 13, 2017 to the present, and you allege damages from hazardous conditions including, but not limited to, water intrusion and/or exposure to fungal substances such as mold and mold

---

[4] R. Doc. 165 at 4.
[5] Id.
[6] The first name is the apartment complex's former name, and the second is its current name.  After this block quote, each apartment complex will be referenced only by its current name.

spores which were growing on building materials and were released into the air.[7]

The ownership of the buildings changed on December 13, 2017.  Prior to that date, the Triangle Defendants, which are related entities, owned four of the apartment complexes.[8]  Specifically, Triangle owned Carmel Brooks, Lakewind owned Laguna Reserve, and Southwood owned Laguna Creek.[9]  While the Triangle Defendants owned these buildings, Southwood served as the property management company.[10]  On December 13, 2017, the Triangle Defendants sold their respective properties to RH Chenault Creek, LLC (Carmel Brooks), RH Lakewind East, LLC (Laguna Reserve), and RH Copper Creek, LLC (Laguna Creek).[11]  Defendant Eastlake Development, LLC ("Eastlake") owned Laguna Run from December 11, 2012, until December 14, 2017, when it sold the property to RH East Lake, LLC.[12]  Latter & Blum was Laguna Run's property manager from April 25, 2016, through December 14, 2017.[13]  After the sales, defendants KFK Group, LLC, KFK Development, LLC, Dasmen Residential, LLC, and the Lynd Company managed the various properties.[14]

Plaintiffs' master amended complaint alleges that all the owners and property managers knew about the water, mold, and numerous other issues with the properties and failed to properly fix them.[15]  They further allege that the property managers did not provide to the maintenance workers personal protective equipment or adequate training on mold remediation, but rather simply

---

[7] *Id.* at 2 (emphasis in original).

[8] *Id.* at 9-10.

[9] R. Doc. 169-1 at 2.  Wind Run Apartments, LLC ("Wind Run"), another entity that is related to the Triangle Defendants but was not named in this suit, owned Carmel Springs.  *Id.*

[10] *Id.*  Southwood is sued only in its capacity as an owner, and not as a property manager.  *See* R. Doc. 165 at 9-11.

[11] R. Doc. 169-1 at 2.  Wind Run sold Carmel Springs to RH Wind Run, LLC.  *Id.*

[12] R. Doc. 174-1 at 3.

[13] *Id.*  Latter & Blum never owned or managed Carmel Brooks, Laguna Reserve, Carmel Springs, or Laguna Creek.  *Id.* at 7.

[14] R. Doc. 165 at 10-11.

[15] *Id.* at 12-107.

instructed them to spray the affected areas with Kilz or bleach and paint over them.[16]  Plaintiffs also allege that Eastlake and the Triangle Defendants misrepresented that the properties were in good condition and free of vices, ruin, and defects when the properties were sold in December 2017.[17]  Moreover, Plaintiffs allege that Defendants breached the lease agreements in various ways, including failing to tender apartment units that were clean, safe, and in good working condition.[18]  Plaintiffs assert several theories of liability including strict liability, negligence, fraud, negligent misrepresentation, and breach of contract as to all Plaintiffs, and intentional tort as to the employees.[19]

The Triangle Defendants and Latter & Blum filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure arguing that the tenant Plaintiffs' tort claims are prescribed because the Plaintiffs had actual or constructive knowledge of the allegedly hazardous conditions more than a year before filing suit.[20]  They also moved to dismiss Plaintiffs' breach-of-contract claims.[21]  After considering the parties' memoranda, the record, and the applicable law, the Court granted the motions to dismiss the tort claims against the Triangle Defendants and Latter & Blum upon concluding such claims were prescribed on the face of the complaint.[22]  The Court specifically analyzed the continuing tort doctrine and *contra non valentem* finding that neither saved Plaintiffs' tort claims from prescription.[23]  With respect to *contra non valentem*, the Court held that Plaintiffs' complaint clearly reveals they suspected the presence of mold more than a year before suit was filed, and thus they had the obligation to verify their suspicions and timely bring

---

[16] *Id.* at 16, 17, 23, 25, 27, 29-30, 103-07.
[17] *Id.* at 13, 21-22, 24, 26, 28.
[18] *Id.* at 33-103.
[19] *Id.* at 108-13.
[20] R. Docs. 169 & 174.
[21] *Id.*
[22] R. Doc. 199 at 8-9.
[23] *Id.* at 9-12.

their action.[24]  Further, the Court dismissed the tenant Plaintiffs' breach-of-contract claims against Latter & Blum, but not their breach-of-contract claims against the Triangle Defendants.[25]

