UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSHUA AKEEM, *et. al.* | CIVIL ACTION |
| VERSUS | NO. 19-13650 c/w 19-13673; 19-13705; 19-14634; 19-636; 19-14637; 20-187 |
| DASMEN RESIDENTIAL, LLC, *et. al.* | |
| | SECTION M (3) *Pertains to all cases* |

### ORDER & REASONS

Before the Court is plaintiffs' motion for class certification.[1] The RH Defendants,[2] the Eastlake Defendants,[3] Dasmen Residential Management, LLC ("Dasmen"), and Wilshire Insurance Company respond in opposition.[4] The Triangle Defendants[5] also respond in opposition.[6] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying the motion because plaintiffs did not satisfy all of the requirements for class certification set forth in Rule 23 of the Federal Rules of Civil Procedure.

### I.   BACKGROUND

These consolidated matters involve a putative class action brought by current and former tenants and maintenance workers of five apartment complexes ("Plaintiffs") against the current and former owners and property managers of the apartment complexes ("Defendants") for

---

[1] R. Doc. 177.
[2] The "RH Defendants" are defendants RH East Lake, LLC ("RH East Lake"), RH Chenault Creek, LLC ("Chenault Creek"), RH Lakewind East, LLC ("Lakewind East"), RH Copper Creek, LLC ("Copper Creek"), RH Windrun, LLC ("Windrun"), and RH New Orleans Holdings, LLC.
[3] The "Eastlake Defendants" are defendants Eastlake Development L.L.C. ("Eastlake"), KFK Group, Inc. ("KFK Group"), and KFK Development, L.L.C. ("KFK Development").
[4] R. Doc. 219.
[5] The "Triangle Defendants" are Triangle Real Estate of Gastoina, Inc. ("Triangle"), Southwood Realty Company ("Southwood"), and Lakewind East Apartments, LLC ("Lakewind").
[6] R. Doc. 220.

damages allegedly caused by hazardous conditions.  In their master amended complaint, which combines the allegations of the six consolidated actions, Plaintiffs allege that the apartment complexes' current and former owners and property managers "allowed deteriorating structural components of buildings such as roofs, plumbing, gutters, slabs, siding, stairwells, etc. to cause persistent water-intrusion spurring widespread mold-infestation."[7]  Plaintiffs also allege that Defendants provided inadequate security, failed to properly dispose of trash, failed to address insect, rodent, and reptile infestations, and failed to adhere to fire and safety codes, all of which created hazardous conditions.[8]  Plaintiffs seek to represent a class defined as follows:

> All persons who sustained damage through hazardous conditions, including, but not limited to, exposure to water intrusion and/or exposure to fungal substances such as mold and mold spores which were growing on building materials and were released into the air of the following apartment complexes in New Orleans: Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks and Wind Run/Carmel Springs,[9] and who meet any one of the following criteria:
>
> 1. You currently and/or formerly resided and/or had an employment relationship with (meaning reported to work at) the apartment complexes known as Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks; and Wind Run/Carmel Springs, before December 13, 2017, and you allege damages from hazardous conditions, including, but not limited to, water intrusion and/or exposure to fungal substances such as mold and mold spores which were growing on building materials and were released into the air.
>
> 2. You currently and/or formerly resided and/or had an employment relationship with (meaning reported to work at) the apartment complexes known as Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks, and Wind Run/Carmel Springs, after December 13, 2017 to the present, and you allege damages from hazardous conditions including, but not limited to, water intrusion and/or exposure to fungal substances such as mold and mold

---

[7] R. Doc. 165 at 4.
[8] *Id.*
[9] The first name is the apartment complex's former name, and the second is its current name.  After this block quote, each apartment complex will be referenced only by its current name.

spores which were growing on building materials and were released into the air.[10]

The ownership of the buildings changed on December 13, 2017. Prior to that date, the Triangle Defendants, which are related entities, owned four of the apartment complexes.[11] Specifically, Triangle owned Carmel Brooks, Lakewind owned Laguna Reserve, and Southwood owned Laguna Creek.[12] While the Triangle Defendants owned these buildings, Southwood served as the property management company.[13] On December 13, 2017, the Triangle Defendants sold their respective properties to Chenault Creek (Carmel Brooks), Lakewind East (Laguna Reserve), and Copper Creek (Laguna Creek).[14] Eastlake, which was wholly owned by KFK Group and KFK Development, owned Laguna Run from December 11, 2012, until December 14, 2017, when it sold the property to RH East Lake.[15] Latter & Blum Management, Inc. ("Latter & Blum") was Laguna Run's property manager from April 25, 2016, through December 14, 2017.[16] After the sales, Dasmen and the Lynd Company managed the various properties.[17]

