UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOSHUA AKEEM, *et. al.* | CIVIL ACTION |
| VERSUS | NO. 19-13650 c/w 19-13673; 19-13705; 19-14634; 19-636; 19-14637; 20-187 |
| DASMEN RESIDENTIAL, LLC, *et. al.* | |
| | SECTION M (3) *Pertains to all cases* |

### ORDER & REASONS

Before the Court is plaintiffs' second motion to remand.[1] The RH Defendants,[2] the Eastlake Defendants,[3] Dasmen Residential Management, LLC ("Dasmen"), the Triangle Defendants,[4] and Wilshire Insurance Company respond in opposition.[5] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons denying plaintiffs' second motion to remand.

**I.  BACKGROUND**

These consolidated matters involve a putative class action brought by current and former tenants and maintenance workers of five apartment complexes ("Plaintiffs") against the current and former owners and property managers of the apartment complexes ("Defendants") for damages allegedly caused by hazardous conditions. Plaintiffs originally filed these putative class

---

[1] R. Doc. 235.
[2] The "RH Defendants" are defendants RH East Lake, LLC ("RH East Lake"), RH Chenault Creek, LLC ("Chenault Creek"), RH Lakewind East, LLC ("Lakewind East"), RH Copper Creek, LLC ("Copper Creek"), RH Windrun, LLC ("Windrun"), and RH New Orleans Holdings, LLC.
[3] The "Eastlake Defendants" are defendants Eastlake Development L.L.C. ("Eastlake"), KFK Group, Inc. ("KFK Group"), and KFK Development, L.L.C. ("KFK Development").
[4] The "Triangle Defendants" are Triangle Real Estate of Gastoina, Inc. ("Triangle"), Southwood Realty Company ("Southwood"), and Lakewind East Apartments, LLC ("Lakewind").
[5] R. Doc. 237.

action cases in the Civil District Court, Parish of Orleans, State of Louisiana.[6] In November 2019, Defendants began removing them to this Court alleging subject-matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).[7] Shortly after the above-captioned lead case was removed (Civil Action No. 19-13650), Plaintiffs filed a motion to remand arguing that CAFA's local controversy exception precluded this Court from exercising jurisdiction over this case.[8] This Court denied the motion, holding that Plaintiffs did not demonstrate that the local defendants' alleged conduct forms a "significant basis" of the claims asserted or that Plaintiffs seek "significant relief" from the local defendants. In particular, Plaintiffs did not carry their burden of proof because the operative complaint lacked allegations as would provide a basis for both (1) a comparison of the relief sought from the local defendants and that sought against the non-local defendants, demonstrating that the former was not "small change" in comparison to the later; and (2) a comparison of the local defendants' conduct in relation to all the claims asserted in the litigation and to the conduct of the out-of-state defendants, demonstrating that the local defendants played a significant role in the alleged harm in relation to the out-of-state defendants.[9]

After the cases were consolidated, Plaintiffs filed a master amended complaint, which combines the allegations of the six consolidated actions. Plaintiffs allege that the apartment complexes' current and former owners and property managers "allowed deteriorating structural components of buildings such as roofs, plumbing, gutters, slabs, siding, stairwells, etc. to cause persistent water-intrusion spurring widespread mold-infestation."[10] Plaintiffs also allege that Defendants provided inadequate security, failed to properly dispose of trash, failed to address

---

[6] R. Doc. 1.
[7] *Id.*
[8] R. Doc. 23.
[9] R. Doc. 58.
[10] R. Doc. 165 at 4.

insect, rodent, and reptile infestations, and failed to adhere to fire and safety codes, all of which created hazardous conditions.[11] Plaintiffs sought to represent a class defined as follows:

