UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSHUA AKEEM, ET AL.**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 2:19-CV-13650-BWA-DMD**<br>**AND CONSOLIDATED CASES** |
| **DASMEN RESIDENTIAL, LLC, ET AL.**<br>    **Defendants** | **JUDGE BARRY W. ASHE** |
| | **MAGISTRATE JUDGE**<br>**DANA DOUGLAS** |
| **FILED:** _____ | _____<br>**DEPUTY CLERK** |
| **FILED IN: ALL CASES** | |

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF
### MOTION TO COMPEL PROPERTY INSPECTIONS

MAY IT PLEASE THE COURT:

Plaintiffs JOSHUA AKEEM, ET AL., have filed a motion to compel property inspections, pursuant to Rule 34(a)(2). Plaintiffs pray that the Court Order Defendant RH Entities to permit entry onto each of the five (5) apartment complexes at issue in this case *i.e.* . *Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks, and Wind Run/Carmel Springs.* The subject properties are controlled by the RH Entities. The purpose of the inspection is for Plaintiffs' experts to inspect, measure, survey, photograph, test and sample the property or any designated object of operation on it. The Plaintiffs have issued a formal discovery request for inspection to the RH Entities.[1] In response, Plaintiffs were told that the date in the Request was not available and that the parties should attempt to resolve this matter before expending considerable amounts of money on an

---

[1] Exhibit "A", Plaintiffs' Request for Inspection

inspection. Despite Plaintiffs' counsel's efforts to discuss settlement with the RH Entities and Dasmen's counsel, no responses to settlement offers have been received.

When it was obvious that the request to delay inspections for settlement discussions was just a farce, Plaintiffs made repeated demands via email to Counsel for the RH Entities for inspection of the properties to no avail.[2] Plaintiffs' Counsel have raised this issue for a very long time in Status Conferences with the Court and were advised to file a formal motion with the Court for consideration. The reasons in support of the motion are set forth in this memorandum below.

## FACTUAL BACKGROUND

In this case, Plaintiffs allege that Defendants breached their contractual duties to all Plaintiffs who were leaseholders at the subject apartment complexes. Plaintiffs allege Defendants did not tender the leased premises in a clean, safe, and good working order. Defendants tendered the units failing to disclose conditions materially affecting the health or safety of Plaintiffs in violation of lease agreement. And, Defendants failed to diligently make repairs to remove the dangerous conditions and defects in the premises over which they exercised care, custody, and control.

Plaintiffs have alleged Sick Building Syndrome due to deteriorating structural components of buildings such as roofs, plumbing, gutters, slabs, siding, stairwells, etc. which caused and continue to cause persistent water-intrusion spurring mold infestation.

The requested property inspections are certainly relevant to these proceedings. In their Complaints (including the Third Amended Complaint) and in their Class Certification Brief with

---

[2] Exhibit B, Written communications documenting a request for inspection. However, there have been numerous telephone calls between counsel requesting inspection dates.

affixed exhibits, Plaintiffs provided the Court with testimony of former Dasmen maintenance men who argued that the following conditions existed at the complexes:

1) **HIDDEN LAKES/LAGUNA RUN**

   AMENDED PARAGRAPH 20.

   Laguna Run has substantial water intrusion issues causing the ruin of the building:

   A. The majority of buildings consist of Duro-Last roofs that were sealed improperly. Since the construction of the building in 1970, the roofs have deteriorated over time. Traumatic roof damage is causing water-intrusion to the upstairs units. The upstairs units are leaking into the downstairs units. The roof has never been replaced; instead, the roof is consistently patched. The roofs are rotting and becoming sponge-like causing instability and dangerous conditions. Because the roofs are flat, water pools and there is no way for it to run off.

   B. A few of the buildings have gray shingle roofs that cause water-intrusion because the buildings do not have gutters to redirect the flow of water.

