```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
 2

 3
     JOSHUA AKEEM, ET AL           *CIVIL ACTION NO.
 4                                 *2:19-CV-13650-
                                   *BWA-DMD
 5   VERSUS                        *AND CONSOLIDATED
                                   *CASES
 6                                 *
     DASMEN RESIDENTIAL,           *JUDGE BARRY W.
 7   LLC, ET AL                    *ASHE
                                   *
 8                                 *MAGISTRATE JUDGE
                                   *DANA DOUGLAS
 9                                 *
     *****************************************
10

11

          Deposition of MOSHE MARK SILBER,
12   46 Main Street, Suite 339, Monsey, New York,
     10952, taken via Zoom videoconference on
13   Monday, the 1st day of August, 2022 at 10:06
     a.m.
14

15   APPEARANCES:

16
          THE BAGNERIS FIRM, LLC
17        (By: Suzette P. Bagneris, Esquire)
          (By: Stacy Yates, Paralegal)
18        (By: Aungelle Lampkin, Paralegal)
          1929 Jackson Avenue
19        New Orleans, Louisiana 70113
          (504) 810-3995
20        sbagneris@bagnerislawfirm.com
              Attorney for Plaintiffs
21

22        LEGER & SHAW
          (By: Walter J. Leger, Jr., Esquire)
23        (By: Matthew Landry, Esquire)
          935 Gravier St., Suite 2150
24        New Orleans, Louisiana 70112
          (504) 588-9043
25        wleger@legershaw.com
              Attorney for Plaintiffs
```

CERTIFIED TRANSCRIPT

EXHIBIT 7

McKenzie & Associates, Inc.
2817 Harvard Avenue - Suite 205
Metairie, Louisiana 70006
Tel: (504) 888-2551   McKenzieCCR@aol.com

```
 1   APPEARANCES (continued):

 2


 3
         GIEGER, LABORDE & LAPEROUSE, LLC
 4       (By: Nicholas S. Bergeron, Esquire)
         One Shell Square
 5       701 Poydras St.
         Suite 4800
 6       New Orleans, Louisiana 70139-4800
         (504) 561-0400
 7       nbergeron@glllaw.com
             Attorney for Defendant,
 8           Dasmen Residential Management, LLC
             and Copper Creek, LLC
 9


10

11       ADAMS AND REESE, LLP
         (By: Luke G. Lahaye, Esquire)
12       701 Poydras St., Suite 4500
         New Orleans, Louisiana 70139
13       (504) 581-3234
         luke.lahaye@arlaw.com
14           Attorneys for Southwood
             and Triangle Realty
15


16


17       LEWIS, BRISBOIS, BISGAARD & SMITH, LLP
         (By: Zackory Wood, Esquire)
18       400 Poydras St.
         Suite 1300
19       New Orleans, Louisiana 70130
         (504) 267-2211
20       zackory.wood@lewisbrisbois.com
             Attorneys for Defendant,
21           Wilshire Insurance Company

22


23


24


25
```

```
 1   APPEARANCES (continued):

 2

 3

 4

 5
     Todd Meaux
 6   Certified Legal Video Specialist
     Depo-Vue, Inc.
 7   (504) 828-8856
     depovueinc@gmail.com
 8

 9

10

11

12
     REPORTED BY:
13
         MARGARET MCKENZIE, CCR, RPR, CMR, CRR
14       Certified Court Reporter

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    I N D E X
 2
 3
 4   EXAMINATION BY:
 5
 6   MS. BAGNERIS..............................   9
 7
 8
 9
10   EXHIBITS:
11
12   Exhibit 1.................................  18
13   Exhibit 2.................................  18
14   Exhibit 3.................................  18
15   Exhibit 4.................................  18
16   Exhibit 5.................................  18
17   Exhibit 6.................................  31
18   Exhibit 7.................................  36
19   Exhibit 8.................................  40
20   Exhibit 9.................................  44
21   Exhibit 10................................  46
22   Exhibit 11................................  49
23   Exhibit 12................................  50
24
25
```

```
 1                    I N D E X
 2
 3     Exhibit 13.................................   52
 4     Exhibit 14.................................   53
 5     Exhibit 15.................................   60
 6     Exhibit 16.................................   63
 7     Exhibit 17.................................   65
 8     Exhibit 18.................................   67
 9     Exhibit 19.................................   69
10     Exhibit 20.................................   70
11     Exhibit 21.................................   71
12     Exhibit 23.................................   80
13     Exhibit 24.................................   88
14     Exhibit 25.................................   90
15     Exhibit 26.................................   94
16     Exhibit 27.................................   97
17     Exhibit 28.................................   97
18     Exhibit 29................................. 204
19     Exhibit 30................................. 204
20     Exhibit 31................................. 204
21     Exhibit 32................................. 212
22     Exhibit 33................................. 260
23     Exhibit 34................................. 260
24
25
```

```
 1                S T I P U L A T I O N
 2           It is stipulated and agreed by and
 3      between counsel for the parties hereto that
 4      the deposition of the aforementioned witness
 5      is hereby being taken under the Louisiana
 6      Code of Civil Procedure, Article 1421, et
 7      seq, for all purposes, in accordance with
 8      law;
 9           That the formalities of reading and
10      signing are specifically not waived;
11      That the formalities of sealing,
12      certification and filing are specifically
13      waived;
14           That all objections, save those as to
15      the form of the question and the
16      responsiveness of the answer, are hereby
17      reserved until such time as this deposition,
18      or any part thereof, may be used or sought to
19      be used in evidence.
20
21                   *    *    *    *    *
22           MARGARET MCKENZIE, Certified Court
23      Reporter, in and for the Parish of Orleans,
24      State of Louisiana, officiated in
25      administering the oath to the witness.
```