## II.    PENDING MOTION

Plaintiffs seek reconsideration of the portion of the O&R dismissing their tort claims against the Triangle Defendants and Latter & Blum as prescribed.[26]  They argue that the Court did not view the allegations of the complaint in the light most favorable to Plaintiffs, disregarded an analogous persuasive case, and is placing too high a burden upon economically disadvantaged people in requiring them to have verified their own suspicions that mold was present.[27]   In opposition, the Triangle Defendants and Latter & Blum argue that this Court thoroughly considered the relevant pleadings and jurisprudence and correctly found that Plaintiffs' tort claims were prescribed.[28]

## III.    LAW & ANALYSIS

Motions for reconsideration of interlocutory orders are governed by Rule 54(b) of the Federal Rules of Civil Procedure, which provides in pertinent part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Under Rule 54(b), a district court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017).  Unlike

---

[24] *Id.* at 10-12.
[25] *Id.* at 12-14.
[26] R. Doc. 204.
[27] R. Doc. 204-1 at 2-10.
[28] R. Docs. 209 & 214.

motions to alter or amend a judgment under Rule 59(e), "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting 'the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)) (internal citations and quotations omitted).  However, the district court must exercise this broad discretion sparingly to forestall the perpetual reexamination of orders and the resulting burdens and delays. *See Calpeto 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1414-15 (5th Cir. 1993) ("if the district court was required to reconsider [an interlocutory order] simply because [the losing party] belatedly came forward with evidence not submitted prior to the ruling[,] … the cycle of reconsideration would be never-ending"); *Domain Protection, LLC v. Sea Wasp, LLC*, 2019 WL 3933614, at *5 (E.D. Tex. Aug. 20, 2019) ("although a district court *may* revisit an interlocutory order on any ground it sees fit, it may also use its discretion to prevent parties from, without justification, raising new arguments for the first time") (emphasis in original; alterations, internal quotation marks, and citation omitted); 18B Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4478.1 (3d ed. 2019).

The Court is not persuaded that reconsideration is warranted.  Plaintiffs have not pointed to any jurisprudence or evidence that undercuts this Court's prior analysis and holding.  Under Louisiana law, delictual obligations have a liberative prescriptive period of one year that commences to run from the day the injury or damage is sustained.  La. Civ. Code art. 3492.  When claims are prescribed on the face of the complaint, as they are here, the plaintiff has the burden of proving a suspension or interruption of the prescriptive period.  *Younger v. Marshall Indus., Inc.*, 618 So. 2d 866, 869 (La. 1993).  As the Court previously held, Plaintiffs allege in their complaint that they observed mold growth and suspected it was making them ill more than one year before

6

they filed suit.  Plaintiffs thus knew or should have known through the exercise of reasonable diligence that the mold growth and their illnesses may have been caused by tort.  *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 995 F.3d 384, 392 (5th Cir. 2021).  A mold test was not required to trigger the running of prescription.  "Plaintiffs are not entitled to wait to sue until they are certain of what and/or who caused their injury. 'While evidentiary confirmation of a cause would be advantageous at a trial on the merits, that level of certitude is not a prerequisite to the commencement of prescription.'"  *Id.* (quoting *Oil Ins. Ltd. v. Dow Chem. Co.*, 977 So. 2d 18, 24 (La. App. 2007)).  Moreover, Plaintiffs failed to demonstrate that prescription was suspended under *contra non valentem* because they have not shown that there was anything preventing them from filing suit.  While the nature of the environmental hazard may have been downplayed and even denied by maintenance personnel, Plaintiffs make no factual allegations – and present no evidence – that either the mold itself or their own symptoms were concealed from them by the Triangle Defendants or Latter & Blum.  To be sure, the allegations of Plaintiffs' complaint reveal the opposite.  Plaintiffs now argue that poor people cannot be held to the same standards as those who are more well off in terms of obtaining mold testing and that they could not have known about the mold until their attorneys did the testing in 2019.  Plaintiffs' arguments mischaracterize the O&R and are far off the mark.  Plaintiffs were under no burden to do mold testing as a prerequisite to bringing suit.  But Plaintiffs cite no reason why they could not have obtained the assistance of an attorney or some other public housing advocate at an earlier date.  As in their original briefing on the motions to dismiss, Plaintiffs again point the Court to the decision in *Watters v. Department of Social Services*, 102 So. 3d 118 (La. App. 2012).  However, as reflected in the O&R, the Court previously considered the case and appropriately distinguished it.  Plaintiffs have shown no error or new evidence justifying reconsideration.

7

**IV.    CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' motion for reconsideration (R. Doc. 204) is DENIED.

New Orleans, Louisiana, this 26th day of August, 2021.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

8