Plaintiffs' master amended complaint alleges that all the owners and property managers knew about the water, mold, and numerous other issues with the properties and failed to properly fix them.[18] They further allege that the property managers did not provide to the maintenance workers personal protective equipment or adequate training on mold remediation, but rather simply instructed them to spray the affected areas with Kilz or bleach and paint over them.[19] Plaintiffs

---

[10] *Id.* at 2 (emphasis in original).
[11] *Id.* at 9-10.
[12] R. Doc. 169-1 at 2. Wind Run Apartments, LLC ("Wind Run"), another entity that is related to the Triangle Defendants but was not named in this suit, owned Carmel Springs. *Id.*
[13] *Id.* Southwood is sued only in its capacity as an owner, and not as a property manager. *See* R. Doc. 165 at 9-11.
[14] R. Doc. 169-1 at 2. Wind Run sold Carmel Springs to Windrun. *Id.*
[15] R. Doc. 174-1 at 3.
[16] *Id.* All of Plaintiffs' claims against Latter & Blum have been dismissed. R. Docs. 199 & 215.
[17] R. Doc. 165 at 10-11.
[18] *Id.* at 12-107.
[19] *Id.* at 16, 17, 23, 25, 27, 29-30, 103-07.

also allege that Eastlake and the Triangle Defendants misrepresented that the properties were in good condition and free of vices, ruin, and defects when the properties were sold in December 2017.[20] Moreover, Plaintiffs allege that all owner defendants breached the lease agreements in various ways, including failing to tender apartment units that were clean, safe, and in good working condition, and that the RH Defendants breached their contracts with the United States Department of Housing and Urban Development ("HUD") to provide low-income housing that complied with federal regulations.[21] Plaintiffs assert several theories of liability including strict liability, negligence, fraud, negligent misrepresentation, and breach of contract as to all Plaintiffs, and intentional tort as to the employee Plaintiffs.[22]

Defendants filed various motions to dismiss resulting in the dismissal of several of Plaintiffs' claims.[23] At this juncture, the tenant plaintiffs retain claims against: the RH Defendants for negligence and breach of contract related to the lease agreements; the Eastlake and Triangle Defendants for breach of contract related to the lease agreements; and Dasmen for negligence.[24] All of the maintenance-worker plaintiffs' claims have been dismissed.

## II.  LAW & ANALYSIS

A party seeking class certification must demonstrate that the case is appropriate for class treatment under the standards set forth in Rule 23 of the Federal Rules of Civil Procedure. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). First, the case must meet all four prerequisites of Rule 23(a): (1) numerosity – "the class is so numerous that joinder of all members is impracticable"; (2) commonality – "there are questions of law or fact common to the class"; (3)

---

[20] *Id.* at 13, 21-22, 24, 26, 28.
[21] *Id.* at 33-103.
[22] *Id.* at 108-13.
[23] R. Docs. 169, 174, 179, 199, 208, 210, 213, 215 & 230.
[24] R. Docs. 165, 199, 213, 215 & 230.

typicality – "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) adequacy of representation – "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

If all four of the Rule 23(a) prerequisites are satisfied, the case may be maintained as a class action only if the party seeking class certification satisfies the requirements for one or more of the three types of class action under Rule 23(b). Here, Plaintiffs seek class certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In analyzing predominance and superiority, a court considers:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.*

A district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). "Rule 23 requires the court to find, not assume, the facts favoring class certification." *Prantil v. Arkema Inc.*, 986 F.3d 570, 579 (5th Cir. 2021) (internal quotation marks and alteration omitted). Class certification is a matter for the district court's discretion because it is essentially a fact-based inquiry and arises from "the district court's inherent power to manage and control pending litigation." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998). Although a court

should not reach the merits of plaintiffs' claims in a class certification decision, it may look beyond the pleadings to understand the claims, defenses, substantive law, and relevant facts in determining whether the case may proceed as a class action. *Castano*, 84 F.3d at 744.

### A. Rule 23(a) Requirements

#### 1. Numerosity

Numerosity for the purposes of Rule 23(a)(1) means that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "To satisfy the numerosity prong, a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000) (quotation omitted). "Although the number of members in a proposed class is not determinative of whether joinder is impracticable," the Fifth Circuit has held that a class with over 100 members "is within the range that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citation omitted).