> All persons who sustained damage through hazardous conditions, including, but not limited to, exposure to water intrusion and/or exposure to fungal substances such as mold and mold spores which were growing on building materials and were released into the air of the following apartment complexes in New Orleans: Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks and Wind Run/Carmel Springs,[12] and who meet any one of the following criteria:
>
> 1. You currently and/or formerly resided and/or had an employment relationship with (meaning reported to work at) the apartment complexes known as Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks; and Wind Run/Carmel Springs, before December 13, 2017, and you allege damages from hazardous conditions, including, but not limited to, water intrusion and/or exposure to fungal substances such as mold and mold spores which were growing on building materials and were released into the air.
>
> 2. You currently and/or formerly resided and/or had an employment relationship with (meaning reported to work at) the apartment complexes known as Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks, and Wind Run/Carmel Springs, after December 13, 2017 to the present, and you allege damages from hazardous conditions including, but not limited to, water intrusion and/or exposure to fungal substances such as mold and mold spores which were growing on building materials and were released into the air.[13]

The ownership of the buildings changed on December 13, 2017. Prior to that date, the Triangle Defendants, which are related entities, owned four of the apartment complexes.[14] Specifically, Triangle owned Carmel Brooks, Lakewind owned Laguna Reserve, and Southwood owned Laguna Creek.[15] While the Triangle Defendants owned these buildings, Southwood served

---

[11] *Id.*
[12] The first name is the apartment complex's former name, and the second is its current name. After this block quote, each apartment complex will be referenced only by its current name.
[13] *Id.* at 2 (emphasis in original).
[14] *Id.* at 9-10.
[15] R. Doc. 169-1 at 2. Wind Run Apartments, LLC ("Wind Run"), another entity that is related to the Triangle Defendants but was not named in this suit, owned Carmel Springs. *Id.*

as the property management company.[16]  On December 13, 2017, the Triangle Defendants sold their respective properties to Chenault Creek (Carmel Brooks), Lakewind East (Laguna Reserve), and Copper Creek (Laguna Creek).[17]  Eastlake, which was wholly owned by KFK Group and KFK Development, owned Laguna Run from December 11, 2012, until December 14, 2017, when it sold the property to RH East Lake.[18]  Latter & Blum Management, Inc. ("Latter & Blum") was Laguna Run's property manager from April 25, 2016, through December 14, 2017.[19]  After the sales, Dasmen and the Lynd Company managed the various properties.[20]

Plaintiffs' master amended complaint alleges that all the owners and property managers knew about the water, mold, and numerous other issues with the properties and failed to properly fix them.[21]  They further allege that the property managers did not provide to the maintenance workers personal protective equipment or adequate training on mold remediation, but rather simply instructed them to spray the affected areas with Kilz or bleach and paint over them.[22]  Plaintiffs also allege that Eastlake and the Triangle Defendants misrepresented that the properties were in good condition and free of vices, ruin, and defects when the properties were sold in December 2017.[23]  Moreover, Plaintiffs allege that all owner defendants breached the lease agreements in various ways, including failing to tender apartment units that were clean, safe, and in good working condition, and that the RH Defendants breached their contracts with the United States Department of Housing and Urban Development to provide low-income housing that complied with federal

---

[16] *Id*.  Southwood is sued only in its capacity as an owner, and not as a property manager.  *See* R. Doc. 165 at 9-11.
[17] R. Doc. 169-1 at 2.  Wind Run sold Carmel Springs to Windrun.  *Id.*
[18] R. Doc. 174-1 at 3.
[19] *Id*.  All of Plaintiffs' claims against Latter & Blum have been dismissed.  R. Docs. 199; 215.
[20] R. Doc. 165 at 10-11.
[21] *Id.* at 12-107.
[22] *Id.* at 16, 17, 23, 25, 27, 29-30, 103-07.
[23] *Id.* at 13, 21-22, 24, 26, 28.

regulations.[24] Plaintiffs assert several theories of liability including strict liability, negligence, fraud, negligent misrepresentation, and breach of contract as to all Plaintiffs, and intentional tort as to the employee Plaintiffs.[25]

Defendants filed various motions to dismiss resulting in the dismissal of several of Plaintiffs' claims.[26] At this juncture, the tenant plaintiffs retain claims against: the RH Defendants for negligence and breach of contract related to the lease agreements; the Eastlake and Triangle Defendants for breach of contract related to the lease agreements; and Dasmen for negligence.[27] All of the maintenance-worker plaintiffs' claims have been dismissed.