   C. The air conditioning units sit directly on the Duro-Last rooftops and were installed improperly. They should have been constructed on raised platforms; instead, they were installed directly on the roof causing water to pool on the rooftops. Therefore, the air conditioning units serve as a source of water-intrusion into second floor apartments. Some of the air conditioning units are inoperable and were just taken apart and left on rooftops.

   D. Ten to twelve buildings have "floating slabs". The drainage system is deteriorating and causing the slabs to separate from the buildings. As a result, inches of water rise up from the slab and flood first floor apartments.

   E. The foundation/slabs of other buildings are sinking, cracking, and shifting causing water intrusion into downstairs units.[3] In some buildings, there were actual sink holes in the slab.

   F. The cast iron pipes that were original to the building when it was constructed in 1970 are eroding, developing hairline fractures, and causing severe plumbing problems throughout the entire apartment complex. Both the Regional Maintenance Supervisor, John House, and the Renovation Project Manager, Tony Crawford, recommended to Dasmen's corporate office that all cast iron pipes be removed and replaced with PVC pipe to satisfy building codes and render the buildings watertight. The recommendations were rejected by Dasmen.

---

3   See Class Certification Brief (R. Doc. 177) - Ex. 301, Depo Tr. of John House at p. 33; Ex. 305, Depo Tr. of Tony Crawford at pp. 35-36.

G. The breach of the cast iron pipes is causing urine and feces to back up from toilets, tubs and sinks. It is also causing urine and feces to drain down walls and ceilings from upstairs apartments into downstairs apartments.

H. The siding on the buildings is retaining water due to the lack of gutters.

I. The windows are sealed improperly causing water intrusion.

J. The water intrusion is causing the wood framing inside of the walls to rot.

K. The water intrusion is causing the handrails and staircases to erode and become hazardous.

L. The water intrusion causes structural weakness of the second floors causing them to rot, weaken and collapse into first floor apartments. Numerous first floor ceilings have collapsed into first floor apartments. One to two ceilings per week would collapse due to water intrusion issues.

M. Doors are leaking causing water intrusion issues.

## WIDESPREAD MOLD-INTRUSION ISSUES
### AMENDED PARAGRAPH 21.

Laguna Run's widespread water-intrusion issues occurred over an extended period of time causing the ruin of the building and spurring widespread mold-intrusion throughout the apartment complex including apartment units and common areas.

### AMENDED PARAGRAPH 22.

Maintenance crews were never properly trained to perform mold remediation; hence, mold remediation was performed improperly. The maintenance men would spray the mold with Kilz or bleach and only cut out the affected portion of the sheetrock. They were not cutting the sheetrock to the wood and curing it. Insulation was not being removed and replaced. Patchwork was being performed with tenants, including small children, living in the units.

### AMENDED PARAGRAPH 23.

Whenever cabinets, vanities and sheetrock were removed at Laguna Run to perform cosmetic renovations, extensive plumbing problems, mold, insect, and rodent infestation was

evident throughout the apartment complex.

### AMENDED PARAGRAPH 24.

The apartments at Laguna Run shared a common ventilation system (HVAC) which allowed mold and mold spores to spread throughout the apartment complex by air.

### AMENDED PARAGRAPH 25.

There was also widespread mold intrusion in the common areas of Laguna Run including, but not limited to, laundry rooms, hallways, and stairwells.

### WIDESPREAD ELECTRICAL PROBLEMS
### AMENDED PARAGRAPH 28.

Laguna Run had extensive electrical wiring problems because the wiring was outdated, not up to the City of New Orleans' building codes and posed a fire hazard. The electrical panels were left uncovered which caused safety issues.

### WIDESPREAD INSECT, RODENT AND REPTILE INFESTATION ISSUES
### AMENDED PARAGRAPH 29.

There was a widespread problem with insect, rodent, and reptile infestation at Laguna Run. There were bats and rats inside of the walls and HVAC ventilation system. There were poisonous water moccasins that would enter tenants' units and nest on outside patios. There were five-to-six-foot alligators in an unfenced lake on the property. There are signs posted by the property managers stating: "Do not feed the alligators." All of these issues present an unreasonable risk of harm to tenants.