1  VIDEOGRAPHER:
2  This is the videotape deposition of
3  RH Copper Creek, LLC by its
4  representative, Mark Silber.  This
5  deposition is being held via Zoom
6  videoconference on August 1, 2022
7  at the time indicated on the video
8  screen, which is 10:06.
9  At this time, would counsel please
10 introduce themselves for the
11 record?
12 MR. BERGERON:
13 Nick Bergeron for RH Copper Creek.
14 MR. WOOD:
15 Zack Wood for Wilshire Insurance
16 Company.
17 MR. LAHAYE:
18 Luke Lahaye for Triangle Real
19 Estate, Southwood Realty and
20 Lakewind East.
21 MS. BAGNERIS:
22 Suzette Bagneris appearing on
23 behalf of the plaintiffs, along
24 with two of the Bagneris law firm
25 paralegals, Stacy Yates and

1  Aungelle Lampkin.
2  MR. LEGER:
3  Walter Leger, Jr. for the
4  plaintiffs.  I'm sorry again.  We
5  have noise in the background for a
6  few more minutes.  I'll be muting
7  you.
8  VIDEOGRAPHER:
9  That's everyone?
10  Would the court reporter please
11  swear in the witness.
12  COURT REPORTER:
13  Excuse me.  There is a Matt Landry
14  wanting to come in.  Let me admit
15  him.
16  MR. LEGER:
17  Mr. Landry is with our, my firm.
18  There he is.
19  COURT REPORTER:
20  Okay.  Mr. Landry, if you will make
21  your appearance.  Oh, he's
22  connecting.
23  Okay.  He is not coming in.  Mr.
24  Leger said that he is with his
25  firm.  Is that enough, counsel?

```
 1              MS. BAGNERIS:
 2              Yes.
 3              Has the witness been sworn?
 4              COURT REPORTER:
 5              No.  The videographer will start.
 6              VIDEOGRAPHER:
 7              I've already read my intro.  We are
 8              ready to swear in the witness,
 9              Margaret.
10                  MOSHE MARK SILBER,
11   46 Main Street, Suite 339, Monsey, New York,
12   10952, after having been first duly sworn by
13   the above-mentioned court reporter, did
14   testify as follows:
15   EXAMINATION BY MS. BAGNERIS:
16       Q.   Good morning, my name is Suzette
17   Bagneris, and I'm joined here today with two
18   of the Bagneris law firm's paralegals, Stacy
19   Yates and Aungelle Lampkin.  Along with my
20   colleagues, Walter Leger and Matt Landry of
21   Leger & Shaw, our law firm has the privilege
22   of representing approximately 250 households
23   in this litigation brought on behalf of the
24   former and current tenants and occupants of
25   five apartment complexes in New Orleans,
```