Here, Plaintiffs argue they have satisfied the numerosity prong because the case involves 1,990 apartment units (442 in Laguna Run; 348 in Laguna Reserve; 400 in Carmel Springs; 584 in Carmel Brooks; and 216 in Laguna Creek).[25] Plaintiffs ask the Court to make "common sense assumptions" about numerosity from the known facts. For example, if it is assumed that each unit had one tenant who lived there for the entirety of the relevant period (2007 to 2021), the class would include almost 2,000 putative plaintiffs.[26] They further argue that if it is assumed that only one person occupied each unit per year and every unit had a new tenant each year, there would be 28,000 putative plaintiffs.[27]

---

[25] R. Docs. 177 at 4-5; 177-1 at 27-29.
[26] R. Docs. 177 at 5; 177-7 at 28.
[27] *Id.*

6

In opposition, Defendants argue that Plaintiffs fail to satisfy the numerosity prong because Plaintiffs point to the number of potential residents, not putative class members.[28] Defendants contend that a resident may not fit the class definition if he or she was not exposed to mold.[29] Moreover, they say, Plaintiffs have not demonstrated that joinder of the putative plaintiffs would be impracticable because they have not shown the geographical dispersion of the class, the ease with which class members may be identified, or the size of each plaintiff's claim.[30] The Triangle Defendants further argue that Plaintiffs have demonstrated woefully insufficient numbers of potential class members to warrant certification of a class against them.[31]

When the class defined in Plaintiffs' complaint is considered as a whole, Plaintiffs have satisfied the numerosity prong.[32] The case involves 1,990 apartment units and Plaintiffs allege that all of the units were potentially affected by mold over a multi-year period. Even assuming that only 10% of the units had one resident who was affected by mold during that time, the putative class would include 199 individuals, which is well within the range held to satisfy the numerosity requirement.

### 2. Commonality

Rule 23(a)(2)'s commonality prong requires that there be questions of law or fact common among the class members. Fed. R. Civ. P. 23(a)(2). To satisfy this requirement, plaintiffs must demonstrate that their claims depend on a common contention "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Ahmad v. Old Republic Nat'l*

---

[28] R. Docs. 219 at 11-12; 220 at 10.
[29] *Id.*
[30] R. Doc. 219 at 12-13.
[31] R. Doc. 220 at 10-11.
[32] The Triangle Defendants' arguments regarding the putative class members with claims against them will be addressed in the commonality and predominance sections of this opinion.

7

*Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012) (quotation omitted). "The test for commonality is not demanding and is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Mullen*, 186 F.3d at 625 (quotation omitted).

Plaintiffs argue that the commonality requirement is satisfied because their claims that Defendants breached their duty of care and the lease agreements – by failing to keep the buildings in good repair and failing to fix the problems – arise from a common source, namely, water intrusion that resulted in mold and other unhealthy conditions.[33] Plaintiffs contend that they all had the same standard-form lease agreement regardless of the landlord or property manager and that all landlords and property managers breached those leases by neglecting the property.[34]

In opposition, Defendants argue that Plaintiffs have not identified an issue common to all putative class members.[35] They also argue that not all of the named plaintiffs present evidence of the conditions on which the class relies for certification.[36] Specifically, Defendants argue that Plaintiffs do not all show evidence of mold in their units, water intrusion, electrical problems, fire hazards, or "unsafe/unsanitary conditions" during their occupancy.[37] Moreover, Defendants argue that Plaintiffs do not show that these conditions lasted from 2007 to 2021, but rather "present a piecemeal compilation to explain a 'widespread problem.'"[38]

It is doubtful whether Plaintiffs have satisfied the commonality prong for the class they propose. Although they contend that all of the putative plaintiffs had the same standard-form lease agreements regardless of which company owned or managed their particular apartment complex,

---

[33] R. Doc. 177-1 at 30-35.
[34] *Id.* at 34.
[35] R. Doc. 219 at 14-15.
[36] *Id.* at 15-17.
[37] *Id.*
[38] *Id.* at 16.