On October 14, 2021, this Court denied Plaintiffs' motion for class certification.[28] Two weeks later, Plaintiffs filed the instant motion to remand – their second one – arguing that this Court should abstain from exercising subject-matter jurisdiction pursuant to CAFA's home state and local controversy exceptions.[29] In their opposition memorandum, Defendants argue that this Court should treat Plaintiffs' second motion to remand as a motion to reconsider its denial of Plaintiffs' first motion to remand, and also that Plaintiffs cannot prevail on the merits of the exceptions.[30]

**II.    LAW & ANALYSIS**

Plaintiffs second motion to remand is not styled as, and does not specifically request, reconsideration of this Court's Order & Reasons denying their first motion to remand. The present motion again raises the local controversy exception and asserts for the first time the home state exception, which could have been presented in the first motion to remand. The Court will consider

---

[24] *Id.* at 33-103.
[25] *Id.* at 108-13.
[26] R. Docs. 169; 174; 179; 199; 208; 210; 213; 215; 230.
[27] R. Docs. 165; 199; 213; 215; 230.
[28] R. Doc. 234.
[29] R. Doc. 235.
[30] R. Doc. 236.

Plaintiffs' second motion to remand as a motion for reconsideration, at least in part. Rule 54(b) of the Federal Rules of Civil Procedure, which governs motions for reconsideration of interlocutory orders, provides in pertinent part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Under Rule 54(b), a district court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). Unlike motions to alter or amend a judgment under Rule 59(e), "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting 'the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)) (internal citations and quotations omitted). However, the district court must exercise this broad discretion sparingly to forestall the perpetual reexamination of orders and the resulting burdens and delays. *See Calpecto 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1414-15 (5th Cir. 1993) ("if the district court was required to reconsider [an interlocutory order] simply because [the losing party] belatedly came forward with evidence not submitted prior to the ruling[,] … the cycle of reconsideration would be never-ending"); *Domain Protection, LLC v. Sea Wasp, LLC*, 2019 WL 3933614, at *5 (E.D. Tex. Aug. 20, 2019) ("although a district court *may* revisit an interlocutory order on any ground it sees fit, it may also use its discretion to prevent parties from, without justification, raising new arguments for the first time") (emphasis in original; alterations, internal

quotation marks, and citation omitted); 18B CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478.1 (3d ed. 2019).

The Court is not persuaded that reconsideration is warranted.  Plaintiffs have not pointed to any jurisprudence or evidence that undercuts this Court's prior analysis and holding regarding the local controversy exception.  Plaintiffs essentially reassert their prior arguments concerning the local controversy exception, although they do expand their citation and discussion of authorities – all of which could have been raised in their first motion to remand, and which present no new law, in any event.  "'When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.'" *In re Taxotere*, 2020 WL 2473772, at *1 (E. D. La. May 13, 2020) (quoting *Hightower v. Group 1 Automotive, Inc.*, 2016 WL 3430569, at *3 (E.D. La. June 22, 2010)).

Nor have Plaintiffs convinced the Court that it should consider the newly raised home state exception at this late juncture.  Motions to remand premised on CAFA's abstention doctrines – including the local controversy and home state exceptions – must be brought within a reasonable amount of time after removal.  *Watson v. City of Allen*, 821 F.3d 634, 640 (5th Cir. 2016).  The present motion was filed almost two years after removal.  In the interim, this Court has considered and ruled upon one motion to remand, several motions to dismiss, and Plaintiffs' motion for class certification.  This Court and the parties have collectively spent hundreds of hours working on this case.  Under these circumstances, two years is too long to have waited.  *See Fulgenzi v. Smith*, 2014 WL 11497836, at *2 (D.N.M. Nov. 13, 2014) (holding plaintiff waived CAFA's local controversy exception by waiting 19 months after removal before seeking remand on that basis); *Barfield v. Sho-Me Power Elec. Co-op.*, 2014 WL 1343092, at *2 (W.D. Mo. Apr. 4, 2014)