2) **LAKEWIND EAST/LAGUNA RESERVE**

### WIDESPREAD WATER-INTRUSION ISSUES
### AMENDED PARAGRAPH 37.

Laguna Reserve had the following water intrusion issues that caused the ruin of the building:

A. The roofs and chimney caps were not properly installed and/or designed which caused water-intrusion issues. This issue was finally addressed in 2019, but the water intrusion had already caused substantial damages to every apartment unit and the widespread presence of mold throughout the apartment complex.

B. The air conditioning units and hot water heaters were placed in the same closet creating moisture and water-including issues.

C. There were water intrusion issues present on all balconies, stairwells, and common areas.

### WIDESPREAD MOLD-INTRUSION
### AMENDED PARAGRAPH 38.

Water-intrusion from the roofs and chimney caps was neglected over an extended period of time spurring mold-intrusion throughout Laguna Reserve. Additionally, the air conditioning units were installed in the same closet as the hot water heaters creating moisture and water-intrusion issues spurring mold growth in 1/3 of the units at Laguna Reserve. There were tremendous amounts of mold in common areas such as laundry rooms.

### WIDESPREAD ELECTRICAL PROBLEMS
### AMENDED PARAGRAPH 41.

Laguna Reserve had widespread electrical problems caused by neglect to make repairs.

### AMENDED PARAGRAPH 39.

The apartments at Laguna Reserve shared a common ventilation system (HVAC) which allowed mold and mold spores to spread throughout the apartment complex through the air.

3) **WINDRUN/CARMEL SPRINGS**

### WIDESPREAD WATER INTRUSION ISSUES
### AMENDED PARAGRAPH 44.

Every roof at Carmel Springs leaks causing water-intrusion.

### WIDESPREAD MOLD-INTRUSION ISSUES
### AMENDED PARAGRAPH 45.

Due to the roofs leaking over an extended period of time, there is mold-intrusion present

in every building.

AMENDED PARAGRAPH 46.

The apartments at Laguna Reserve shared a common ventilation system (HVAC) which allowed mold and mold spores to spread throughout the apartment complex through the air.

WIDESPREAD ELECTRICAL PROBLEMS
AMENDED PARAGRAPH 48.

Carmel Springs has widespread electrical problems caused by neglect to make repairs. The electrical wiring does not satisfy City building codes.

4) **CHENAULT CREEK/CARMEL BROOKS**

WIDESPREAD WATER-INTRUSION ISSUES
AMENDED PARAGRAPH 51.

Carmel Brooks has leaking roofs and balconies, and leaking cast iron pipes, causing water-intrusion.

WIDESPREAD MOLD-INTRUSION ISSUES
AMENDED PARAGRAPH 52.

Due to the failure to address water-intrusion issues, there was mold-intrusion present in every building.

AMENDED PARAGRAPH 53.

The apartments at Carmel Brooks shared a common ventilation system (HVAC) which allowed mold and mold spores to spread throughout the apartment complex through the air.

WIDESPREAD ELECTRICAL PROBLEMS
AMENDED PARAGRAPH 55.

Carmel Brooks had widespread electrical problems caused by neglect to make repairs. The electrical wiring is not up to code.

5) **COPPER CREEK/LAGUNA CREEK**

WIDESPREAD WATER-INTRUSION PROBLEMS
AMENDED PARAGRAPH 57.

Laguna Creek's source of water intrusion was leaking roofs and the lack of gutters to properly drain water. A lot of the porches have collapsed due to water intrusion. The exterior of entire sides of buildings have been replaced due to water intrusion. Sometimes, there was nothing solid to adhere sheetrock to because the wood inside of the wall was decayed from water intrusion.