1    Q.   Did you personally travel to New
2    Orleans to lay eyes on this property before
3    you bought it?
4         A.   Yes.
5         Q.   Okay.  When did you come here to
6    see the property?
7         A.   Many times.
8         Q.   Before you purchased it?
9         A.   Yes.
10        Q.   Would you have any records to
11   indicate the dates upon which you traveled to
12   New Orleans prior to the act of sale on
13   December 13, 2017?
14        A.   No.
15        Q.   Did you participate in the
16   unit-by-unit inspection?
17        A.   Can you repeat that?
18        Q.   Did you participate in the
19   unit-by-unit inspection performed at 5131
20   Bundy Road in New Orleans, Louisiana?
21        A.   In some respects, yes.
22        Q.   What did you personally observe
23   about the condition of the property as you
24   inspected 5131 Bundy Road in New Orleans,
25   Louisiana prior to December 13, 2017?

1        A.    That, for the most part, the units
2    were in rent-ready condition.
3        Q.    You said for the most part.  What
4    was not in rent-ready condition when you went
5    through personally?
6        A.    That some of the carpets weren't
7    shampooed.
8        Q.    Did some of the carpets appear to
9    be water-stained to you?
10       A.    No.
11       Q.    Did some of the walls appear to be
12   water-stained to you?
13       A.    No.
14       Q.    Did some of the ceilings appear to
15   be water-stained to you?
16       A.    No.
17       Q.    So based upon your personal
18   observation, you saw, you witnessed no
19   deteriorating conditions of the property at
20   5131 Bundy Road prior to the sale?
21       A.    No.  With the exception of several
22   units really being -- having a stench from
23   marijuana, no.  And the carpets not being
24   shampooed.  No.
25       Q.    Did you make any request to the

```
 1        A.    No.
 2        Q.    Would you agree that a property
 3   owner has a duty to familiarize itself with
 4   the statutes and ordinances promulgated by
 5   the governing body that has jurisdiction over
 6   the property that they are acquiring?
 7              MR. BERGERON:
 8              Object to the form.
 9              THE WITNESS:
10              No.
11   EXAMINATION BY MS. BAGNERIS:
12        Q.    No?
13        A.    No.
14        Q.    Why not?
15        A.    Because we hire and pay a property
16   manager to do just that.
17        Q.    Okay.  And you are deferring to the
18   property management company to comply with
19   and be familiar with the statutes and
20   ordinances in each jurisdiction where you
21   acquire property, is that correct?
22        A.    Absolutely.
23        Q.    So sitting here today, none of the
24   RH entities have attempted independently to
25   familiarize themselves with the statutes and
```

```
 1      A.   I've never seen any of these, so
 2   yes.
 3      Q.   Okay.  Have you seen any of the
 4   plaintiffs' photographs that depict similar
 5   conditions in their apartment units?
 6      A.   No.
 7      Q.   Okay.  Mr. Silber, you said that
 8   you terminated Dasmen Residential as the
 9   property manager.  Did you do so after your
10   company was cited by the City of New Orleans
11   for various code violations?
12      A.   Yes.
13      Q.   Okay.  How did you become aware of
14   the code violations issued by the City of New
15   Orleans?
16      A.   It wasn't about the code
17   violations.  It was about being put on fire
18   watch.
19      Q.   Okay.  So I'm about to pull that up
20   next.  You are aware that when the city went
21   out and did its inspection, that the State
22   Fire Marshal also went out and did an
23   inspection at the same time in November?
24      A.   Yes.
25      Q.   Okay.  The State Fire Marshal also
```

```
 1   went with the city inspector building by
 2   building and found that the fire alarm system
 3   at Laguna Run was completely inoperable.  Did
 4   you know that?
 5        A.   We found that out, and once we were
 6   also put on fire watch, the State Fire
 7   Marshal applauded us that we were the
 8   quickest company to ever get off fire watch
 9   in the history of Louisiana.  So, yes, I'm
10   aware of that.
11        Q.   Okay.  And were you aware that the
12   Fire Marshal found that the fire alarm system
13   had not been tested in two years and that
14   that is a violation of the fire codes?
15        A.   Yes.  That's exactly why we fired
16   our management company the day that we found
17   out, yes.
18        Q.   Okay.  You would agree with me that
19   it is necessary to have a working fire alarm
20   system in an apartment complex?
21        A.   Yes.  That's why we fired our
22   property manager as discussed.
23        Q.   Did your property manager make you
24   aware that you were fined by the City of New
25   Orleans for those violations of the building
```

```
 1   to the property to ascertain for yourself
 2   whether or not the substance that the city
 3   believes, the testing lab I used believes is
 4   mold, is actually mold?
 5        A.   I don't recall.
 6        Q.   Have you hired any other companies
 7   to go out and address the mold issue at any
 8   of your other apartment complexes?
 9        A.   Can you rephrase that question,
10   please?
11        Q.   Have you hired any other companies
12   to go out and address the mold alleged to be
13   at your five apartment complexes that are the
14   subject of this litigation?
15        A.   I don't recall.
16        Q.   So let's just say it's not mold.
17   Let's just say it's ceiling falling down and
18   water intrusion.  Would you agree with me
19   that, as the landlord, you have an obligation
20   to address issues of water intrusion in your
21   tenants' apartments?
22        A.   Well, all I'll say is that our
23   obligation is to sign a third-party
24   management agreement with a manager that
25   specializes in managing these apartments,
```

```
 1   right.  And when we sign that contract, the
 2   obligation is to the manager to do their job
 3   that they were hired for.  We are not
 4   managers.  We are owners.  So that's the
 5   answer.
 6        Q.   Okay.  Well, let's take a look at
 7   the property management agreement, if we can.
 8             MS. BAGNERIS:
 9                  Stacy, can you pull up the property
10                  management agreement between Dasmen
11                  Residential Management and RH East
12                  Lake, LLC.
13   EXAMINATION BY MS. BAGNERIS:
14        Q.   Who was involved in the negotiation
15   of the property management agreements between
16   Dasmen Residential and the RH entities?
17        A.   I don't recall.
18        Q.   Were you involved in the
19   negotiation of the property management
20   agreements between the RH entities and Dasmen
21   Residential?
22        A.   I don't recall.
23        Q.   So previously I had asked you about
24   the operating accounts, Mr. Silber, for each
25   of the RH entities.
```