they have not, and cannot by virtue of the proposed subclass definitions, show that the class members sustained the same injuries by the same actions of the same defendants.[39] Specifically, the putative class members who allegedly sustained injuries only after the apartment complexes were sold in December 2017 cannot bring a claim against the prior owners (the Triangle Defendants and Eastlake Defendants). Moreover, putative plaintiffs who lived in Laguna Run, the complex owned by the Eastlake Defendants, cannot bring claims against the Triangle Defendants, and vice versa. *See Riley v. PK Mgmt, LLC*, 2019 WL 6998757, at *4 (D. Kan. Dec. 20, 2019) (holding that commonality was not satisfied when plaintiffs sought to certify a class of present and former tenants where there were various owners of an apartment complex during the relevant period). In *Riley*, the court recognized that the creation of multiple classes might satisfy commonality. *Id.* The same is true here if the proposed classes were separated by apartment complexes and owners and managers of the complexes, limited to the period of such ownership and management, and confined to the common areas of the building. However, even if the commonality issue were potentially curable by carving these consolidated cases into multiple classes, as many as 10 to 20 or more,[40] the Court forgoes the exercise of redefining these classes as unnecessary because predominance cannot be shown.[41]

### 3. Typicality

Typicality under Rule 23(a)(3) means that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Like commonality, the test for typicality is not demanding." *Mullen*, 186 F.3d at 625. This prong

---

[39] In this sense, Defendants' objections to commonality dovetail with their objections to ascertainability of the class. *Id.* at 8-10.

[40] *Id.* at 10. The class could be redefined by apartment complex (5 of them), by time period before and after December 2017 (5 x 2 time periods = 10), and then again by plaintiff group, *i.e.,* tenants or former workers (10 x 2 groups = 20). And even this increasing number of potential classes does not accomplish sorting by complex manager, type of claim, or damages sustained, which could expand the number of potential classes even further.

[41] *See infra* at 13-17.

"focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Lightbourn v. Cty. of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997).

Plaintiffs argue that typicality is satisfied because the named plaintiffs and putative class members share complaints of the ruin of the buildings, mold, and unsafe and unsanitary conditions, which they allege under "identical legal theories" were caused by negligent ownership, management, and maintenance of the apartment complexes.[42] Plaintiffs further argue that the named plaintiffs, like all class members, sustained personal injuries and property damage resulting from Defendants' conduct, which would be "the primary focus of any trial."[43]

In opposition, Defendants argue that while the crux of Plaintiffs' claims is damage caused by water intrusion and mold, Plaintiffs fail to submit evidence confirming the presence of mold in each of their apartment units during their occupancy and provide medical records for only 10 of the 28 tenant plaintiffs.[44] The Triangle Defendants further argue that typicality is not satisfied because the only claim remaining against them is breach of contract prior to December 2017, whereas Plaintiffs have negligence claims against the other Defendants that arose after December 2017.[45]

Here, as the class is presently defined (including the two subclasses), typicality is not satisfied. The proposed class includes tenants of all properties after December 14, 2017, who have alleged breach-of-contract, negligence, fraud, negligent misrepresentation, and negligent or intentional infliction of emotional distress claims against the RH Defendants and Dasmen. Also included in the class are the tenants of all properties before December 14, 2017, who retain only a

---

[42] R. Doc. 177-1 at 39-42.
[43] *Id.* at 42.
[44] R. Doc. 219 at 17.
[45] R. Doc. 220 at 11-12.

breach-of-contract claim against the Triangle Defendants or the Eastlake Defendants.  Although the breach-of-contract claim is common among all putative plaintiffs, the post-December 2017 tenants purport to rely primarily on negligence theories to prove their case, making their claims atypical of those of the pre-December 2017 plaintiffs.  The two subclasses' reliance on different legal theories means that their divergent interests do not satisfy the typicality prong.  In addition, it is difficult to say that the claims of the named plaintiffs are typical of those of the class when of the 28 named tenant plaintiffs, 20 are former or current residents of Laguna Run, three of Laguna Reserve, two of Carmel Brooks, two of Carmel Springs, and one of Laguna Creek, and none of the named plaintiffs is a current employee of any of the apartment complexes, none is a current tenant of Carmel Brooks, Carmel Springs, or Laguna Creek, and none resided at Laguna Creek before December 2017.[46]

As with commonality, however, it is possible that the class could be redefined into multiple classes to overcome the typicality problems plaguing the class as presently defined.  But doing so might well raise other objections to typicality including, for example, whether Plaintiffs have adequately identified representative plaintiffs having claims typical of their fellow class members for each of the 10 to 20 or more necessarily newly defined classes.  Regardless, the predominance obstacle will remain, as reviewed below.[47]

### 4. Adequacy of Representation

Rule 23(a)(4) requires a court to consider whether the attorneys and named plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  To that

---

[46] R. Doc. 219 at 3-4.
[47] *See infra* at 13-17.

end, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26 (alteration and quotation omitted). "The court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members," and that the class representatives are directing the litigation and are sufficiently informed to do so. *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005).