(holding 26-month delay in seeking remand on basis of CAFA exceptions was unreasonable where discovery was extensive and parties had "invested hundreds of hours on motions to dismiss, a motion to sever, issues of class certification, and motions for summary judgment, as well as many ongoing procedural details"); *Yem, Inc. v. Gilbarco, Inc.*, 2011 WL 13220409, at *3 (C.D. Cal. Nov. 15, 2011) (holding four-month delay in seeking remand on basis of local controversy exception was unreasonable); *Calingo v. Meridian Res. Co.*, 2011 WL 3611319, at *6 (S.D.N.Y. Aug. 16, 2011) (holding that waiting 87 days was too long to seek remand on basis of CAFA exceptions); *see also Myers v. Blue Cross & Blue Shield of Miss.*, 368 F. Supp. 3d 1002, 1009-10 (S.D. Miss. 2019) (denying as untimely a non-procedural-defect, non-jurisdictional motion to remand as unreasonably late where plaintiff was aware of forum selection clause upon which motion was based for three months before filing it). *But see Watson*, 821 F.3d at 640 (holding that plaintiff's delay of 52 days after removal before filing a motion to remand was reasonable); *Lopez v. Progressive Cty. Mut. Ins. Co.*, 2019 WL 4876960, at *4 (W.D. Tex. Oct. 2, 2019) (holding that plaintiff's delay of 67 days after removal before filing motion to remand was reasonable), *adopted*, 2019 WL 9197836 (W.D. Tex. Dec. 11, 2019); *cf. Mock v. St. David's Healthcare P'ship, L.P.*, 2021 WL 75699, at *4 (W.D. Tex. Jan. 8, 2021) (observing in dicta that plaintiff's 19-month delay after removal before filing motion to remand was reasonable because of unavoidable procedural delays and status of case as "still in its very initial stages").

    It is certainly not reasonable for Plaintiffs to raise the home state exception at this stage of the litigation when they could, and should, have done so in their first motion to remand which was filed within a month of removal. Diversity jurisdiction, including under CAFA, "is based on the claims in the state court petition as they existed at the time of removal." *Rivers v. Chalmette Med. Ctr., Inc.*, 805 F. Supp. 2d 291, 294 (E.D. La. 2011) (citing *Cavallini v. State Farm Mut. Auto. Ins.*

*Co.,* 44 F.3d 256, 264 (5th Cir.1995)). Nothing has changed in this case in terms of CAFA jurisdiction or the application of its abstention doctrines since the day this matter was removed.[31] It is simply too late for Plaintiffs to raise abstention doctrines. Indeed, Plaintiffs' second attempt at remand wreaks of forum shopping since it comes on the heels of this Court's rulings on Defendants' multiple motions to dismiss and Plaintiffs' motion for class certification. Such litigation tactics should not be encouraged by entertaining a second motion to remand in the wake of adverse rulings, however unwelcome.[32]

### III. CONCLUSION

Accordingly, for the forgoing reasons,

IT IS ORDERED that the Plaintiffs' second motion to remand (R. Doc. 235) is DENIED.

New Orleans, Louisiana, this 18th day of November, 2021.

```
                            _____
                            BARRY W. ASHE
                            UNITED STATES DISTRICT JUDGE
```

---

[31] The Court's denial of class certification did not undermine CAFA jurisdiction. If the requirements of CAFA are met at the time of removal, a court retains CAFA jurisdiction even if class certification is later denied. *Slocum v. Int'l Paper Co.*, 2016 WL 6543301, at *4 (E.D. La. Nov. 4, 2016) (collecting cases).

[32] Moreover, Plaintiffs cannot prevail on the merits of the home state exception. The home state exception requires federal district courts to decline jurisdiction when more than two-thirds of the proposed class members and all the "primary defendants" are citizens of the forum state. 28 U.S.C. § 1332(d)(4)(B). Here, the primary defendants are the current owners, the RH Defendants, and the former property manager, Dasmen, because most of the Plaintiffs' tort claims were brought against these defendants. And the RH Defendants and Dasmen are not Louisiana citizens.