WIDESPREAD MOLD-INTRUSION PROBLEMS
AMENDED PARAGRAPH 58.

Ninety percent of all units had mold-intrusion. Sometimes maintenance crews had to replace entire walls at Laguna Creek from mold damage and water damage.

AMENDED PARAGRAPH 59.

The apartments at Laguna Creek shared a common ventilation system (HVAC) which allowed mold and mold spores to spread throughout the apartment complex through the air.

**APPLICABLE LAW**

"A party seeking discovery may move for an order compelling an… inspection."[4] Rule 34 requires a request for an inspection to describe with "reasonable particularity" the property to be inspected and "specify a reasonable time, place and manner for the inspection."[5] In the absence of such written details defining a request for inspection, the responding party is unable to provide a meaningful response or objection.[6] Indeed a motion to compel a Rule 34 request for inspection must only be filed after the moving party has "in good faith conferred or attempted to

---

[4] See Fed. R. Civ. P. 37(a)(3)(B).
[5] Fed R. Civ. P. 34(b)(1)(A)-(B).
[6] See Fed. R. Civ. P. 34(b)(2)(B)-(C).

confer" with the opposing party failing to allow the discovery "in an effort to obtain it without court action."[7] Accordingly, the Court will not compel discovery in the absence of an actual written request for the discovery.

## ARGUMENT

The ability to inspect the subject premises is critical to the Plaintiffs' ability to prepare their case for trial. The deteriorating conditions alleged in the Complaints did not occur overnight and would have required a tremendous amount of work to address. Plaintiffs have not been presented with any evidence from any of the Defendants to support a contention that some or all of the problems have been addressed and that the property does not remain in the deplorable condition that it was in when the Plaintiffs first attempted to conduct an inspection in November 2019. The Court may recall that Plaintiffs' Counsel and one expert, along with Emily Eagan (Counsel for the RH Entities and Dasmen) attempted to inspect the property in November 2019, but on that day, Plaintiff's counsel was asked to leave the property because Dasmen was terminated, and Lynd was on the property taking over custody and control. There is a news story documenting this event.[8]

Thereafter, Plaintiffs attempts to reset the inspection were met with arguments of inconvenience, questions about scope of inspections, and then a suggestion that the parties should spare that expense and discuss settlement instead. In view of the possibility of settlement, Plaintiffs' counsel obtained a mediator and attempted a mediation. Plaintiffs gave an opening statement, and the defense refused to continue with mediation efforts. Since then, we have been told that they are putting together a settlement proposal, so wait to conduct the inspection.

---

[7] See Fed. R. Civ. P. 37(a)(1).
[8] See https://www.wdsu.com/article/wdsu-investigates-tenants-fight-back-against-problem-new-orleans-apartment-complex/29776553

Most recently, after raising the request for inspection before the District Court in a Status Conference, Plaintiffs' Counsel was told for the first time that too much time has elapsed since the institution of this action and the Defense will object to the request for inspection. So, here we are requesting leave of Court to inspect the subject apartment complexes with our experts and facing a **July 10, 2023** deadline for the exchange of expert reports. In order to timely prepare expert reports, it is imperative that Plaintiffs' Counsel and their experts be granted access to the properties to conduct an inspection as soon as possible. No further delays or excuses can be tolerated.

Plaintiffs' Counsel has followed the federal rules. We have issued a formal request for inspection. We have repeatedly attempted to confer and work this issue out with the RH Entities' counsel, and quite frankly, we have been strung along and to a certain extent duped into thinking that the defense was sincere in its desire to resolve this matter out of court without need for costly inspections and expert reports.

Absent some evidence that cast iron plumbing and roofs have been replaced at every complex, floating slabs have been repaired, all windows have been replaced, and a wide scale mold remediation program has occurred at each property, Plaintiffs should be allowed to inspect the properties. If such evidence exist, then discovery abuse has occurred as none of that documentation has been provided to the Plaintiffs.