| | |
|---|---|
| 1 | REPORTER'S CERTIFICATE |
| 2 | I, MARGARET MCKENZIE, Certified Court Reporter, in and for the State of Louisiana, |
| 3 | as the officer before whom this testimony was taken, do hereby certify that MARK SILBER, |
| 4 | after having been first duly sworn by me upon authority of R. S. 37:2554, did testify as |
| 5 | hereinabove set forth in the foregoing 271 pages; that this testimony was reported by me |
| 6 | in the stenotype reporting method, was prepared and transcribed by me or under my |
| 7 | personal direction and supervision, and is a true and correct transcript, to the best of |
| 8 | my ability and understanding; that the transcript has been prepared in compliance |
| 9 | with transcript format guidelines required by statute or by rules of the board, and that I |
| 10 | am informed about the complete arrangement, financial or otherwise, with the person or |
| 11 | entity making arrangements for deposition services; that I have acted in compliance |
| 12 | with the prohibition on contractual relationships, as defined by Louisiana Code |
| 13 | of Civil Procedure Article 1434, and in rules and advisory opinions of the board; that I |
| 14 | have no actual knowledge of any prohibited employment or contractual relationship, |
| 15 | direct or indirect, between a court reporting firm and any party litigant in this matter |
| 16 | nor is there any such relationship between myself and a party litigant in this matter. |
| 17 | I am not related to counsel or to the parties herein, nor am I otherwise interested in the |
| 18 | outcome of this matter. |
| 19 | |
| 20 | *[signature: Margaret McKey]* |
| | MARGARET MCKENZIE, CCR, RPR, RMR, CRR |
| 21 | CERTIFIED COURT REPORTER |