Plaintiffs argue that they have satisfied the adequacy prong because class counsel has experience in complex class-action litigation and the named plaintiffs have sworn in affidavits that they will vigorously advocate for the class members.[48] Defendants take no position on the qualifications of Plaintiffs' counsel.[49] The Triangle Defendants, however, argue that the class representatives cannot provide adequate representation for the absent class members because in the litigation to date Plaintiffs have focused on Laguna Run, leaving the other four apartment complexes – those previously owned by the Triangle Defendant – as afterthoughts.[50] They contend that Plaintiffs have not shown that the interests of the Laguna Run residents are sufficiently aligned with those of putative class members who lived in the other complexes.[51]

Assuming the problems with commonality and typicality could be cured by means of redefining the class into multiple classes, Plaintiffs have probably demonstrated adequacy of representation. They have experienced class counsel to which Defendants have not objected, and Plaintiffs may be able to identify named plaintiffs with claims within each of the newly defined classes. Although the main focus of Plaintiffs' case to date seems to be the Laguna Run complex,

---

[48] R. Doc. 177-1 at 42-44.
[49] R. Doc. 219 at 18.
[50] R. Doc. 220 at 12.
[51] *Id.*

there is no indication otherwise (*e.g.*, a conflict of interest) that the named plaintiffs cannot adequately represent the interests of all putative class members.

### B. Rule 23(b)(3) Requirements – Predominance and Superiority

Rule 23(b)(3) requires predominance, meaning that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods*., 521 U.S. at 623. Courts must, therefore, "give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof.'" *Id.* (quoting 2 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4:50, at 196-97 (5th ed. 2012)) (alteration omitted). In other words, a court must examine "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (quoting NEWBERG, § 4:49, at 195-96). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* at 453-54 (quoting 7AA CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1778, at 123-24 (3d ed. 2005)).

The predominance inquiry requires a court "to consider how a trial on the merits would be conducted if a class were certified." *Madison v. Chalmette Refining, L.L.C.*, 637 F.3d 551, 555 (5th Cir.2011) (quotation omitted). Accordingly, a court must examine the elements of the underlying cause of action to "identify the substantive issues that will control the outcome, assess which issues will predominate, and then determine whether the issues are common to the class." *Haley v. Merial, Ltd.,* 292 F.R.D. 339, 353 (N.D. Miss. 2013) (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011); *In re Wilborn*, 609 F.3d 748, 755 (5th Cir. 2010)). Predominance should be considered on a claim-by-claim basis. *Prantil*, 986 F.3d at 577. Further, a court "must respond to the defendants' legitimate protests of individualized issues that preclude class treatment." *Id.* at 578 (quotation omitted). Predominance is a more demanding test than commonality, but "[p]laintiffs cannot satisfy Rule 23(b)(3)'s predominance requirement without satisfying Rule 23(a)'s commonality requirement." *Ahmad*, 690 F.3d at 702.

The superiority element of Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To conduct this inquiry, a court must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication," while considering whether a class action would be more manageable than alternatives, and how the manageability concerns compare with the other advantages or disadvantages of a class action. *Earl v. Boeing Co.*, 2021 WL 4034514, at *39 (E.D. Tex. Sept. 3, 2021) (quotations omitted).

Relying on Louisiana state law, Plaintiffs argue that the predominance and superiority prongs are met. They point to 20 issues regarding the alleged condition of the buildings, Defendants' conduct, and Plaintiffs' injuries and argue that Defendants' collective neglect and

14

liability predominates over any issue involving individual plaintiffs.[52] Plaintiffs contend that the trial should be held in two phases with the first phase resolving the common issue of law regarding "plaintiffs' damages from water intrusion and mold exposure due to defendants' acts and omissions," and the second a set of mini-trials were each class member will have to prove causation and his or her damages.[53] Plaintiffs argue that a class action is the superior method of handling this case because, without class certification, there is a risk of "trying thousands of individual cases [that] could result in non-uniformity and inconsistent adjudications on the common issues."[54] Plaintiffs further assert, without explanation, that damages can be determined by a formula.[55]