1) **HIDDEN LAKES/LAGUNA RUN**

A review of the foregoing allegations regarding Laguna Run, supported by testimony of Dasmen employees in the record of this case, indicates substantial structural issues and hazardous conditions that did not occur overnight and could not be repaired overnight. If there have been substantial repairs to the premises of Laguna Run, then the inspections will reveal that

fact. Certainly, construction experts can tell if a new roof has been put on the buildings, if the plumbing has been changed from cast iron pipes to PVC pipes, if new electrical wiring has been installed, if the HVAC was recently replaced, if new windows have been installed, etc. Environmental sampling will either show environmental hazards or it will prove that they do not exist at the apartment complex. So, what is the harm of allowing the Plaintiffs' inspections. Unless the Defendants can provide evidence to the Court that all of these issues have been addressed, then the Plaintiffs should be allowed to conduct an inspection of Laguna Run.

No documentation has been provided to Plaintiffs evidencing large scale renovations Laguna Run, so if large scale changes have been made, then the RH Entities have abused the discovery process by not providing documentation of the repairs to the Plaintiffs in connection with written discovery request and the 30(b)(6) Deposition of the RH Entities and Dasmen.

Additionally, one of the Flight I plaintiffs who was recently deposed, Paula Lang, indicated that she still resided at the apartment complex at the time of her deposition. She testified that the majority of these conditions still persisted.[9]

2) **LAKEWIND EAST/LAGUNA RESERVE**

A review of the foregoing allegations, supported by testimony of Dasmen employees in the record of this case, indicates substantial structural issues and hazardous conditions that did not occur overnight and could not be repaired overnight. If there have been substantial repairs to the premises of Laguna Reserve, then the inspections will reveal that fact. Certainly, construction experts can tell if a new roofs and chimney caps have been put on the buildings, if the HVAC system problems have been addressed, and if the water intrusion issues have been addressed on balconies, stairwells, and common areas. Inspection will reveal whether electrical problems have

---

[9] Exhibit C, Deposition of Flight I Trial Plaintiff Paula Lang dated 07/29/2022 at pp. 26-27; pp. 32-48; pp. 61-72.

been addressed. Environmental sampling will either show environmental hazards or it will prove that they do not exist at the apartment complex. So, what is the harm of allowing the Plaintiffs' inspections. Unless the Defendants can provide evidence to the Court that all of these issues have been addressed, then the Plaintiffs should be allowed to conduct an inspection of Laguna Reserve.

No documentation has been provided to Plaintiffs evidencing large scale renovations Laguna Reserve, so if large scale changes have been made, then the RH Entities have abused the discovery process by not providing documentation of the repairs to the Plaintiffs in connection with written discovery request and the 30(b)(6) Deposition of the RH Entities and Dasmen.

3) **WINDRUN/CARMEL SPRINGS**

A review of the foregoing allegations, supported by testimony of Dasmen employees in the record of this case, indicates substantial structural issues and hazardous conditions that did not occur overnight and could not be repaired overnight. If there have been substantial repairs to the premises of Carmel Springs, then the inspections will reveal that fact. Certainly, construction experts can tell if a new roofs have been put on the buildings, if the HVAC system problems have been addressed, and if electrical problems have been addressed. Environmental sampling will either show environmental hazards or it will prove that they do not exist at the apartment complex. So, what is the harm of allowing the Plaintiffs' inspections. Unless the Defendants can provide evidence to the Court that all of these issues have been addressed, then the Plaintiffs should be allowed to conduct an inspection of Carmel Springs.

No documentation has been provided to Plaintiffs evidencing large scale renovations Carmel Springs, so if large scale changes have been made, then the RH Entities have abused the

discovery process by not providing documentation of the repairs to the Plaintiffs in connection with written discovery request and the 30(b)(6) Deposition of the RH Entities and Dasmen.

4) **CHENAULT CREEK/CARMEL BROOKS**

A review of the foregoing allegations, supported by testimony of Dasmen employees in the record of this case, indicates substantial structural issues and hazardous conditions that did not occur overnight and could not be repaired overnight. If there have been substantial repairs to the premises of Carmel Brooks, then the inspections will reveal that fact. Certainly, construction experts can tell if the problem of leaking roofs and balconies has been addressed, if leaking cast iron pipes have been replaced with PVC pipe and brought up to code, if there remains water intrusion and mold in every building, if the problems with the HVAC system has been addressed, and if the electrical system has been brought up to code. Environmental sampling will either show environmental hazards or it will prove that they do not exist at the apartment complex. So, what is the harm of allowing the Plaintiffs' inspections. Unless the Defendants can provide evidence to the Court that all of these issues have been addressed, then the Plaintiffs should be allowed to conduct an inspection of Carmel Brooks.

No documentation has been provided to Plaintiffs evidencing large scale renovations Carmel Brooks, so if large scale changes have been made, then the RH Entities have abused the discovery process by not providing documentation of the repairs to the Plaintiffs in connection with written discovery request and the 30(b)(6) Deposition of the RH Entities and Dasmen.

5) **COPPER CREEK/LAGUNA CREEK**

A review of the foregoing allegations, supported by testimony of Dasmen employees in the record of this case, indicates substantial structural issues and hazardous conditions that did not occur overnight and could not be repaired overnight. If there have been substantial repairs to

the premises of Laguna Creek, then the inspections will reveal that fact. Certainly, construction experts can tell if water intrusion problem associated with leaking roofs and the lack of gutters to properly drain water has been addressed, if the problem with deteriorating porches has been addressed, if the problem with deteriorating siding has been addressed, if the mold has been remediated, and if the problem with the HVAC has been addressed. Environmental sampling will either show environmental hazards or it will prove that they do not exist at the apartment complex. So, what is the harm of allowing the Plaintiffs' inspections. Unless the Defendants can provide evidence to the Court that all of these issues have been addressed, then the Plaintiffs should be allowed to conduct an inspection of Carmel Brooks.

No documentation has been provided to Plaintiffs evidencing large scale renovations Carmel Brooks, so if large scale changes have been made, then the RH Entities have abused the discovery process by not providing documentation of the repairs to the Plaintiffs in connection with written discovery request and the 30(b)(6) Deposition of the RH Entities and Dasmen.

WHEREFORE, Plaintiffs pray for leave to enter upon the premises of the five (5) apartment complexes at issue in this case with their experts, *i.e. Hidden Lakes/Laguna Run, Lakewind East/Laguna Reserve, Copper Creek/Laguna Creek, Chenault Creek/Carmel Brooks, and Wind Run/Carmel Springs.* The purpose of the inspection is for Plaintiffs' experts to inspect, measure, survey, photograph, test and sample the property or any designated object of operation on it.

Respectfully Submitted:

*/s/ Suzette P. Bagneris*

_____
Suzette P. Bagneris (LSBA No. 22241)
Emile A. Bagneris, III (LSBA No. 222240)
1929 Jackson Avenue
New Orleans, Louisiana 70113
Telephone: (504) 810-3995
Facsimile: (504) 336-2198
Email: sbagneris@bagnerislawfirm.com
       ebagneris@bagnerislawfirm.com

And

*/s/ Walter Leger, Jr.*

_____
Walter Leger, Jr.
Matthew Landry
Leger & Shaw
935 Gravier Street, Suite 2150
New Orleans, Louisiana 70112
Telephone: (504) 588-9043
Email: wleger@legershaw.com
       mlandry@legershaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2023, the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system. Parties who are not enrolled with the Clerk shall be served by operation of law.

*/s/ Suzette P. Bagneris*

_____
Suzette P. Bagneris (LSBA No. 22241)