In opposition, Defendants argue that predominance and superiority are not satisfied. Defendants contend that Plaintiffs do not prove predominance by listing questions they claim are common, but indeed do not apply to all putative class members.[56] Defendants point out that Plaintiffs' supposed "common questions" pertain to matters involving only Laguna Run tenants since 2018, and do not even apply to all of them.[57] The Defendants will raise individual defenses with respect to the conditions at the other apartment complexes, meaning, they say, that predominance is not satisfied.[58] Moreover, Defendants argue that Plaintiffs have not shown how the factual and legal differences between the individual plaintiffs are immaterial.[59] Finally, Defendants argue that a class action is not the superior method of adjudicating this case because Plaintiffs do not identify or address all four relevant factors enumerated in Rule 23(b)(3), and

---

[52] R. Doc. 177-1 at 44-46.
[53] *Id.* at 46-47.
[54] *Id*. at 46.
[55] *Id.* at 48-49.
[56] R. Doc. 219 at 19.
[57] *Id.* at 20.
[58] *Id.*
[59] *Id.* at 21.

Plaintiffs' admission that the trial would require phases is an admission that class certification is not warranted.[60]

Plaintiffs have not shown that common questions predominate over questions affecting only individual members in this litigation. As a threshold matter, Plaintiffs cannot satisfy predominance because they did not satisfy commonality. As noted above, the members of each subclass did not sustain the same injuries caused by the same actions of the same defendants. Not all putative plaintiffs have claims against all defendants. Moreover, the problems of predominance are not satisfied by redefining the current class into multiple classes with each limited to a single apartment complex for a particular period during which there was a distinct owner and a distinct manager. After all, resolving the class claims in this case would require resolving questions of fact and law relating to individual plaintiffs' claims because each putative class member is likely to have been affected in a different way and to a different extent by each Defendants' alleged negligence or breach of contract. In other words, determining both liability and damages as to each putative plaintiff requires examining whether and to what extent each individual apartment unit was affected by the alleged water intrusion, mold, maintenance problems, or other disrepair, and the exact nature of each person's alleged injuries. *See Cox v. Stone Ridge at Vinings, LLC*, 2014 WL 12663763, at *4 (N.D. Ga. Sept. 30, 2014) (holding that predominance was not satisfied in a case involving mold in an apartment complex because each plaintiff's "claims will rise and fall on the specific factual and legal circumstances of their individual cases rather than due to a predominant case or building deficiency similarly operative in all apartments"). For each class member, the fact-finder would need to inquire as to which complex he or she lived in; during what period of time; whether his or her specific unit experienced water intrusion, mold, maintenance

---

[60] *Id.* at 21-22.

problems, or other disrepair; the extent of such property damage or disrepair; whether and how often the apartment was serviced by the building manager; whether that plaintiff experienced health problems related to mold exposure or other unsanitary conditions; and the extent of his or her damages. *See Riley*, 2019 WL 6998757, at *6 (holding that similar questions regarding a proposed class of tenants in a pest-infested apartment building precluded a finding of predominance); *Cox*, 2014 WL 12663763, at *4 ("While the evidence suggests that some range of maintenance, mold, and water leakage problems existed throughout the apartment complex, the actual scope and nature of these problems will be different depending on the apartment's location, specific maintenance history, and other factors."). None of the questions listed by Plaintiffs is genuinely common to the class as presently defined in the sense that the same evidence will suffice for each member to make a *prima facie* showing or that it is susceptible to class-wide proof.[61] Instead, differences from class member to member make class treatment impossible for either liability or damages because the Court would need to inquire extensively into the facts and circumstances underlying those differences as to each class member. *See Crutchfield v. Sewerage & Water Bd.*, 829 F.3d 370, 375-79 (5th Cir. 2016) (upholding denial of certification on grounds that individualized issues of causation and damages would predominate for class of property owners alleging that construction caused personal injury and property damage). Thus, predominance and superiority are not satisfied.

---

[61] For examples of cases involving multiple apartment complexes but nevertheless presenting at least one question of law or fact common to class-member tenants that was not overwhelmed by individual dissimilarities precluding common answers, and thus approving class certification, *see Brown v. Mid-America Apartments, LP*, 2018 WL 3603080 (W.D. Tex. May 22, 2018) (involving alleged unlawfulness of a uniform, fixed 10% late fee for apartment complexes owned by the same entity); *Cleven v. Mid-America Apartment Communities, Inc.*, 328 F.R.D. 452 (W.D. Tex. 2018) (same).

### III. CONCLUSION

Accordingly, for the forgoing reasons,

IT IS ORDERED that the Plaintiffs' motion for class certification (R. Doc. 177) is DENIED.

New Orleans, Louisiana, this 14th day of October, 2021.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE